James Cai (SBN 200189)
jcai@sacattorneys.com
Brian A. Barnhorst (SBN 130292)
bbarnhorst@sacattorneys.com
Dennis Chin (SBN 236466)
dchin@sacattorneys.com
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff, Jinju Zhang

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JINJU ZHANG, an individual;<br><br>                                Plaintiff,<br><br>v.<br><br>BELIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEJING ASIACOM TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1 to 20, inclusive,<br><br>                                Defendants. | Case No.: 3:23-cv-05818-CRB<br><br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY BEIJING ASIACOM TECHNOLOGY CO., LTD.**<br><br>Date:            April 19, 2024<br>Time:           11:30 a.m.<br>Courtroom:   Via Zoom |

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY BEIJING ASIACOM TECHNOLOGY CO., LTD.

1

*Zhang v. Yuan, et al.*; 3:23-cv-05818-CRB

Plaintiff, JINJU ZHANG (Plaintiff or "Zhang"), submits the following in opposition to the Motion to Dismiss filed by Defendant BEJING ASIACOM TECHNOLOGY CO., LTD. ("Asiacom China"):

# I

## INTRODUCTION

The Complaint alleges a scheme by multiple defendants, including Asiacom China, to deprive Plaintiff of his rights and interest in Camiwell US.  The Complaint asserts a single cause of action against Asiacom China, a derivative claim for conversion.

Asiacom China's motion is premised on three grounds: (1) lack of personal jurisdiction, (2) insufficient service of process, and (3) failure to state a claim.

The motion argues that personal jurisdiction is lacking because Asiacom China allegedly has no presence and does no business here; however, according to its own registration statement, the company "was set up as US Asiacom on November 26, 2018, to be in charge of execution of US region businesses."

Asiacom China argues that service of process was insufficient because a person named Ying Ding was served, and says it employs no such person; however, Asiacom China was actually served twice.  The original proof of service of summons states that substituted service was effected on "Wen Xu, manager" of Asiacom Americas.  In an abundance of caution, service was effected again, this time on Ying Ding, who represented himself to the process server as the HR manager.

Lastly, Asiacom China argues that it did nothing wrong and, if it did do anything wrong, it did so back in 2019 and the statute of limitations has run; however, the Complaint alleges that, along with Defendants Yuan, Lin, and Camiwell Canada, Defendants Asiacom China and Asiacom Americas "unlawfully misappropriated money and corporate opportunities of Camiwell US by diverting the business and revenue belonging to Camiwell US to Camiwell Canada."  Complaint at ¶ 32.  This scheme was carried out with the integral assistance of Yuan, who was and is an employee of Asiacom China and its "key business manager".  See the accompanying Declaration of Brian A. Barnhorst and Exhibit B thereto.  As alleged in the Complaint, Plaintiff was not aware of this scheme when he filed the state-court action; he only learned of it when he downloaded the registration statement (see

Complaint at ¶¶ 20-24) in October of 2021.  See the accompanying Declaration of Jinju Zhang at ¶¶ 4-5.  Contrary to Asiacom China's assertion, the delayed discovery rule does apply here.

The motion should therefore be denied in its entirety.  To the extent the Court finds that any portion of the Complaint is insufficient, Plaintiff should be granted leave to amend.

## II

## ARGUMENT

**A.    Asiacom China Has Sufficient Minimum Contacts with California.**

"California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."  *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir.2011).

Asiacom China cannot shield itself from liability—or from this Court's assertion of jurisdiction over it—by acting through subsidiaries and agents.  For the reasons set forth below, the Court can and should assert personal jurisdiction—both general and specific—over Asiacom China.

It is important to keep in mind the scheme by which Plaintiff suffered harm (derivatively), and the direct and indirect involvement of Asiacom China in that scheme.  As alleged in the Complaint, Plaintiff was co-owner of Camiwell US along with Yuan and Lin.  Yuan—the employee and agent of Asiacom China—caused all of Camiwell US's business to be diverted to Camiwell Canada—which Asiacom China owned and in which Plaintiff had no interest—resulting in Camiwell US's income being reduced to essentially zero.

