James Cai (#200189)
Brian A. Barnhorst (#130292)
Dennis Chin (#236466)
**SAC ATTORNEYS LLP**
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff, **JINJU ZHANG**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JINJU ZHANG, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>BENLIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEIJING ASIACOM INFORMATION TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1-20, inclusive<br><br>                              Defendants. | Case No.: 5:23-cv-5818-VC<br><br>**DECLARATION OF BRIAN A. BARNHORST IN SUPPORT OF OPPOSITION TO MOTIONS OF BEIJING ASIACOM AND ASIACOM AMERICAS TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:          August 15, 2024<br>Time:          10:00 a.m.<br>Judge:         Hon. Vince Chhabria<br>Courtroom:  4 – 17th Floor |

I, Brian A. Barnhorst, declare:

1.      I am an attorney at law, duly licensed to practice and practicing in the State of California.

2.      I am Senior Litigation Attorney and General Counsel at SAC Attorneys LLP, counsel for Plaintiff herein.

3.      I have personal knowledge of the matters contained in this declaration and, if called upon, could and would competently testify thereto.

4.      I make this declaration in support of Plaintiff's opposition to the motions to dismiss filed by Defendants Beijing Asiacom and Asiacom Americas.

5.      Appended as **Exhibit A** hereto is a true and correct copy of the proposed Second Amended Complaint.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 26, 2024, in San Jose, CA.

_____
Brian A. Barnhorst

Exhibit **A**

James Cai (SBN 200189)
jcai@sacattorneys.com
Brian A. Barnhorst (SBN 130292)
bbarnhorst@sacattorneys.com
Dennis Chin (SBN 236466)
dchin@sacattorneys.com
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff and Counter-Defendant Jinju Zhang

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINJU ZHANG, an individual;<br><br>                Plaintiff,<br><br>vs.<br><br>BENLIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEIJING ASIACOM INFORMATION TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1 to 20, inclusive,<br><br>                Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No.: 3:23-cv-05818-CRB<br><br>**SECOND AMENDED DERIVATIVE COMPLAINT**<br>  1. **CONVERSION**<br>  2. **BREACH OF FIDUCIARY DUTY**<br>  3. **FRAUD (CONCEALMENT)**<br>  4. **UNJUST ENRICHMENT**<br>  5. **UNJUST ENRICHMENT**<br>  6. **COMMON COUNTS:  MONEY HAD AND RECEIVED**<br>  7. **COMMON COUNTS:  MONEY HAD AND RECEIVED**<br>  8. **PRELIMINARY INJUNCTION**<br>  9. **DECLARATORY RELIEF**<br> 10. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS** |

Comes now the Plaintiff, JINJU ZHANG (Plaintiff or "Zhang"), and alleges for himself and derivatively on behalf of nominal defendant CAMIWELL, INC. (formerly Camiwell, LLC; "Camiwell U.S."), as follows:

**THE PARTIES**

1.      Plaintiff Zhang is an individual residing in Conroe, Texas.[1]

2.      Plaintiff is informed and believes and, based thereon, alleges that Defendant BENLIN YUAN ("Yuan") is an individual residing in Mississauga, Ontario, Canada, and was at all relevant times conducting business in Santa Clara County, California.  Plaintiff is informed and believes, and thereon alleges that Defendant Yuan was and is, at all relevant times, the CEO of Camiwell, Inc. ("Camiwell U.S.") and has 40% of the shares of Camiwell U.S., an employee of Defendant BEIJING ASIACOM INFORMATION TECHNOLOGY CO., LTD ("Asiacom China") as its key business managerin charge of its businesses in the U.S. and Canada, and spouse of Defendant Hong Lin.

3.      Plaintiff is informed and believes and, based thereon, alleges that Defendant HONG LIN ("Lin") is the spouse of Yuan, and is an individual residing in Mississauga, Ontario, Canada, and was at all relevant times conducting business in Santa Clara County, California.  Lin, at all relevant times, owned at most 25% of the shares of Camiwell, U.S.

4.      Plaintiff is informed and believes and, based thereon, alleges that nominal Defendant CAMIWELL, INC. ("Camiwell U.S.") is and, at all times relevant to this action, was a California corporation conducting business in Santa Clara County, California, with its principal place of business in Santa Clara County, California.

5.      Plaintiff is informed and believes and, based thereon, alleges that Defendant CAMIWELL, INC. (CANADA) ("Camiwell Canada"), is and, at all times relevant to this action, was a Canadian corporation conducting business in Santa Clara County, California.

