James Cai (SBN 200189)
jcai@sacattorneys.com
Brian A. Barnhorst (SBN 130292)
bbarnhorst@sacattorneys.com
Dennis Chin (SBN 236466)
dchin@sacattorneys.com
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff and Counter-Defendant Jinju Zhang

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINJU ZHANG, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>BENLIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEJING ASIACOM INFORMATION TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1 to 20, inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No.: 3:23-cv-05818-CRB<br><br>**PLAINTIFF'S OPPOSITION TO CAMIWELL CANADA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: August 15, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: 4 – 17th Floor |

Plaintiff, JINJU ZHANG (Plaintiff or "Zhang"), submits the following in opposition to the Motion to Dismiss filed by Defendant CAMIWELL, INC. (CANADA) ("Camiwell Canada").

## I. INTRODUCTION

Plaintiff has pleaded sufficient facts to establish that the Court has personal jurisdiction over Defendant Camiwell Canada, and has adequately pleaded the cause of action for Common Counts: Money Had and Received.

To bolster Plaintiff's claim for unjust enrichment based on fraud, Plaintiff will allege in a Verified Second Amended Derivative Complaint additional facts establishing how Camiwell Canada made misrepresentations to Camiwell U.S. that Camiwell U.S. would get paid for services rendered to Beijing Asiacom.

Plaintiff acknowledges that the amended derivative complaint should be verified, and apologizes for the oversight.

Plaintiff timely filed its claims against Camiwell Canada because he did not obtain the Asiacom registration statement until Summer of 2023 (the date of the discovery of the fraud) when documents were produced in the state case revealing that Camiwell Canada had misrepresented to Camiwell U.S. about its contracts with Beijing Asiacom.

Plaintiff requests that, if the Court is inclined to grant the motion, he be given leave to further amend the complaint in order to plead additional facts in a verified second amended complaint.

## II. ARGUMENT

### A. The Court Has Personal Jurisdiction Over Camiwell Canada.

Camiwell Canada contends that it is not subject to personal jurisdiction in California. This contention lacks merit.

Where, as here, personal jurisdiction is contested, Plaintiff bears the burden of establishing the court's jurisdiction. Allegations of jurisdictional facts are to be construed in Plaintiff's favor; if, as here, the Court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. See, e.g., *Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law*, 787 F. 2d 7, 8 (1st Cir. 1986), citing 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 12.07[2.–2] (2d ed. 1985); 2 J. Moore, J. Lucas, H. Fink

& C. Thompson, Moore's Federal Practice ¶ 4.41–1[3] (2d ed. 1985). Of course, to defeat a defendant's motion to dismiss, the demonstration of personal jurisdiction must be based on specific facts set forth in the record. "Although the burden of proof is light, [the plaintiff] may not rely on the mere allegations of its complaint, but must point to specific facts in the record that support those allegations." *Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F. 3d 1, 8 (1st Cir. 2002).

Contrary to Camiwell Canada's claim that a general statement that a company provides services in California will not suffice to establish personal jurisdiction, Plaintiff went beyond the general statement and alleged that Camiwell Canada has sufficient minimum contacts with the State of California as it shares the same website, same customers, and same ownership as Camiwell U.S. and performs the same business services and utilizes the same or substantially similar employees as Camiwell U.S., which has a principal place of business in Santa Clara County. *See First Amended Derivative Complaint, p. 4, lines 3 – 7.*

As CEO of Camiwell Canada, Defendant Benlin Yuan (Yuan) managed all projects and sent out emails to his employees directing them to work in California. *See Declaration of Jinju Zhang.* On a systematic and quarterly basis, Yuan and his employees traveled to California for work and lived in Plaintiff's house in San Jose, California. *Id.* As CEO of Camiwell Canada, he actively directed Camiwell U.S. to commit tax fraud by sending out fake invoices for services for consulting that were never rendered and asked Camiwell U.S. to pay shareholder dividends in the guise of consultant fees. *Id.* This is further evidence under the alter ego. Although these facts were not alleged in the First Amended Complaint, Plaintiff has made these allegations in a proposed Verified Second Amended Complaint.