What was <u>not</u> in the Complaint, because it was buried in the Asiacom China registration statement and just recently discovered, is the fact that Yuan was and is an ***employee*** of Asiacom China and its "key business manager":

> Due to the failure to acquiring US Camiwell, Company was set up as US Asiacom on November 26, 2018, to be in charge of execution of US region businesses. Currently, the US and Canadian businesses were operated by US Camiwell and Canada Camiwell, respectively, with ***key business manager still being Benlin Yuan***. ***Since the beginning of Company's entrance into the Canadian and U.S. markets, Company's overseas business has been in charged by Benlin Yuan.***  After Company acquired Canada Camiwell and the newly setup US Asiacom, based on Benlin Yuan's knowledge of foreign market and ***years of good cooperation***, [Company], ***Benlin Yuan was hired as employee*** who has been ***in charge of the US and Canadian business, for the benefit of the continued and healthy development of Company's future in the U.S. and Canada businesses***.  Currently, US Camiwell has no actual business, and is in the process of being dissolved and has finished the dissolution

1    process in Virginia.  Due to the impact of Covid and other factors, the California
     dissolution process is not completed yet.
2            In summary, Company's acquisition of Canada Camiwell based on its own need
     of business development, and based on ***Company's history of cooperation with Benlin***
3    ***Yuan*** along with the business reasonableness.

4    Translation of portion of registration statement of Asiacom China (emphasis added).  See Barnhorst

5    Declaration and Exhibit B thereto.

6            Moreover, the Complaint alleges (at ¶ 15) that Camiwell Canada was owned by Yuan and Lin,

7    but that it was acquired by Asiacom China in May of 2019 (see ¶ 21).  The registration statement

8    confirms this.

9            Thus, all of the conduct complained of was engaged in by Asiacom China directly and through

10   its employee and agent, Yuan, and its wholly-owned subsidiaries, Asiacom Americas and Camiwell

11   Canada.

12           As Asiacom China acknowledges in its motion (at 3:21-26), 95% of Camiwell Americas'

13   business was with Asiacom China; Asiacom China "established Asiacom US to execute its business in

14   the United States"; and Asiacom China acquired Camiwell Canada in May of 2019.  In the next breath,

15   though, Asiacom China argues that it "generates no revenue in the United States."  To the extent this is

16   true, though, it is only because Asiacom China established Asiacom Americas and caused all of the

17   business of Camiwell US to be diverted to Camiwell Canada, which it owns.

18           The *Ranza* case cited by Asiacom China is wholly inapposite.  There, a US citizen residing

19   abroad, who was a former employee of a Nike subsidiary in the Netherlands, sought to sue in Oregon

20   for discriminatory conduct that had occurred in the Netherlands at the hands of the Dutch subsidiary.

21   The court held that the Dutch subsidiary did not have sufficient contacts with Oregon to be sued there.

22   *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1065 (9th Cir. 2015).  Here, in sharp contrast, the issue is whether

23   the parent company—the alter ego of the subsidiary—may be sued in the state where the subsidiary's

24   conduct occurred.

25           The court then considered "under what circumstances a court may attribute a parent company's

26   contacts with the forum state to its foreign subsidiary for the purpose of exercising general personal

27   jurisdiction over the subsidiary.  We hold a court may do so upon a showing that the subsidiary is an

28   alter ego of its parent . . . ."  *Ibid.*  *Martinez* is even less relevant to the instant case, since the issue

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY BEIJING ASIACOM TECHNOLOGY CO., LTD.

4

*Zhang v. Yuan, et al.*; 3:23-cv-05818-CRB

there was whether "tag jurisdiction" (see *Burnham v. Superior Court*, 495 U.S. 604 (1990)) applied to a corporate officer present in the state.  See *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1067-70 (9th Cir. 2014).

The court in *Ranza* did consider whether an in-state corporation's contacts could be attributed to its foreign subsidiary to establish general jurisdiction over the subsidiary.  "We stated that while *Daimler* invalidated our previous 'agency' test, it 'left intact' the alternative 'alter ego test for "imputed" general jurisdiction.'  We made clear, however, that the parent-subsidiary relationship does not on its own establish two entities as 'alter egos,' and thus does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other.  Rather, we held that 'the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate.'  To satisfy this test, 'a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.'"  *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citations omitted).  As Asiacom China's registration statement says, Asiacom Americas was established "to be in charge of execution of US region businesses."  Allowing Asiacom China to hide behind Asiacom Americas would result in fraud or injustice.

At a minimum, this Court can and should exercise *specific* jurisdiction over Asiacom China because its contacts with California satisfy the Ninth Circuit's three-part test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY BEIJING ASIACOM TECHNOLOGY CO., LTD.

5

*Zhang v. Yuan, et al.*; 3:23-cv-05818-CRB

As to the first prong, the court explained:

> Under our precedents, the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the "effects" test derived from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, the Supreme Court determined that California courts could exercise jurisdiction over an editor and a reporter who caused a defamatory article about a California resident to be published in Florida and circulated in California, on the ground that the tortious conduct was "expressly aimed" at the forum state in which harm occurred. See id. at 788–89, 104 S.Ct. 1482. As we have previously recognized, Calder stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."