6.      Plaintiff is informed and believes and, based thereon, alleges that Defendant BEIJING ASIACOM INFORMATION TECHNOLOGY CO., LTD. ("Asiacom China"), is a Chinese information technology services company headquartered in Beijing, China, that provides IT services (such as network cabling and server operation and maintenance in data centers for major cusomers such as Alibaba and Didi, in China and US) throughout China and in California, including in this judicial district.  Asiacom

---

[1]     Previously, Mr. Zhang resided in Santa Clara County, California.

China's key business manager and employee, at all relevant times, in charge of business in the U.S. and Canada is Defendant Yuan.

7.     Plaintiff is informed and believes and, based thereon, alleges that Defendant ASIACOM AMERICAS, INC. ("Asiacom U.S."), is Virginia corporation wholly owned by Asiacom China, and, at all times relevant, was and is conducting business in Santa Clara County, California through its key business manager and employee, Yuan.

8.     Plaintiff is informed and believes and, based thereon, alleges that Defendant BANK OF AMERICA CORPORATION ("B of A") is a National Association, and, at all times relevant, was and is conducting business in Santa Clara County, California.

9.     Plaintiff is informed and believes and, based thereon, alleges that, at all relevant times, each of the Defendants other than B of A, or some of them, were the partners, agents, servants, and/or employees of one or more of the other Defendants and, in doing the things hereafter alleged, were acting within the scope of said Defendants' authority such as a partner, agent, servant, and/or employee and with the permission and consent of the other Defendants.

## JURISDICTION AND VENUE

10.    The Court has subject matter jurisdiction over this matter and its California state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

11.    The Court has personal jurisdiction over Defendants because they purposefully availed themselves of the benefits and protections of the laws of the State of California and the United States and have substantial minimum contacts to and business in this judicial district;

        i)      The Court has personal jurisdiction of Defendants Yuan and Lin who have purposefully availed themselves to the benefits and protections of the laws of the State of California as owners of Camiwell U.S., a California corporation.

        ii)     The Court has personal jurisdiction over Camiwell U.S. with a principal place of business in Santa Clara County, California, as it purposefully availed itself to the benefits and protections of the laws of the State of California by registering it's corporate status with the California Secretary of State's Office.

iii)     The Court has personal jurisdiction over Asiacom U.S. as it purposefully availed itself to the benefits and protections of the laws of the State of California with its filing of a corporate status registered with the California Secretary of State's Office to do business in the State of California and paid taxes to the California Franchise Tax Board to keep its corporate status active in the State of California.  Asiacom U.S. has sufficient minimum contacts with the State of California by conducting business through it's key business manager and employee Defendant Yuan in the County of Santa Clara, California.

iv)     The Court has personal jurisdiction over Camiwell Canada as it has sufficient minimum contacts with the State of California as it shares the same website, same customers, and same ownership (except for Zhang who does not own Camiwell Canada) as Camiwell U.S., and performs the same business services and utilizes the same or substantially similar employees as Camiwell U.S. which has a principal place of business in Santa Clara County, California.

*12.*     The Court has personal jurisdiction over Asiacom China as it purposely availed itself of the privileges and benefits of the protection of the laws of the State of California when it hired Defendant Yuan as its key manager and employee in developing Asiacom China's execution of business in the State of California.  Asiacom China also had sufficient minimum contacts which were continuous and systematic with the State of California, at all relevant times, when it subcontracted its IT work with Camiwell U.S. which accounted for 95% of Camiwell U.S.'s business.  The IT work was performed by approximately 35 engineers of Camiwell U.S. in Virginia and 15 engineers in California and at two data centers for network cabling and server maintenance in the Santa Clara, California.  As evidenced in an email by Feng Wang, Vice President of Asiacom China in charge of overseas business, Wang thanked Camiwell U.S.'s past years of service and wanted to ensure a smooth transition with Camiwell U.S.'s engineers assisting Asiacom U.S.'s engineers when Asiacom China sets up its own operations in the U.S. *See **Exhibit A**, Email from Feng Wang dated November 20, 2018 with translation from Chinese to English.*

13.     In fact, this representation was untrue since Asiacom U.S. immediately thereafter conjured a secret plan with Yuan and his brother Ben Tao Yuan to raid Camiwell U.S. by hiring away (instead of transitioning to work to Asiacom U.S.'s own engineers, because there was none) all of approximately 50

of its engineers (15 of whom were working in data centers located in Santa Clara County, California) and looting almost all of Camiwell U.S.'s equipment and assets for a nominal amount of $37,000.  This Court's exercise of jurisdiction over the Defendants would comport with traditional notions of fair play and substantial justice.