B.   <u>Plaintiff Will File a Verified Second Amended Derivative Complaint.</u>

Plaintiff will file a verified second amended derivative complaint to comply with the requirement as set forth in FRCP Rule 23.1.

C.   <u>Plaintiff Has Properly Stated a Claim for Unjust Enrichment Based on Fraud.</u>

Camiwell Canada was unjustly enriched when it received the benefit of money paid by Beijing Asiacom for services rendered by Camiwell U.S. *See Ex. A, Proposed Second Amended Complaint.* In summary, on or about August and September 2018, Benlin Yuan as CEO of Camiwell

1  Canada represented that Camiwell U.S. would be paid for services rendered to Beijing Asiacom. *Id.*
2  Camiwell Canada's representation was false as the invoices show that Camiwell Canada invoiced
3  Beijing Asiacom approximately $350,000 in August 2018 and $326,000 in September 2018 for
4  services performed by Camiwell U.S. *Id.*  These invoices were not discovered until Summer 2023
5  during discovery in the state case. *Id.* Camiwell U.S. was never paid for the services it rendered to
6  Beijing Asiacom. *Id.* Camiwell Canada knew the representations were false as it knew that Camiwell
7  U.S. had performed the services but never had an intention to pay Camiwell U.S. and still has not paid
8  Camiwell U.S. for services rendered to Beijing Asiacom. *Id.* Camiwell Canada concealed the fact that
9  it received $350,000 for August 2018 and $326,000 for September 2018 from Beijing Asiacom. *Id.*
10 Accordingly, Camiwell Canada was unjustly enriched based on the fraudulent representations it made
11 to Camiwell U.S. and concealed the amount it had received until Zhang discovered the true facts in the
12 Summer of 2023. Although these facts were not alleged in the First Amended Complaint, Plaintiff has
13 made these allegations in a proposed Verified Second Amended Complaint.

14        D.      Plaintiff Has Properly Stated a Claim for Money Had and Received.

15       Camiwell Canada contends in the motion to dismiss, "The elements of a claim for
16 money had and received are that (1) defendant received money, (2) the money defendant received was
17 for plaintiff's use, and (3) defendant is indebted to plaintiff." Plaintiff believes that he has alleged
18 sufficient facts to state a claim for Common Count: Money Had and Received. Camiwell Canada
19 contends that there is no showing that Camiwell Canada is indebted to Camiwell U.S. for any
20 identifiable reason. This contention lacks merit.

21       In the First Amended Complaint, Plaintiff alleges, "Defendants received money that was
22 intended to be used for the benefit of Plaintiff. The purchase price for IT services provided by
23 Camiwell U.S. belonged and was intended to be used for the benefit of Camiwell U.S." This satisfies
24 the first two elements. Plaintiff then alleges, "The money was not used for the benefit of Camiwell
25 U.S. Defendants Camiwell Canada, Asiacom China, and Asiacom U.S. took the money away and
26 enjoyed the benefit of Camiwell U.S.'s labor and service to the detriment of Camiwell U.S.
27 Defendants have not given the money back to Camiwell U.S." Plaintiff's allegations demonstrate that,
28 since Camiwell Canada took money that was for the benefit of Camiwell U.S., it owes money that it

PLAINTIFF'S OPPOSITION TO CAMIWELL CANADA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
4
*Zhang v. Yuan, et al.*; 3:23-cv-05818-CRB

has not given back to Camiwell U.S. In other words, Camiwell Canada is indebted to Camiwell U.S. for the IT services it provided to Asiacom China.

Should the Court decide that Plaintiff has not sufficient pleaded the cause of action for Common Count: Money Had and Received, Plaintiff requests that he be given leave to further amend to plead more facts for this cause of action.