*Ibid.*

Because the Complaint alleges that Asiacom China committed the intentional tort of conversion, the first prong is satisfied.  Similarly, the second prong is satisfied because Plaintiff's claim is predicated on the scheme of Asiacom China, together with its agent, Yuan, and Asiacom Americas, to strip Camiwell US of all value.  Lastly, the third prong is satisfied because the exercise of jurisdiction would be reasonable since Asiacom China should expect to be hauled into a court in California for engaging in the conduct alleged.

For the foregoing reasons, the motion should be denied on the basis of lack of jurisdiction.

## B.    Asiacom China Was Properly Served.

Asiacom China was properly served with the summons.

Beijing Asiacom contends that it was not served with process as it has no registered agent in the United States, and Plaintiff made no effort to serve Beijing Asiacom under the Hague Convention. This contention is misplaced.

Where state or federal statutes authorize service of summons in foreign countries, service may be made in the manner by such statutes . . . subject, however, to the limitations of the Hague Convention.  See FRCP 4(f).  However, the U.S. Supreme Court has held that the Hague Service Convention does not apply when process is served on foreign corporation by serving its domestic subsidiary which, under state law, is a foreign corporation's involuntary agent for service.  *Volkswagen-werk Aktiengesellschaft v. Schlunk* (1988) 486 US 694, 108 S.Ct. 2014.

The Court stated, "Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications."  *Id*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY BEIJING ASIACOM TECHNOLOGY CO., LTD.

6

*Zhang v. Yuan, et al.*; 3:23-cv-05818-CRB

at 707.   Federal Rule of Civil Procedure 4(h)(1)(b) provides,  "Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation . . .  must be served in a judicial district by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."  California's long arm statute is provided in California Code of Civil Procedure Section 410.10 which states, "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

Here, Asiacom China was served through its domestic subsidiary Asiacom Americas.  Indeed, it was actually served *twice*.  As detailed in the accompanying Barnhorst Declaration, service was first effected on an individual in Virginia named Wen Xu, who represented to the process server that he was a manager authorized to accept service.  A proof of service evidencing service on Asiacom Americas both individually and on behalf of Asiacom China is appended as Exhibit C to the Barnhorst Declaration.  Counsel for Plaintiff was concerned that the language on the proof was ambiguous, and therefore directed the process server to re-serve the summons.  The second time, the process server served Ying Ding, who identified himself as the HR director of Asiacom Americas, authorized to accept service.  It was this latter proof of service that was filed with the Court [Doc # 16].

Asiacom China has been properly served, and its motion on the basis that it was not should be denied.

**C.**     **Asiacom China Is Liable for Conversion as Alleged in the Complaint, and the Statute of Limitations Is No Bar.**

The Complaint has properly pleaded that Asiacom China schemed with its agent and employee, Yuan, and with its subsidiaries Asiacom Americas and Camiwell Canada, to deprive Camiwell US of all value.  Asiacom China is liable both directly and vicariously due to the conduct of Yuan and its subsidiaries.

The only real issue is the statute of limitations.  Although perhaps imperfectly pleaded, the Complaint makes clear that Plaintiff only learned of what was being or had been done when he obtained the Asiacom China registration statement off the internet in October of 2021.  See the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY BEIJING ASIACOM TECHNOLOGY CO., LTD.

7

*Zhang v. Yuan, et al.*; 3:23-cv-05818-CRB

accompanying Declaration of Jinju Zhang.  The Complaint was filed on November 10, 2023, well within the three-year period of limitations.

Contrary to the motion's assertions, the Complaint does allege the fraudulent concealment of facts and the failure to disclose facts by Yuan, who was, at the same time, an employee and agent of Asiacom China *and* a co-director and co-shareholder with Plaintiff in Camiwell US.  In his latter capacity, he owed a fiduciary duty to Plaintiff and to Camiwell US.  The statute was tolled for that reason.  The motion based on failure to state a claim should therefore be denied.

**III**

**CONCLUSION**

For the foregoing reasons, the motion of Asiacom China should be denied in its entirety.  In the event the Court finds some portion of the Complaint to be deficient, Plaintiff should be allowed leave to amend.

Dated:  March 13, 2024                                          SAC Attorneys LLP


By:  Brian A. Barnhorst_____
James Cai, Esq.
Brian A. Barnhorst, Esq.
Dennis Chin, Esq.
*Attorneys for Plaintiff, Jinju Zhang*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY BEIJING ASIACOM TECHNOLOGY CO., LTD.

8

*Zhang v. Yuan, et al.*; 3:23-cv-05818-CRB