14.     Venue is proper in the Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims alleged in this First Amended Complaint occurred in Santa Clara, California, and the Northern District of California.  Also, the core business and assets at issue in this First Amended Complaint were and are primarily in this judicial district.

15.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

## ALTER EGO ALLEGATIONS

15.     Plaintiff is informed and believes, and based thereon, alleges that Defendants Yuan and Lin, Camiwell Canada, and Asiacom U.S, is and, at all times sinces its formation, were the alter egos of each other; there was a unity of ownership and interest by and between Defendants Yuan, Lin, Camiwell Canada, and Asiacom U.S. such that any separateness between them has never existed; Yuan and Lin, at all relevant times, owned Camiwell Canada; concealing from Plaintiff Zhang, Yuan, while being CEO of Plaintiff Camiwell US,  secretly incorporated Asiacom U.S. (with his brother Ben Tao Yuan as its CEO) as a subsidiary for Asiacom China and competitor of Camiwell US; together, Yuan, Ben Tao Yuan, Lin, and Asiacom U.S. carried out a secret corporate raid plan against Camiwell U.S., by hiring away all its engineers and acquiring all its assets for the nominal amount of $37,000 (pursuant to a secret contract signed by Yuan as President of Camiwell U.S. and his brother Ben Tao Yuan as CEO of Asiacom U.S.).

16.     Plaintiff is informed and believes, and based thereon, alleges that Defendants Camiwell Canada and Asiacom U.S. were formed and operated with inadequate capitalization and failed to respect other corporate formalities that would indicate a separate existence from each other.

17.     Plaintiff is informed and believes, and, basesd thereon, alleges that Defendants Yuan and Lin, Camiwell Canada and Asiacom U.S. commingled and failed to segregate the funds and assets of each other from their own and treated the assets and funds nominally belonging to each other as their own funds.

18.     Plaintiff is informed and believes, and based thereon, alleges that Defendants Yuan and Lin have controlled, dominated, managed, and operated Camiwell Canada since its formation for their benefit.

19.     Plaintiff is informed and believes, and based thereon, alleges that Defendants Yuan and Lin have controlled, dominated, managed, and operated Asiacom U.S. since its formation for their benefit.

20.     Plaintiff is informed and believes, and based thereon, alleges that Defendant Camiwell Canada and Asiacom U.S. is, and at all times mentioned was, a mere shell, instrumentality and conduit through which Defendants Yuan and Lin carry on their activities.  Defendants Yuan and Lin exercised and continue to exercise such complete control and dominance of the activities of Defendant Camiwell Canada and Asiacom U.S. that any individuality or separateness of them do not, and all relevant times did not, exist.  Plaintiff is informed and believes, and based thereon, alleges that Defendant Camiwell Canada  and Asiacom U.S. existed solely to ensure that Defendants Yuan and Lin remain "judgment proof."

21.     Adherence to the fiction of the separate existence of Defendants Camiwell Canada, Asiacom U.S., Yuan, and Lin as entities distinct from each other would permit an abuse of privileges against liability afforded to companies and corporations, and would result in unfairness to Plaintiff and an inequitable result.  It would promote injustice by allowing Defendants Camiwell Canada, Asiacom U.S., Yuan, and Lin to evade liability or veil assets that should in equity be used to satisfy the judgment sought by Plaintiff in this action.

## GENERAL ALLEGATIONS

22.     Camiwell U.S., is an information technology company based in Santa Clara, California.  At all times relevant, the directors were and are Zhang, Yuan, and Lin; the officers were Zhang, Yuan, and Lin; the officers were and are Zhang, Yuan, and Hui Sun ("Sun"); the  shareholders were and are Yuan (40%), Zheng (35%), and Lin (25%).  Lin and Yuan are married and therefore jointly control 65% of the equity of Camiwell U.S. Plaintiff is informed and believes and, based thereon, alleges that Camiwell Canada is located in Mississauga, Ontario, Canada; it was incorporated by Yuan and is owned exclusively by Yuan and Lin.Initially, Camiwell U.S. did not have much business when it started in 2014.

23.     In December 2015, Camiwell, U.S.'s business started to grow.

24. From 2016 to 2017, Camiwell U.S.'s business continue to grow. However, Yuan was unwilling to provide business operation data and contract information.