E.  Due to the Delayed Discovery Rule, Plaintiff's Claim Is Not Barred by the Statute of Limitations.

Camiwell Canada's motion is long on law but short on facts. Camiwell Canada points to paragraphs 17-20 and 22-23 of the state complaint as the sole evidence that Zhang was aware of, and alleged in the state complaint, that Camiwell was responsible for the harm for which he now seeks redress in this Court. A review of the allegations of those paragraphs, though, reveals that that is simply not the case.

The complaint in *this* case alleges that Yuan and Lin caused Camiwell US to perform work that Camiwell US should have been paid for, but that Yuan and Lin diverted those payments to Camiwell Canada, which was unjustly enriched thereby.

> 30. According to the Asiacom China IPO registration statement, Camiwell Canada diverted Asiacom China's business from Camiwell U.S. to Camiwell Canada, in the amount of RMB 6.5845 million and RMB 3.6031 million in 2018 and 2019, respectively, while outsourcing to Camiwell U.S. to provide the same IT services for no consideration. Plaintiff is informed and believes and, based thereon, alleges that Camiwell Canada was able to minimize its own expenses by maintaining a barebones operation with only two employees. Plaintiff is further informed and believes and, based thereon, alleges that Camiwell Canada's actions were at the direction of Asiacom China.
> 31. This scheme enabled Yuan and Lin to maximize their profit (approximately $1.4 million) through Camiwell Canada at the expense of Camiwell U.S., and enabled them to sell Camiwell Canada to Asiacom China for over $1.5 million dollars. None of said information and facts were available to Zhang at the time he filed the State Case, and the same were not alleged as part of his claims in that action.

FAC at ¶¶ 30-31.

The complaint in the state case makes no such allegations, because Zhang was not aware of those facts at the time—as alleged in *this* action, he only became aware of those facts when he obtained the Asiacom offering statement in October of 2021. Instead, the relevant allegations of the state complaint say only the following:

> 19. Around the same time that Asiacom US entered the Canadian and US markets, Yuan began pushing Zhang to dissolve Camiwell, Inc. Zhang was suspicious of the dissolution because he believed Yuan and Lin may be attempting to cut Zhang out of Camiwell, Inc. and transfer all of Camiwell, Inc.'s assets and business to Asiacom US, a company in which Zhang does not own an interest as outlined below, thereby depriving Zhang of money to which he would be entitled as a shareholder.
>
> 20. Zhang believes that, since the acquisition with Asiacom fell through, Yuan and Lin have been transferring Camiwell Inc.'s assets, including but not limited to, money, employees, the lease for Camiwell Inc.'s office, and equipment, to Asiacom or Asiacom US, either directly or through Camiwell Canada, for little or no consideration, and without Board of Director approval.

State Complaint at ¶¶ 19-20.

The law is clear that, particularly when the defendants have affirmatively hidden their misconduct, the statute of limitations does not begin to run until plaintiff discovers that he has been harmed and that the defendants' conduct is the proximate cause of that harm. See, e.g., *NBC Universal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1232 (2014): "A plaintiff's inability to discover a cause of action may occur 'when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand.'" "[C]laims based on two independent legal theories against two separate defendants can accrue at different times." *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1323 (2007). That is precisely what occurred here, and is why this action against Camiwell Canada was timely filed. Yuan deliberately hid from Plaintiff invoices that were sent to Asiacom China by Camiwell Canada for work performed by Camiwell U.S. He fought tooth and nail in the previous state action, and only produced said invoices at late stage of the state case, in the Summer of 2023.

/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /

## III. CONCLUSION

For the foregoing reasons, Camiwell Canada's Motion to Dismiss should be denied. In the event the Court finds some portion of the First Amended Complaint to be deficient, Plaintiff should be allowed leave to further amend; a proposed Verified Second Amended Derivative Complaint is appended to the accompanying Declaration of Dennis Chin.

Dated: July 25, 2024                                  SAC Attorneys LLP

/s/ Dennis Chin
James Cai, Esq.
Brian A. Barnhorst, Esq.
Dennis Chin, Esq.
*Attorneys for Plaintiff and Counter-Defendant,
Jinju Zhang*