25. In the early months of 2018, Yuan refused to provide business and accounting records to Zhang and told Zhang there were no written contracts and only verbal agreements with Asiacom China, its major customer.

26. After May 2018, Yuan told Zhang that Asiacom China wanted to merge with Camiwell U.S but refused to disclose any concrete terms and conditions. Therefore, Zhang responded in the negative for lack of visibility. Yuan suggested that Camiwell U.S. be sold to Camiwell Canada (a company that Yuan and Lin owned) and then sell Camiwell Canada to Asiacom China.

27. A few days later, Asiacom China offered to purchase Camiwell U.S. and let Yuan be in charge of the Virginia office and do business in the East Coast, and Zhang in charge of the California site and do business in the West Coast. Zhang refused and the merger negotiations ended.

28. Until the end of 2018, Camiwell U.S.'s main customer was Defendant Asiacom China, which is a contractor for large Chinese technology companies providing mainly local data center server operation and maintenance and network cabling services. Asiacom China would subcontract its IT work to Camiwell U.S. through various service contracts accounting for about 95% of Camiwell U.S.'s business. The IT work was performed by approximately fifty engineers of Camiwell U.S., approximately fifteen of whom were working at two data centers for network cabling and server maintenance in Santa Clara, California.

29. On November 20, 2018, Feng Wang, Vice President of Asiacom China in charge of overseas business, sent an email and thanked Yuan and Plaintiff Zhang for Camiwell U.S.'s past years of service and wanted to ensure a smooth transition with Camiwell U.S.'s engineers assisting Asiacom U.S.'s engineers when Asiacom China set up its own operations in the U.S.

30. On November 24, 2018 at a Camiwell U.S. shareholder meeting, Yuan told Plaintiff that he would be fully loyal to Camiwell U.S. and not do anything that would be competitive against Camiwell U.S.

31. On November 26, 2018, after the failure of the attempted acquisition of Camiwell US and concealing from Plaintiff, Asiacom China in collusion with Yuan incorporated Asiacom U.S. as its

subsidiary, with Yuan's brother Ben Tao Yuan acting as its CEO, using the Camiwell's address in Virginia as its office in US.

32.     Concealing from Plaintiff and contrary to the promise of Feng Wang for a professional and cooperative transition of business, Asiacom U.S., through Yuan and his brother Ben Tao Yuan as CEO of Asiacom U.S., carried out a secret corporate raid plan by hiring almost all 50 of the engineers of Camiwell U.S (instead of transitioning the work from Camiwell U.S.'s engineers to Asiacom U.S.'s engineers, which were non-existing), and purchasing all of Camiwell U.S.'s equipment necessary for business for the nominal amount of $37,281.29 pursuant to a Device and Asset Transfer Agreement (the "Asset Transfer Agreement") with Yuan signing as President of Camiwell U.S. and his brother Ben Tao Yuan as CEO of Asiacom U.S.  *See **Exhibit B**, Device and Asset Tranfer Agreement with translation from Chinese to English.*

33.     Concealing from Plaintiff, Yuan as CEO of Camiwell U.S. signed the Asset Transfer Agreement, that transferred almost all assets of Camiwell, U.S. to Asiacom U.S., with Yuan's brother signing on behalf of Asiacom U.S. which was and is, at all relevant times, a subsidiary of Asiacom China.

34.     Plaintiff is informed and believes and, based thereon, alleges that Yuan and his brother hold an ownership interest in Asiacom China.

35.     In or about 2018, Asiacom China was planning an initial public offering (IPO) of its stock in China.

36.     After losing the business of Asiacom China, Yuan began to push Zhang to dissolve Camiwell U.S.  Zhang became suspicious of Yuan's motives, and demanded corporate documents of Camiwell U.S. to no avail.

37.     On or about July 20, 2020, Zhang initiated a lawsuit in Santa Clara County Superior Court (Case No. 20CV368535, the "State Case") against Yuan, Lin, and Camiwell U.S.[2]

38.     Plaintiff did not discover the Asset Transfer Agreement until discovery in the State Case took place in or about October 2021.

---

[2]  In September of 2023, the State Case concluded with Zhang accepting separate offers to compromise from Yuan/Lin and Camiwell U.S. pursuant to California Code of Civil Procedure section 998.

39.     In or about December 2021, Defendant Asiacom China registered its stock for an IPO in China. According to its registration statement (rough English translation), "Due to the failure of the acquisition of Camiwell in the United States, on November 26, 2018, the company established the U.S. Asiacom to be responsible for the execution of business in the United States.  At present, the United States and Canada are executed by Asiacom in the United States and Camiwell in Canada respectively, and the main business leader is still Benlin Yuan."

40.     According to the Asiacom China IPO registration statement, after Yuan registered Asiacom U.S., Camiwell Canada was acquired by Asiacom China (through its subsidiary in Hong Kong, Rongsheng Hi-Tech) in or about May 2019.

41.     According to the Asiacom China IPO registration statement, Yuan and Lin were paid RMB 10.5705 million (USD and RMB exchange ratio at the time of the Complaint is about 1:7.28) for the sale of Camiwell Canada in June 2019.

42.     According to the Asiacom China IPO registration statement, Camiwell Canada diverted Asiacom China's business from Camiwell U.S. to Camiwell Canada, in the amount of RMB 6.5845 million and RMB 3.6031 million in 2018 and 2019, respectively, while outsourcing to Camiwell U.S. to provide the same IT services for no consideration.  Plaintiff is informed and believes and, based thereon, alleges that Camiwell Canada was able to minimize its own expenses by maintaining a barebones operation with only two employees.  Plaintiff is further informed and believes and, based thereon, alleges that Camiwell Canada's actions were at the direction of Asiacom China.

43.     This scheme enabled Yuan and Lin to maximize their profit (approximately $1.4 million) through Camiwell Canada at the expense of Camiwell U.S., and enabled them to sell Camiwell Canada to Asiacom China for over $1.5 million dollars.  None of said information and facts were available to Zhang at the time he filed the State Case, and the same were not alleged as part of his claims in that action.

44.     Following the 998 offers and acceptances in the State Case, Yuan and Lin resumed their looting and assault on Camiwell U.S..

45.    On September 28, 2023 (less than a week after the 998 offers were accepted), Yuan and Lin filed a Certificate of Election to Wind Up and Dissolve Camiwell U.S. without Zhang's knowledge or consent.[3]

46.    Next, they made three separate and unauthorized withdrawals totaling almost $672,000 from Camiwell U.S.'s account at Bank of America (account number 3251 1222 0628), all without Zhang's knowledge or consent, as follows:

      a.    $162,500 transfer to a Canadian company controlled by Yuan called Scinal Inc., Canada

      b.    $200,000 in the form of a cashier's check payable to an unknown recipient

      c.    $309,438 in the form of cashier's check payable to an unknown recipient

47.    Even Camiwell U.S.'s own counsel in the State Case, Attorney Marie Quashnock, recognized the above-referenced funds transfer as "unauthorized" and requested, to no avail "that Mr. Yuan immediately return all funds to Camiwell's accounts."

48.    Plaintiff is informed and believes and, based thereon, alleges that, absent Court intervention, Yuan and Lin plan to make even more unauthorized transactions, without Zhan's consent and inconsistent with the law and good business practices.

49.    Ordinarily, Zhang would make a demand to the Board of Directors for Camiwell U.S. to take action against Yuan and Lin to return the funds and profits back to Camiwell U.S.; however, such demand would be futile and is excused by the fact that, as holders of a majority interest in Camiwell U.S. and being two of the three directors, Yuan and Lin could decline to take any such action.  Indeed, after the 998 offers were accepted, Zhang demanded return of the funds, through his counsel to counsel for Yuan and Lin, to no avail.  Even the request from Camiwell U.S.'s own counsel, hired by Yuan and Lin themselves, to return funds to Camiwell U.S. was rebuffed by counsel for Yuan and Lin.

---

[3] Plaintiff is informed and believes and, based thereon, alleges that the dissolution has not yet occurred because Camiwell's two remaining creditors have not yet been paid, the final tax returns have not yet been filed, and the balance of funds remaining after payment of the creditors has not yet been disbursed to shareholders. Camiwell Inc. currently has $211,741.01 in funds left. These funds, along with any derivative recoveries that may be obtained in the District Court action, are its only remaining assets. Its only remaining creditors are its accountant ($50,000) and its CPA ($7,709.90), plus any additional fees that may be incurred in filing the final returns.

**FIRST CAUSE OF ACTION**

**Conversion**

(*Derivatively by Camiwell U.S. against Defendants Yuan and Lin*)

50.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

51.     Plaintiff is informed and believes that Camiwell U.S. owned and possessed $672,000 in its Bank of America account after the 998 offers were accepted.

52.     Plaintiff is informed and believes and, based thereon, alleges that shortly after the 998 offers were accepted, Defendants Yuan and Lin substantially interfered with Camiwell U.S.'s ownership and possession of $672,000 by knowingly and misappropriating corporate assets of Camiwell U.S. when they withdrew almost $672,000 from Camiwell U.S.'s account at Bank of America, without justification or authority, and without Zhang's knowledge or consent.

53.     Defendants converted and dispossessed said property, assets, and funds without proper authorization or consent from Camiwell, U.S.

54.     As a direct and proximate result of Defendants Yuan and Lin's conducts, Camiwell U.S. has been damaged in an amount to be proven at trial, but not less than $4,000,000.

55.     Defendants Yuan and Lin's conducts were a substantial factor in causing Plaintiff's damage.

56.     In engaging in the conduct as alleged herein, Defendants Yuan and Lin, and each of them, acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish said Defendants and to deter such conduct.

**SECOND CAUSE OF ACTION**

**Breach of Fiduciary Duty**

(*Derivatively by Camiwell U.S., and individually by Zhang, against Yuan and Lin*)

57.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

58.     As members of the Board Directors of Camiwell U.S., Defendants Yuan and Lin owed to the company and to its shareholders, including Plaintiff, a fiduciary duty of loyalty.

59.     As alleged herein, Defendants Yuan and Lin breached their fiduciary duties by misappropriating corporate assets of Camiwell U.S. when they withdrew almost $672,000 from Camiwell U.S.'s account at Bank of America, without justification or authority, and without Zhang's knowledge or consent.

60.     As a direct and proximate result of the conducts of Defendants Yuan and Lin, Camiwell U.S. and Plaintiff have been damaged in an amount to be proven at trial, but not less than $4,000,000.

61.     The conduct of Defendants Yuan and Lin was a substantial factor in causing such damage.

62.     In engaging in the conduct as alleged herein, Defendants Yuan and Lin, and each of them, acted with oppression, fraud, or malice, entitling Plaintiff and Camiwell U.S. to an award of punitive damages in an amount sufficient to punish said Defendants and to deter such conduct.

**THIRD CAUSE OF ACTION**

**Fraud (Concealment)**

*(Derivatively by Camiwell U.S. against Asiacom China)*

63.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

64.     After its attempt to legally acquire Camiwell U.S. failed, Asiacom China tried to acquire Camiwell U.S. illegally and under the table.

65.     On November, 20, 2018, Feng Wang, Vice President of Asiacom China in charge of overseas business, sent an email and thanked Camiwell U.S. for its past years of service to Asiacom China's customers and wanted to ensure a smooth transition with Camiwell U.S.'s engineers assisting Asiacom U.S.'s engineers when Asiacom China sets up its own operations in the U.S.

66.     Defendant Asiacom China intentionally concealed certain facts to Plaintiff, which was to conduct a corporate raid on Camiwell U.S.

67.     Unknown to Plaintiff at the time and contrary to the promise of Feng Wang for a professional and cooperative transition of business, Asiacom China secretly engaged Yuan as its manager and agent to take charge of its North America operation.  Asiacom China through its subsidiary Asiacom U.S. which was incorporated by Yuan, and conspiring with Yuan and his brother Ben Tao Yuan (acting as CEO of Asiacom U.S.), carried out a secret corporate raid plan shortly after November 24, 2018 against Camiwell U.S. by hiring almost all of the 50 engineers of Camiwell U.S, and purchasing Camiwell U.S.'s

equipment, files, documents, programs, specifications necessary for business for the nominal amount of $37,281.29.

68.     Unknown to Plaintiff and in collusion with Asiacom China, Yuan signed the Asset Transfer Agreement as President of Camiwell U.S. that transferred almost all assets of Camiwell U.S. to Asiacom U.S., with Yuan's brother signing on behalf of Asiacom U.S. (as its CEO) which was and is, at all relevant times, a subsidiary of Asiacom China.

69.     Camiwell U.S. did not know of the concealed facts that Asiacom had a secret raid plan, and Yuan signed an Assets Transfer Agreement in which Asiacom U.S. hired almost all 50 of the engineers of Camiwell U.S. and purchased Camiwell U.S.'s equipment for a nominal amount until Zhang later found out from the discovery in the State Case  in August 2023.  Camiwell U.S. reasonably relied upon in good faith of Asiacom China's words that it wanted to ensure a smooth transition and Yuan's word that he would be fully loyal to Camiwell and not do anything competitive against Camiwell U.S.

70.     Asiacom intended to deceive Plaintiff by concealing the facts and never voluntarily came forth with such information.  Asiacom had a desire never to tell Zhang.  Zhang would have never known about these fact until they were revealed in Yuan and Lin's discovery in August 2023.

71.     Had the omitted information been disclosed to Zhang and Camiwell U.S., Zhang and Camiwell U.S. reasonably would have behaved differently by negotiating a fair market value for asset purchase, as it was trying to do before Asiacom China's attempted acquisition failed.  Camiwell U.S. reasonably would have hired counsel to block the give away of its assets pursuant to the Asset Transfer Agreement between two related people (Yuan and his brother Ben Tao Yuan) without Board or shareholder approval from Camiwell U.S., in violation of California Corporations Code Section 1001 (a).

72.     Plaintiff and Camiwell U.S. was harmed when Camiwell U.S. lost almost all 50 of its engineers and its equipment necessary for the business.

73.     Defendant Asiacom China's concealment was a substantial factor in causing Plaintiff and Camiwell U.S's harm.

///

///

///

**FOURTH CAUSE OF ACTION**

**Unjust Enrichment Based on Fraud**

***Corporate Raid on Camiwell U.S.***

(*Derivatively by Camiwell U.S. against Asiacom China, Asiacom U.S.*)

74.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

77.     By engaging in the fraudulent conduct by Feng Wang, Vice President of Asiacom China in charge of overseas business in conspiring with Yuan, as alleged herein, Asiacom U.S. and Asiacom China received the benefit of Camiwell U.S.'s labor and services for $37,281.29 when Yuan and Asiacom China raided Camiwell U.S.'s assets and hired away 50 engineers to Asiacom U.S. which provided the services to Asiacom China.  These assets included programs, files, customer information, technology, data, computers, servers, and the contents on such devices.  The value of Camiwell U.S.'s labor and services actually amounted to $2,460,000 (based on $8,200 per month per engineer that Asiacom China was paying Camiwell U.S. for six months of reasonablel time necessary to ramp things up to provide the same IT services).

78.     Thus, Asiacom U.S. and Asiacom China were enriched in the amount of $2,422,719 ($2,460,000 minus $37,281.29).

79.     Asiacom China and Asiacom U.S. were  unjustly enriched by engaging in self dealing with its own employee and manager Yuan and their own subsidiary and/or sister company Camiwell Canada, by not having to pay fair market rate fees for the IT services rendered by Camiwell U.S. like they would have to in normal arm's length transactions.

**FIFTH CAUSE OF ACTION**

**Unjust Enrichment Based on Fraud**

***Diversion of Camiwell U.S.'s Business***

(*Derivatively by Camiwell U.S. against Camiwell Canada*)

80.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

81.    By engaging in the conduct as alleged herein, Defendant Camiwell Canada received the benefit of RMB 6.5845 million and RMB 3.6031 million in 2018 and 2019 when it diverted Asiacom China's business from Camiwell U.S. to Camiwell Canada while outsourcing to Camiwell U.S. to provide the same IT services for no consideration.  At the same time,Camiwell Canada was able to minimize its own expenses by maintaining a barebones operation with only two employees.

82.    Camiwell Canada was unjustly enriched when it received the IT services provided by Camiwell U.S. without paying Camiwell U.S.

83.    Thus, Defendants Camiwell Canada, Asiacom China, and Asiacom U.S. unjustly enriched themselves at the expense of Camiwell U.S., obtaining benefits wrongfully that they unjustifiably have not returned.

84.    As a direct and proximate result of Defendants' conduct, Camiwell U.S. has been damaged in an amount to be proven at trial, but not less than $4,000,000.

**SIXTH CAUSE OF ACTION**

**Common Count:  Money Had and Received**

***Corporate Raid on Camiwell U.S.***

(*Derivatively by Camiwell U.S. against Asiacom China, Asiacom U.S..*)

85.    Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

86.    By engaging in the conduct as alleged herein, Asiacom U.S. received the benefit of 50 of the engineers and Camiwell U.S.'s assets, labor and services for $37,281.29 when Asiacom China and Yuan raided Camiwell U.S.'s assets and hired away 50 engineers to Asiacom U.S. which provided the services to Asiacom China.  These assets included programs, files, customer information, technology, data, computers, servers, and the contents on such devices.  The amount should have been $2,460,000 (50 engineers working at $8,200 per month, which is the rate that Asiacom China used to pay Camiwell U.S. took six months to ramp up the services).  Thus, Asiacom U.S. received $2,422,719 in services and assets that was intended to be used for the benefit of Camiwell U.S.

87.    The amount of $2,422,719 was not used for the benefit of Camiwell, U.S.

88.    Asiacom U.S. has not given $2,422,719 to Camiwell U.S.

**SEVENTH CAUSE OF ACTION**

**Common Count:  Money Had and Received**

*Diversion of Camiwell U.S.'s Business*

89.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

90.     By engaging in the conduct as herein, Defendant Camiwell Canada received money that was intended to be used for the benefit of Plaintiff.  Camiwell Canada received money in the amount of approximately RMB 6.5845 million and RMB 3.6031 million in 2018 and 2019 from Asiacom China that was intended to be used for the benefit of Camiwell U.S. as it provided IT services to Asiacom China.

91.     The money that Camiwell Canada received from Asiacom China was not used for the benefit of Camiwell U.S. as Camiwell Canada kept the money.

92.     Camiwell Canada has not paid or given the money to Camiwell U.S. for its IT services in which Camiwell Canada has received from Asiacom China.

**EIGHTH CAUSE OF ACTION**

**Preliminary Injunction**

(*Derivatively by Camiwell U.S. against Bank of America, Yuan, and Lin*)

93.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

94.     After Defendants Yuan and Lin withdrew funds deposited in the business account at Bank of America (account no. 3251 1222 0628), there is still $77,544.29 remaining in that account and another $134,296.28 remaining in a separate account (account no. 3251 0849 4390).

95.     Camiwell U.S. through this second amended derivative complaint petitions the Court to issue a preliminary injunction to prohibit Yuan and Lin from further withdrawing any funds from said accounts, and to prohibit Defendant Bank of America from allowing any further withdrawal from said accounts.

96.     Camiwell U.S. further asks that the Court enjoin Defendants, and each of them, from dissolving Camiwell U.S. and from diminishing its assets.

97.     Camiwell U.S. further asks that the Court enjoin Defendants, and each of them, from usurping corporate opportunities of Camiwell U.S.

## NINTH CAUSE OF ACTION

### Declaratory Relief

(*Derivatively by Camiwell U.S., and individually by Zhang, against Yuan and Lin*)

98.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

99.     A dispute presently exists between the parties as to who is entitled to the funds in the above-referenced B of A accounts.

100.    A judicial determination is therefore necessary to establish rightful ownership of the funds.

## TENTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (*Derivatively by Camiwell U.S. against Asiacom China*)

101.    Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-49 as if fully set forth herein.

102.    In every contract or agreement, there is an implied promise of good faith and fair dealing.  This implied promise means that each party will not do anything to unfairly interfere with the rights of any other party to receive benefits of the contract.

103.    Camiwell U.S. and Asiacom China entered into various service contracts for Camiwell U.S. to provide IT services to Asiacom China.

104.    Camiwell U.S. did all of the significant things that the contract required it to do including providing IT services to Asiacom China.

105.    Asiacom China conduct of carrying out a secret corporate raid plan and hired away Camiwell U.S.'s CEO Benlin Yuan to be charge of business in the U.S. and Canada which Yuan brought in his own brother Ben Tao Yuan as CEO of Asiacom U.S.  Asiacom China, Asiacom U.S. Yuan and his brother conjured up a secret plan to raid Camiwell U.S. employees and assets for a nominal consideration of $37,281.19.

106.    That by doing so, Asiacom China did not act fairly and in good faith, and Camiwell U.S. was harmed by Asiacom China's conduct.

**PRAYER FOR RELIEF**

Now, therefore, Plaintiff, individually and derivatively on behalf of Camiwell U.S., prays for relief and judgment as follows:

1.    For injunctive relief preventing Defendants, their successors and affiliates, and all persons acting on their behalf from further unlawfully:

    a.  further diminishing Camiwell U.S. and its assets;

    b.  transferring Camiwell U.S. assets to their own interests;

    c.  taking corporate opportunities of Camiwell U.S.

2.    For compensatory damages in an amount to be proven at trial, but not less than $4,000,000.

3.    For punitive damages according to proof.

4.    For reasonable attorneys fees and costs to the extent permissible under applicable law. For such other relief as the Court may deem just and proper.

Dated:  June 26, 2024            SAC Attorneys LLP

                            By:  <u>Brian A. Barnhorst</u>
                                James Cai, Esq.
                                Brian A. Barnhorst, Esq.
                                Dennis Chin, Esq.
                                Attorneys for Plaintiff and Counter-Defendant
                                Jinju Zhang