1  James Cai (SBN 200189)
2  jcai@sacattorneys.com
   Brian A. Barnhorst (SBN 130292)
3  bbarnhorst@sacattorneys.com
   Dennis Chin (SBN 236466)
4  dchin@sacattorneys.com
   SAC ATTORNEYS LLP
5  1754 Technology Drive, Suite 122
   San Jose, California 95110
6  Telephone: (408) 436-0789
7
8  Attorneys for Plaintiff and Counter-Defendant Jinju Zhang
9                    UNITED STATES DISTRICT COURT
10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  JINJU ZHANG, an individual; | Case No.: 3:23-cv-05818-CRB |
| 12                    Plaintiff, | **DECLARATION OF DENNIS CHIN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO CAMIWELL CANADA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 13  vs. | |
| 14  BENLIN YUAN, an individual; HONG LIN, | |
| 15  an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), | Date:  August 15, 2024 |
| 16  a Canadian corporation; BEJING ASIACOM INFORMATION TECHNOLOGY CO., LTD., | Time:  10:00 a.m. Judge:  Hon. Vince Chhabria |
| 17  a Chinese corporation; ASIACOM | Courtroom:  4 – 17th Floor |
| 18  AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a | |
| 19  National Association; and DOES 1 to 20, inclusive, | |
| 20 | |
| 21                    Defendants. | |
| 22 | |
| 23  AND RELATED CROSS-ACTIONS | |

24
25
26
27
28

1    I, Dennis Chin, declare:

2   1.    I am an attorney at law, duly licensed to practice and practicing in the State of California.

3   2.    I am a Litigation Attorney at SAC Attorneys LLP, counsel for Plaintiff and Counter-Defendant

4   herein.

5   3.    I have personal knowledge of the matters contained in this declaration and, if called upon, could

6   and would competently testify thereto.

7   4.    I make this declaration in support of Plaintiff's opposition to the motion to dismiss first amended

8   complaint filed by Defendant CAMIWELL CANADA.

9   5.    Appended as **Exhibit 1** hereto are true and correct copies of fake invoices for consulting services

10   that were never rendered from Camiwell Canada to Camiwell U.S.

11   6.    Appended as **Exhibit 2** hereto are true and correct copies of invoices from Camiwell Canada to

12   Beijing Asiacom that were produced in Summer 2023.

13   7.    Appended as **Exhibit A** hereto is a proposed Verified Second Amended Derivative Complaint.

14   8.    Appended as **Exhibit B** hereto is a redline version of the proposed Second Amended Derivative

15   Complaint.

16

17    I declare under penalty of perjury that the foregoing is true and correct, and that this declaration

18   was executed on July 25, 2024, at San Jose, California.

19

20                                      /s/ Dennis Chin
                                        Dennnis Chin

21

22

23

24

25

26

27

28

E X H I B I T   1

# CAMiWell Inc.

# INVOICE

HST#:  83592 5777 RT0001

**DATE: 2018-09-17**
**INVOICE #: CI_2018_118**

5946 Dalebrook Cres.,
Mississauga, ON L5M 5S1, Canada
Phone: +1(416)640-8325

**Bill To:**
**CAMiWell Inc. (USA)**

**For:**
Ali /Didi US IDC Field Maintenance/Cabling Service Consulting

4633 Old Ironsides Drive, Suite 290,
Santa Clara, CA 95054
Phone: +1(408)212-0678

Currency: US$

| SALES/SERVICE DESCRIPTION | AMOUNT |
|---|---|
| Ali/Didi US IDC Field Maintenance Service Consulting | $150,000.00 |
| Ali US IDC Cabling Service Consulting | $45,000.00 |
| | |
| Subtotal ) | $195,000.00 |
| Tax | $0.00 |
| **TOTAL** | $195,000.00 |

If you have any questions concerning this invoice, contact us at accounting@camiwell.com

Signature:

**THANK YOU FOR YOUR BUSINESS!**

# CAMiWell Inc.

# INVOICE

HST#:  83592 5777 RT0001

**DATE: 2016-06-23**
**INVOICE #: CI_2016_105**

5946 Dalebrook Cres.,
Mississauga, ON L5M 5S1, Canada
Phone: +1(416)640-8325

**Bill To:**
**CAMiWell LLC.**

**For:**
Ali US OC27/OT7 Cabling Project Consulting,
and Ali US44 DC Server Installation Service

2377 Pleasant Acres Dr.,
San Jose, CA 95148,USA
Phone: +1(952)232-4805

Currency: US$

| SALES/SERVICE DESCRIPTION | AMOUNT |
|---|---|
| Ali US OC27/OT7 Cabling Project Consulting, and Ali US44 DC Server Installation Service | $13,910.75 |
| Subtotal ⟩ | $13,910.75 |
| Tax | $0.00 |
| **TOTAL** | $13,910.75 |

If you have any questions concerning this invoice, contact us at accounting@camiwell.com

Signature:

**THANK YOU FOR YOUR BUSINESS!**

EXHIBIT 2

# CAMiWell Inc.
**(加拿大凯威公司)**

HST#: 83592 5777 RT0001

5946 Dalebrook Cres.,
Mississauga, ON L5M 5S1, Canada
Phone: +1(416)640-8325

# INVOICE

**DATE（发票日期）：**
2018-09-18

**INVOICE #（发票编号）：**
CI_2018_119

**Bill To:**
**Beijing Asiacom Info Technology Co.,Ltd**
北京亚康万玮信息技术有限公司

Floor 8 Chuangfu Building, Block 18 Danling St.,
Haidian Nan Rd., Haidian District,Beijing,P.R.China,100080
北京市海淀区海淀南路丹棱街18号创富大厦8层(100080)
Phone(电话): +86(10)-58834060

**For:**
Ali USA IDC Cabling Project Service ( Jan 2018 to Jul 2018)
阿里美国IDC机房网络布线项目服务（2018年1月至7月）

Currency(货币): US$(美元)

| SALES DESCRIPTION (产品/服务内容) | AMOUNT （金额） |
|---|---|
| Ali USA IDC Cabling Service (Project Management,Technical Support, Installation, Test and Troubleshooting， Delivery) (Completed between Jan 2018 and Jul 2018) (Balance Payment)<br>阿里美国IDC机房布线工程（项目管理，技术支持，项目实施，测试和故障排查，项目验收交付）<br>（2018年1月至7月31日交付完成的项目）（费用余款） | 325,910.84 |
| _CAMiWell 美元帐户电汇信息：_<br>帐户名：CAMiWell Inc.<br>帐户货币: 美元<br>帐号：▓▓▓▓▓▓▓▓▓▓<br>开户银行: Bank of Montreal  （加拿大蒙特利尔银行）<br>开户银行地址：<br>    2825 Eglinton Ave. West,<br>    Mississauga, ON, L5M 6J3<br>    Canada<br>BMO SWIFT BIC Code: BOFMCAM2<br>BMO本地清算号：CC000139782 | |
| Subtotal  （小计） | $325,910.84 |
| HST  （税） | $0.00 |
| **TOTAL(总计)（美元）** | **$325,910.84** |

If you have any questions concerning this invoice, contact us at accounting@camiwell.com
如对发票有任何问题，请通过邮件与我们联系: accounting@camiwell.com

**Signature （签字）：**

**THANK YOU FOR YOUR BUSINESS!**
谢谢合作!

# CAMiWell Inc.

**(加拿大凯威公司)**

HST#: 83592 5777 RT0001

5946 Dalebrook Cres.,
Mississauga, ON L5M 5S1, Canada
Phone: +1(416)640-8325

# INVOICE

**DATE (发票日期):**
2018-08-15

**INVOICE # (发票编号):**
CI_2018_116

**Bill To:**
**Beijing Asiacom Info Technology Co.,Ltd**
北京亚康万玮信息技术有限公司

Floor 8 Chuangfu Building, Block 18 Danling St.,
Haidian Nan Rd., Haidian District,Beijing,P.R.China,100080
北京市海淀区海淀南路丹棱街18号创富大厦8层(100080)
Phone(电话): +86(10)-58834060

**For:**
Ali USA IDC Cabling Project Service ( Jan 2018 to Jul 2018)
阿里美国IDC机房网络布线项目服务（2018年1月至7月）

Currency(货币): US$(美元)

| SALES DESCRIPTION (产品/服务内容) | AMOUNT  (金额) |
|---|---|
| Ali USA IDC Cabling Service (Project Management,Technical Support, Installation, Test and Troubleshooting，Delivery) (Completed between Jan 2018 and Jul 2018) (Partly Payment)<br>阿里美国IDC机房布线工程（项目管理，技术支持，项目实施，测试和故障排查，项目验收交付）<br>（2018年1月至7月31日交付完成的项目）（部分费用） | $350,000.00 |
| _CAMiWell 美元帐户信汇信息:_<br>帐户名: CAMiWell Inc.<br>帐户货币: 美元<br>帐号: ▇▇▇▇▇<br>开户银行: Bank of Montreal  (加拿大蒙特利尔银行)<br>开户银行地址:<br>    2825 Eglinton Ave. West,<br>    Mississauga, ON, L5M 6J3<br>    Canada<br>BMO SWIFT BIC Code:  BOFMCAM2<br>BMO本地清算号: CC000139782 | |
| Subtotal  (小计) | $350,000.00 |
| HST  (税) | $0.00 |
| TOTAL(总计) (美元) | $350,000.00 |

If you have any questions concerning this invoice, contact us at accounting@camiwell.com
如对发票有任何问题，请通过邮件与我们联系: accounting@camiwell.com

**Signature (签字):**

**THANK YOU FOR YOUR BUSINESS!**
谢谢合作!

E X H I B I T  A

PROPOSED VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT

James Cai (SBN 200189)
jcai@sacattorneys.com
Brian A. Barnhorst (SBN 130292)
bbarnhorst@sacattorneys.com
Dennis Chin (SBN 236466)
dchin@sacattorneys.com
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff and Counter-Defendant Jinju Zhang

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINJU ZHANG, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>BENLIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEIJING ASIACOM INFORMATION TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1 to 20, inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No.: 3:23-cv-05818-CRB<br><br>**[PROPOSED] VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT**<br>1. **CONVERSION**<br>2. **BREACH OF FIDUCIARY DUTY**<br>3. **FRAUD (CONCEALMENT)**<br>4. **FRAUD (INTENTIONAL MISREPRESENTATION)**<br>5. **UNJUST ENRICHMENT**<br>6. **UNJUST ENRICHMENT**<br>7. **COMMON COUNTS: MONEY HAD AND RECEIVED**<br>8. **COMMON COUNTS: MONEY HAD AND RECEIVED**<br>9. **PRELIMINARY INJUNCTION**<br>10. **DECLARATORY RELIEF**<br>11. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS** |

1

2       Comes now the Plaintiff, JINJU ZHANG ("Plaintiff" or "Zhang"), and alleges for himself and

3 derivatively on behalf of nominal defendant CAMIWELL, INC. (formerly Camiwell, LLC; "Camiwell

4 U.S."), as follows:

5                                      **THE PARTIES**

6 1.      Plaintiff is an individual residing in Conroe, TX, formerly residing in Santa Clara County, CA.

7 2.      Plaintiff is informed and believes and, based thereon, alleges that Defendant BENLIN YUAN

8 ("Yuan") is an individual residing in Mississauga, Ontario, Canada, and was at all relevant times

9 conducting business in Santa Clara County, California. Plaintiff is informed and believes, and thereon

10 alleges that Yuan is and, at all relevant times, was the CEO of Camiwell U.S. and holds 40% of its

11 shares; that he was and is an employee and/or agent of Defendant BEIJING ASIACOM INFORMA-

12 TION TECHNOLOGY CO., LTD ("Asiacom China"), as its key business manager in charge of its

13 businesses in the U.S. and Canada; and that he was and is the spouse of Defendant HONG LIN ("Lin").

14 3.      Plaintiff is informed and believes and, based thereon, alleges that Lin is an individual residing

15 in Mississauga, Ontario, Canada, and was at all relevant times conducting business in Santa Clara

16 County, California; that she is the spouse of Yuan;, and that, at all relevant times, she owned at most

17 25% of the shares of Camiwell U.S.

18 4.      Plaintiff is informed and believes and, based thereon, alleges that Camiwell U.S. is and, at all

19 times relevant to this action, was a California corporation conducting business in Santa Clara County,

20 California, with its principal place of business in Santa Clara County, California.

21 5.      Plaintiff is informed and believes and, based thereon, alleges that Defendant CAMIWELL,

22 INC. (CANADA) ("Camiwell Canada"), is and, at all times relevant to this action, was a Canadian

23 corporation conducting business in Santa Clara County, California.

24 6.      Plaintiff is informed and believes and, based thereon, alleges that Asiacom China was and is a

25 Chinese information technology services company headquartered in Beijing, China, that provides IT

26 services (such as network cabling and server operation and maintenance in data centers for major

27 customers such as Alibaba and Didi) throughout China and in California, including in this judicial

28

district.  At all relevant times, Yuan was and is Asiacom China's key business manager and agent and/or employee, in charge of business in the U.S. and Canada.

7.      Plaintiff is informed and believes and, based thereon, alleges that Defendant ASIACOM AMERICAS, INC. ("Asiacom Americas"), is a Virginia corporation wholly owned by Asiacom China; and that, at all times relevant, it was and is conducting business in Santa Clara County, California, through its key business manager and agent and/or employee, Yuan.

8.      Plaintiff is informed and believes and, based thereon, alleges that Defendant BANK OF AMERICA CORPORATION ("B of A") is a National Association, and, at all times relevant, was and is conducting business in Santa Clara County, California.

9.      Plaintiff is informed and believes and, based thereon, alleges that, at all relevant times, each of the Defendants other than B of A, or some of them, were the partners, agents, servants, and/or employees of one or more of the other said Defendants and, in doing the things hereafter alleged, were acting within the scope of said Defendants' authority such as a partner, agent, servant, and/or employee and with the permission and consent of the other Defendants.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this matter and its California state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

11.     The Court has personal jurisdiction over Defendants because they purposefully availed themselves of the benefits and protections of the laws of the State of California and the United States and have substantial minimum contacts with and business in this judicial district;

    i)      The Court has personal jurisdiction over Defendants Yuan and Lin, who have purposefully availed themselves of the benefits and protections of the laws of the State of California as owners of Camiwell U.S.

    ii)     The Court has personal jurisdiction over Camiwell U.S., a California corporation with a principal place of business in Santa Clara County, California, which has purposefully availed itself of the benefits and protections of the laws of the State of California by registering its corporate status with the Office of the California Secretary of State.

iii)    The Court has personal jurisdiction over Asiacom Americas as it purposefully availed itself of the benefits and protections of the laws of the State of California by its filing of corporate status with the Office of the California Secretary of State to do business in the State of California, and by paying taxes to the California Franchise Tax Board to keep its corporate status active in the State of California. Asiacom Americas has sufficient minimum contacts with the State of California by conducting business in the County of Santa Clara, California, through its key business manager and agent and/or employee Yuan.

iv)    The Court has personal jurisdiction over Camiwell Canada due to its sufficient minimum contacts with the State of California because, at all times relevant, it shared with Camiwell U.S. the same website, same customers, and same ownership (except for Zhang, who is not an owner of Camiwell Canada), and performed the same business services and utilized the same or substantially similar employees as Camiwell U.S., which has a principal place of business in Santa Clara County, California. As CEO of Camiwell Canada, Defendant Benlin Yuan (Yuan) managed all projects and sent out emails to his employees directing them to work in California. On a systematic and quarterly basis, Yuan and his employees traveled to California for work and lived in Plaintiff's house in San Jose, California. As CEO of Camiwell Canada, he actively directed Camiwell U.S. to commit tax fraud by sending out fake invoices for services for consulting that were never rendered and asked Camiwell U.S. to pay share shareholder dividends in the guise of consultant fees.

v)    The Court has personal jurisdiction over Asiacom China as it purposely availed itself of the protections, privileges, and benefits of the of the laws of the State of California when it retained Yuan as its key manager and agent and/or employee in developing and executing Asiacom China's business in the State of California. Asiacom China also had sufficient minimum contacts with the State of California, which, at all relevant times, were continuous and systematic, when it

subcontracted its IT work with Camiwell U.S., which accounted for 95% of Camiwell U.S.'s business. Based on Asiacom China's conduct as alleged herein, this Court's exercise of jurisdiction over Asiacom China would comport with traditional notions of fair play and substantial justice.

12.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

13.     Venue is proper in the Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in Santa Clara, California, and the Northern District of California. Also, the core business and assets at issue were and are primarily in this judicial district.

## ALTER EGO ALLEGATIONS

14.     Plaintiff is informed and believes, and based thereon, alleges that Defendants Yuan and Lin, Camiwell Canada, and Asiacom Americas are and, at all times since its formation, were the alter egos of each other; there was a unity of ownership and interest by, between, and among said Defendants such that any separateness between them has never existed and/or has ceased to exist.

15.     Yuan and Lin own and, at all relevant times, owned Camiwell Canada. Plaintiff is informed and believes, and based thereon, alleges that Camiwell Canada was formed and operated with inadequate capitalization, had no employees, and failed to respect corporate formalities.

16.     Yuan and Lin were the directors of Camiwell Canada from the time of its formation. In January of 2019, Lin was removed as a director and was replaced by Feng Wang and Jiang Xu. Plaintiff is informed and believes, and based thereon, alleges that Feng Wang and Jiang Xu are two members of senior management of Asiacom China and Asiacom Americas.

16.     Without Plaintiff's knowledge or consent, while CEO of Camiwell U.S., and at the direction of Asiacom China, Yuan secretly incorporated Asiacom Americas—with his brother Ben Tao Yuan as its CEO—as a subsidiary of Asiacom China and as a competitor of Camiwell U.S. Plaintiff is informed and believes, and based thereon, alleges that Asiacom Americas was formed and operated with inadequate capitalization, had no employees, and failed to respect corporate formalities.

17.     Plaintiff is informed and believes, and, based thereon, alleges that Camiwell Canada and Asiacom Americas had no separate existence even before Asiacom China acquired Camiwell Canada

1    in May of 2019.

2    18.     Plaintiff is informed and believes, and, based thereon, alleges that Defendants Yuan and Lin,

3    Camiwell Canada, and Asiacom Americas commingled and failed to segregate the funds and assets of

4    each other from their own and treated the assets and funds nominally belonging to each other as their

5    own funds.

6    19.     Plaintiff is informed and believes, and based thereon, alleges that Defendants Yuan and Lin

7    controlled, dominated, managed, and operated Camiwell Canada for their benefit from the time of its

8    formation until January of 2019, when Asiacom China effectively took control, and then ultimately

9    acquired it in May of 2019.

10    20.     Plaintiff is informed and believes, and based thereon, alleges that Yuan and Lin, together with

11    Asiacom China, have controlled, dominated, managed, and operated Asiacom Americas since its

12    formation for their benefit.

13    21.     Plaintiff is informed and believes, and based thereon, alleges that Camiwell Canada and

14    Asiacom Americas is, and at all times mentioned was, a mere shell, instrumentality and conduit

15    through which Yuan and Lin carried on their activities. Yuan and Lin exercised such complete control

16    and dominance of the activities of Camiwell Canada and Asiacom Americas that any individuality or

17    separateness of them do not, and all relevant times did not, exist. Plaintiff is informed and believes,

18    and based thereon, alleges that Camiwell Canada and Asiacom Americas existed and exist solely to

19    ensure that Yuan and Lin remain "judgment proof."

20    22.     Plaintiff is informed and believes, and based thereon, alleges that Asiacom China caused

21    Asiacom Americas to be created solely to insulate itself from liability in the US and Canada.

22    23.     Adherence to the fiction of the separate existence of Asiacom China, Asiacom Americas,

23    Camiwell Canada, Yuan, and Lin as entities distinct from each other would permit an abuse of

24    privileges against liability afforded to companies and corporations, and would result in unfairness to

25    Plaintiff and an inequitable result. It would promote injustice by allowing said Defendants to evade

26    liability and/or to veil assets that should in equity be used to satisfy the judgment sought by Plaintiff in

27    this action.

28

# GENERAL ALLEGATIONS

24.     Plaintiff is informed and believes, and based thereon, alleges that Camiwell Canada is located in Mississauga, Ontario, Canada; Yuan and Lin formed Camiwell Canada on or about 12/5/13, and were initially the sole owners and directors.

25.     Zhang formed Camiwell U.S. initially as a Delaware LLC on 9/16/14; on or about 6/8/2018, it was converted into a California corporation.  At all times relevant, the directors were and are Zhang, Yuan, and Lin; the officers were and are Zhang, Yuan, and Hui Sun; the shareholders were and are Yuan (40%), Zheng (35%), and Lin (25%).  As husband and wife, Yuan and Lin jointly control 65% of the equity of Camiwell U.S.

26.     Camiwell U.S. is an information technology company based in Santa Clara, California. Beginning in December of 2015, Camiwell U.S.'s business began to grow.  This trend continued through 2016 and 2017; however, Yuan was unwilling to provide business operation data and contract information.

27.     In the early months of 2018, Yuan refused to provide business and accounting records to Zhang and told Zhang there were no written contracts and only verbal agreements with Asiacom China, its major customer.

28.     In or about May of 2018, Yuan told Zhang that Asiacom China wanted to merge with Camiwell U.S., but he refused to disclose to Zhang any concrete terms or conditions.  Due to this lack of transparency, Zhang refused to consent to the merger.

29.     Yuan next suggested that Camiwell U.S. be sold to Camiwell Canada, which Yuan and Lin owned, and that they would then sell Camiwell Canada to Asiacom China.

30.     A few days later, Asiacom China offered to purchase Camiwell U.S., proposing that Yuan would be in charge of the Virginia office and do business in the East Coast, while Zhang would be in charge of the California site and do business in the West Coast.  Zhang refused, and the merger negotiations ended.

31.     Until the end of 2018, Camiwell U.S.'s main customer was Asiacom China, which is a contractor for large Chinese technology companies such as Alibaba (China's equivalent of Amazon) and Didi (Uber), providing mainly local data center server operation and maintenance and network

cabling services.  Asiacom China would subcontract its IT work to Camiwell U.S. through various service contracts accounting for about 95% of Camiwell U.S.'s business.  The IT work was performed by approximately 35 engineers in Virginia and 15 engineers in California at two data centers for network cabling and server maintenance in Santa Clara, California.

32.    On November 20, 2018, Feng Wang, General Manager and Vice President of Asiacom China in charge of overseas business, sent an email to Camiwell U.S. thanking Yuan and Zhang for Camiwell U.S.'s past years of service and advising that Asiacom China "plans to set up a US subsidiary, to undertake onsite service business for US customers starting January 1, 2019 . . . ."  He wanted to ensure a smooth transition, and stated, "During the transition, US Camiwell onsite engineers will assist Asiacom US onsite engineers to complete onsite operation maintenance."  A true copy of that email, with translation from Chinese to English, is appended as **Exhibit A** hereto.

33.    In fact, as detailed below, this representation was untrue.  Asiacom China had no onsite engineers, and "Asiacom US" (which did not yet exist; see next paragraph) had none, either.  Rather, Yuan conspired with Asiacom China to hire away Camiwell U.S. engineers and to acquire Camiwell U.S. equipment and assets for a nominal sum.

34.    The day after Wang's email—November 21, 2018—a company named UCC Retrievals, Inc., "pursuant to instructions of counsel," submitted for filing with the Corporation Commission of the Commonwealth of Virginia the Articles of Incorporation for Asiacom Americas Inc.  The sole incorporator was Ruming Liu; Plaintiff is informed and believes, and, based thereon, alleges that Ms. Liu is an attorney in Sunnyvale, CA (SBN 282062).  According to the Articles of Incorporation, the initial directors were Ben Tao Yuan, the brother of Defendant Yuan; Feng Wang, the aforementioned General Manager of Asiacom China; and Jiang Xu.  Plaintiff is presently unaware of Mr. Xu's capacity, but he appears to be with Asiacom China: he was cc'd (at qxu@asiacom.net.cn) on the email from Wang and both he and Wang list the same address in Beijing.  Plaintiff had no contemporaneous knowledge of this filing.

35.    On November 24, 2018, at a Camiwell U.S. shareholder meeting, Yuan told Zhang that he would be fully loyal to Camiwell U.S. and not do anything that would be competitive against it.

36. The effective date of the Certificate of Incorporation of Asiacom Americas Inc. was November 26, 2018. Its initial address listed in the Articles of Incorporation was 45800 Amsterdam Terrace, #36, Dulles, VA 20166, which was the business address for Camiwell U.S.

37. On November 30, 2018, Ben Tao Yuan signed and caused to be filed with the California Secretary of State a Statement and Designation by Foreign Corporation for Asiacom Americas Inc.

38. On January 30, 2019, Defendant Lin was replaced on the board of Camiwell Canada by Feng Wang and Jiang Xu.

39. On or about May 5, 2019, Ben Tao Yuan, as CEO of Asiacom Americas, and his brother, Defendant Benlin Yuan, as President of Camiwell U.S., entered into the Device and Asset Transfer Agreement (the "Asset Transfer Agreement"), a true copy of which, with translation from Chinese to English, is appended as **Exhibit B** hereto. By the terms of that agreement, Asiacom Americas acquired all of the assets and equipment of Camiwell U.S. for the nominal sum of $37,281.29. Plaintiff only became aware of the Asset Transfer Agreement via discovery in the State Action (see ¶ 41, *infra*) in or about October of 2021.

40. Plaintiff is informed and believes and, based thereon, alleges that Yuan and his brother hold an ownership interest in Asiacom China and/or Asiacom Americas.

41. After losing the business of Asiacom China, Yuan began to push Zhang to dissolve Camiwell U.S. Zhang became suspicious of Yuan's motives, and demanded corporate documents of Camiwell U.S. to no avail. On or about July 20, 2020, Zhang initiated a lawsuit in Santa Clara County Superior Court (Case No. 20CV368535; the "State Action") against Yuan, Lin, and Camiwell U.S.[1]

42. In or about December 2021, Asiacom China registered its stock for an initial public offering (IPO) in China. According to its Registration Statement (rough English translation), "Due to the failure of the acquisition of Camiwell in the United States, on November 26, 2018, the company established the U.S. Asiacom to be responsible for the execution of business in the United States. At present, the

---

[1] In September of 2023, the State Case concluded with Zhang accepting separate offers to compromise from Yuan/Lin and Camiwell U.S. pursuant to California Code of Civil Procedure section 998.

United States and Canada are executed by Asiacom in the United States and Camiwell in Canada respectively, and the main business leader is still Benlin Yuan."

43.     Only when he downloaded the Registration Statement in October of 2021 did Plaintiff become aware of the scheme, as alleged herein, by which the Defendants deprived him of his rights and interest in Camiwell U.S.

44.     According to the Registration Statement, after the formation of Asiacom Americas, in or about May of 2019, Asiacom China (through its subsidiary in Hong Kong, Rongsheng Hi-Tech) acquired Camiwell Canada, paying Yuan and Lin over $1.5 million in June of 2019.  Again, Plaintiff became aware of this only in October of 2021 when he obtained the Registration Statement.

45.     According to the Registration Statement, Camiwell Canada diverted Asiacom China's business from Camiwell U.S. to Camiwell Canada, in the amount of RMB 6.5845 million (currently about $905,908) and RMB 3.6031 million ($495,721) in 2018 and 2019, respectively, while outsourcing to Camiwell U.S. to provide the same IT services for no consideration.  In other words, Camiwell U.S. employees did the work (and thus Camiwell U.S. incurred the expense of their salaries), but Camiwell Canada received the income.  Plaintiff is informed and believes and, based thereon, alleges that Camiwell Canada was able to minimize its own expenses by maintaining a barebones operation with only two employees.  Plaintiff is further informed and believes and, based thereon, alleges that Camiwell Canada's actions were at the direction of Asiacom China and/or Asiacom Americas.

46.     This scheme enabled Yuan and Lin to maximize their profit (approximately $1.4 million) through Camiwell Canada at the expense of Camiwell U.S., and enabled them to subsequently sell Camiwell Canada to Asiacom China for over $1.5 million.  None of said information and facts were available to Zhang at the time he filed the State Action, and the same were not alleged as part of his claims in that action.

47.     Following the 998 offers and acceptances in the State Action, Yuan and Lin resumed their looting and assault on Camiwell U.S.

48.    On September 28, 2023 (less than a week after the 998 offers were accepted), without Zhang's knowledge or consent, Yuan and Lin filed a Certificate of Election to Wind Up and Dissolve Camiwell U.S.[2]

49.    Next, Yuan and Lin made three separate and unauthorized withdrawals totaling almost $672,000 from Camiwell U.S.'s account at Bank of America (account number 3251 1222 0628), all without Zhang's knowledge or consent, as follows:

    a.   $162,500 transfer to a Canadian company controlled by Yuan called Scinall Inc.

    b.   $200,000 in the form of a cashier's check payable to an unknown recipient

    c.   $309,438 in the form of cashier's check payable to an unknown recipient

50.    Even Camiwell U.S.'s own counsel in the State Action, Attorney Marie Quashnock, recognized the above-referenced funds transfer as "unauthorized" and requested, to no avail, "that Mr. Yuan immediately return all funds to Camiwell's accounts."

51.    Plaintiff is informed and believes and, based thereon, alleges that, absent Court intervention, Yuan and Lin plan to make even more unauthorized transactions, without Zhang's consent and inconsistent with the law and good business practices.

52.    Ordinarily, Zhang would make a demand to the Board of Directors for Camiwell U.S. to take action against Yuan and Lin to return the funds and profits back to Camiwell U.S.; however, such demand would be futile and is excused by the fact that, as holders of a majority interest in Camiwell U.S. and being two of the three directors, Yuan and Lin could decline to take any such action.  Indeed, after the 998 offers were accepted, Zhang demanded return of the funds, through his counsel to counsel for Yuan and Lin, to no avail.

---

[2] Plaintiff is informed and believes and, based thereon, alleges that the dissolution of Camiwell U.S. has not yet occurred because its two remaining creditors—its accountant ($50,000) and its CPA ($7,709.90)—have not yet been paid, the final tax returns have not yet been filed, and the balance of funds remaining after payment of the creditors has not yet been disbursed to shareholders. Camiwell U.S. currently has $211,741.01 in funds left. These funds, along with any derivative recoveries that may be obtained in the instant action, are its only remaining assets. Its only remaining payables are to its two creditors plus any additional fees that may be incurred in filing the final returns.

1

## FIRST CAUSE OF ACTION

2

### Conversion

3

*(Derivatively by Camiwell U.S. against Defendants Yuan and Lin)*

4    53.    Plaintiff restates and incorporates by this reference each of the allegations contained in the

5    proceeding paragraphs 1-52 as if fully set forth herein.

6    54.    Plaintiff is informed and believes that Camiwell U.S. owned and possessed $672,000 in its

7    Bank of America account after the 998 offers were accepted.

8    55.    Plaintiff is informed and believes and, based thereon, alleges that, shortly after the 998 offers

9    were accepted, Defendants Yuan and Lin substantially interfered with Camiwell U.S.'s ownership and

10   possession of the $672,000 as herein alleged by making the disbursements set forth in ¶ 49, *supra*,

11   without justification, proper authorization or consent from Camiwell U.S., and without Zhang's

12   knowledge or consent.

13   56.    As a direct and proximate result of the conduct of Yuan and Lin as alleged herein, Camiwell

14   U.S. has been damaged in an amount to be proven at trial.

15   57.    In engaging in the conduct as alleged herein, Yuan and Lin, and each of them, acted with

16   oppression, fraud, or malice, justifying an award of punitive damages in an amount sufficient to punish

17   said Defendants and to deter such conduct.

18

## SECOND CAUSE OF ACTION

19

### Breach of Fiduciary Duty

20

*(Derivatively by Camiwell U.S., and individually by Zhang, against Yuan and Lin)*

21   58.    Plaintiff restates and incorporates by this reference each of the allegations contained in the

22   proceeding paragraphs 1-52 as if fully set forth herein.

23   59.    As members of the Board Directors of Camiwell U.S., Yuan and Lin owed to the company and

24   to its shareholders, including Plaintiff, a fiduciary duty of loyalty.

25   60.    As alleged herein, Yuan and Lin breached their fiduciary duties by misappropriating corporate

26   assets of Camiwell U.S. when they withdrew almost $672,000 from Camiwell U.S.'s account at Bank

27   of America, without justification or authority, and without Zhang's knowledge or consent.

28

61.     As a direct and proximate result of the conduct of Defendants Yuan and Lin, Camiwell U.S. and Plaintiff have been damaged in an amount to be proven at trial.

62.     In engaging in the conduct as alleged herein, Defendants Yuan and Lin, and each of them, acted with oppression, fraud, or malice, entitling Plaintiff and Camiwell U.S. to an award of punitive damages in an amount sufficient to punish said Defendants and to deter such conduct.

### THIRD CAUSE OF ACTION

### Fraud (Concealment)

*(Derivatively by Camiwell U.S. against Asiacom China)*

63.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-52 as if fully set forth herein.

64.     After its attempt to legally acquire Camiwell U.S. failed, Asiacom China effectively acquired Camiwell U.S. illegally and under the table.

65.     As alleged herein, Feng Wang sent an email on November 20, 2018, to Camiwell U.S., addressed to Zhang and Yuan.  Although Wang arguably had no duty to speak, once he did, he had an obligation to speak truthfully because he made certain representations but did not disclose facts that materially qualified the facts disclosed or that rendered his disclosure likely to mislead, because the facts were known or accessible only to him and he knew they were not known to or reasonably discoverable by Plaintiff, and he actively concealed from Plaintiff the ability to discovery the true and complete facts.  Under the circumstances, it was it wrongful for him to remain silent.

66.     As alleged herein, Asiacom China secretly engaged Yuan as its manager and agent to take charge of its North America operations.  Asiacom China, through its subsidiary Asiacom Americas, and conspiring with Yuan and his brother Ben Tao Yuan (acting as CEO of Asiacom Americas), carried out a secret corporate raid plan against Camiwell U.S.  It hired almost all of Camiwell U.S.'s 50 engineers, and, without Plaintiffs' knowledge or consent, acquired Camiwell U.S.'s equipment, files, documents, programs, and specifications for the nominal amount of $37,281.29 via the Asset Transfer Agreement, which Yuan signed as President of Camiwell U.S. and his brother signed as CEO of Asiacom Americas.

67.     Camiwell U.S.—and, in particular, Zhang—did not know of the concealed facts that Asiacom China had a secret raid plan, that Asiacom China had engaged Yuan as its manager and agent to take charge of its North America operations, and that Yuan had signed an Assets Transfer Agreement in which Asiacom Americas hired almost all 50 of the engineers of Camiwell U.S. and purchased Camiwell U.S.'s equipment, etc., for a nominal amount until Zhang learned of it during discovery in the State Action in October of 2021.  Camiwell U.S. reasonably relied upon in good faith of Asiacom China's words that it wanted to ensure a smooth transition and Yuan's word that he would be fully loyal to Camiwell and not do anything competitive against Camiwell U.S.

68.     Asiacom China intended to deceive Plaintiff by concealing the facts and never voluntarily came forth with such information.  Zhang would have never known about these fact until they were revealed in October of 2021.

69.     Had the omitted information been disclosed to Zhang and Camiwell U.S., they reasonably would have behaved differently by negotiating a fair purchase price for the Camiwell U.S. assets, as they were trying to do before Asiacom China's attempted acquisition failed.  They reasonably would have hired counsel to block the giveaway of its assets pursuant to the Asset Transfer Agreement between two related people (Yuan and his brother Ben Tao Yuan) without Board or shareholder approval, in violation of California Corporations Code section 1001(a).

70.     Plaintiff and Camiwell U.S. was harmed when Camiwell U.S. lost almost all 50 of its engineers and the equipment, etc., necessary for the business.

71.     Defendant Asiacom China's concealment was a substantial factor in causing Plaintiff and Camiwell U.S. harm.

72.     In engaging in the conduct as alleged herein, Asiacom China acted with oppression, fraud, or malice, entitling Plaintiff and Camiwell U.S. to an award of punitive damages in an amount sufficient to punish said Defendants and to deter such conduct.

## FOURTH CAUSE OF ACTION

### (Fraud) Intentional Misrepresentation

*(Derivatively by Camiwell U.S. against Camiwell Canada)*

73.     Plaintiff restates and incorporates by this reference each of the allegations contained in the

proceeding paragraphs 1-52 as if fully set forth herein.

74.     As an example of intentional misrepresentation committed by Camiwell Canada, on or about August and September 2018, Benlin Yuan as CEO of Camiwell Canada represented to Camiwell U.S. that Camiwell U.S. would get paid for services rendered to Beijing Asiacom.

75.     Camiwell Canada's representation was false as Camiwell U.S. did not get paid for services rendered to Asiacom China.  Camiwell Canada invoiced Asiacom China approximately $350,000 in August 2018 and $326,000 in September 2018 in which Camiwell Canada was paid. *See Exhibit C.* These invoices were not discovered until Summer 2023 during discovery in the state case.

76.     Camiwell Canada knew the representations were false when made as they had a desire to continue having Camiwell U.S. provide services to Asiacom China for compensation.  Additionally, Camiwell Canada never had a desire to pay Camiwell U.S. and still has not paid Camiwell U.S. for services rendered to Asiacom China.

77.     Camiwell Canada intended that Camiwell U.S. rely on the representation that Camiwell U.S. would get paid for the services rendered to Asiacom China.  Camiwell Canada knew that Camiwell U.S. would rely on the representation that it would get paid for services in order for Camiwell U.S. to continue services for Asiacom China.

78.     Camiwell U.S. reasonably relied on Camiwell Canada's representation by continuing to provide services to Asiacom China.

79.     Camiwell U.S. was harmed when Camiwell Canada did not pay Camiwell U.S. for services rendered to Asiacom China.

80.     Camiwell U.S.'s reliance on Camiwell Canada's representation was a substantial factor in causing its harm.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment Based on Fraud

*(Corporate Raid on Camiwell U.S.—Derivatively by Camiwell U.S. against Asiacom China and Asiacom Americas)*

74.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-52 as if fully set forth herein.

77.     By engaging in the fraudulent conduct by Feng Wang, Vice President of Asiacom China in charge of overseas business in conspiring with Yuan, as alleged herein, Asiacom Americas and Asiacom China received the benefit of Camiwell U.S.'s labor and services for $37,281.29 when Yuan and Asiacom China raided Camiwell U.S.'s assets and hired away 50 engineers to Asiacom Americas which provided the services to Asiacom China.  These assets included programs, files, customer information, technology, data, computers, servers, and the contents on such devices.  The true value of what Asiacom Americas acquired will be established at trial; however, that amount is approximately $3,000,000—the value of Camiwell U.S. itself, which, at a minimum, can be measured by what Asiacom China offered to pay for it in 2018 ($450,000), plus the value of 50 Camiwell U.S. engineers working for six months (how long it took Asiacom Americas to ramp up) at $8,200 per month, which is the rate that Asiacom China formerly paid Camiwell U.S.  Thus, Asiacom Americas received approximately $2.95 million in services and assets that were intended to be used for the benefit of Camiwell U.S.

78.     Asiacom China and Asiacom Americas were unjustly enriched by engaging in self dealing with its own employee and manager Yuan and their own subsidiary and/or sister company Camiwell Canada, by not having to pay fair market rate fees for the IT services rendered by Camiwell U.S. as they would have had to in a normal arm's-length transactions.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment Based on Fraud

*(Diversion of Camiwell U.S.'s Business—Derivatively by Camiwell U.S. against Camiwell Canada)*

79.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-52 as if fully set forth herein.

80.     By engaging in the conduct as alleged herein, Defendant Camiwell Canada received the benefit of RMB 6.5845 million and RMB 3.6031 million in 2018 and 2019 when it diverted Asiacom China's business from Camiwell U.S. to Camiwell Canada while outsourcing to Camiwell U.S. to provide the same IT services for no consideration.  As an example, on or about August and September 208, Benlin Yuan as CEO of Camiwell Canada intentionally misrepresented that Camiwell U.S. would get paid for services rendered to Asiacom China.  Camiwell Canada's representation was false Camiwell U.S. was

1   never paid for such services.  Invoices show that Camiwell Canada billed Asiacom China

2   approximately $350,000 in August 2018 and $326,000 in September 2018 to which Asiacom China

3   paid.  ***See Exhibit C***.  These invoices were not discovered until Summer 2023 during discovery in the

4   state case.  Camiwell Canada knew the representations were false as it never had a desire to pay

5   Camiwell U.S. and still has not paid Camiwell U.S. for services rendered to Beijing Asiacom.

6   Camiwell Canada had the desire to continue having Camiwell U.S. provide services to Asiacom China.

7   Camiwell Canada concealed the fact that it received $350,000 for August 2018 and $326,000 for

8   September 2018 from Beijing Asiacom.

9   81.    At the same time, Camiwell Canada was able to minimize its own expenses by maintaining a

10   barebones operation with only two employees.

11   82.    Camiwell Canada was further unjustly enriched when it received the IT services provided by

12   Camiwell U.S. without paying Camiwell U.S.

13   83.    Thus, Camiwell Canada unjustly enriched itself at the expense of Camiwell U.S., obtaining

14   benefits wrongfully that they unjustifiably have not returned.

15   84.    As a direct and proximate result of Defendants' conduct, Camiwell U.S. has been damaged in

16   an amount to be proven at trial.

17   <center>**SEVENTH CAUSE OF ACTION**</center>

18   <center>**Common Count: Money Had and Received**</center>

19   <center>*(Corporate Raid on Camiwell U.S.—Derivatively by Camiwell U.S. against Asiacom China and*</center>

20   <center>*Asiacom Americas)*</center>

21   85.    Plaintiff restates and incorporates by this reference each of the allegations contained in the

22   proceeding paragraphs 1-52 as if fully set forth herein.

23   86.    By engaging in the conduct as alleged herein, Asiacom Americas received the benefit of

24   Camiwell U.S.'s assets, labor and services, and almost 50 of its engineers, for $37,281.29.  These assets

25   included programs, files, customer information, technology, data, computers, servers, and the contents

26   on such devices.  The true value of what Asiacom Americas acquired will be established at trial;

27   however, that amount is approximately $3,000,000—the value of Camiwell U.S. itself, which, at a

28   minimum, can be measured by what Asiacom China offered to pay for it in 2018 ($450,000), plus the

1   value of 50 Camiwell U.S. engineers working for six months (how long it took Asiacom Americas to

2   ramp up) at $8,200 per month, which is the rate that Asiacom China formerly paid Camiwell U.S.

3   Thus, Asiacom Americas received approximately $2.95 million in services and assets that were

4   intended to be used for the benefit of Camiwell U.S.

5   87.    No part of the $2.95 million was used for the benefit of Camiwell U.S.

6   88.    No part of the $2.95 million has been paid to Camiwell U.S. by Asiacom Americas.

7   **EIGHTH CAUSE OF ACTION**

8   **Common Count: Money Had and Received**

9   *(Diversion of Camiwell U.S.'s Business—Derivatively by Camiwell U.S. against Camiwell Canada*

10  89.    Plaintiff restates and incorporates by this reference each of the allegations contained in the

11  proceeding paragraphs 1-52 as if fully set forth herein.

12  90.    By engaging in the conduct as herein, Camiwell Canada received money that was intended to be

13  used for the benefit of Plaintiff based on the fraudulent intentional misrepresentations to Plaintiff.

14  Camiwell Canada received money in the amount of approximately RMB 6.5845 million and RMB

15  3.6031 million in 2018 and 2019, respectively, from Asiacom China that should have been paid to

16  Camiwell U.S., which provided the IT services to Asiacom China.

17  91.    The money that Camiwell Canada received from Asiacom China was not used for the benefit of

18  Camiwell U.S. as Camiwell Canada kept the money.

19  92.    Camiwell Canada has not paid or given to Camiwell U.S. the money Camiwell Canada received

20  from Asiacom China for the IT services provided to Asiacom China by Camiwell U.S.

21  **NINTH CAUSE OF ACTION**

22  **Preliminary Injunction**

23  *(Derivatively by Camiwell U.S. against Bank of America, Yuan, and Lin)*

24  93.    Plaintiff restates and incorporates by this reference each of the allegations contained in the

25  proceeding paragraphs 1-52 as if fully set forth herein.

26  94.    After Defendants Yuan and Lin withdrew funds deposited in the business account at Bank of

27  America (account no. 3251 1222 0628), there is still $77,544.29 remaining in that account and another

28  $134,296.28 remaining in a separate account (account no. 3251 0849 4390).

95.     Camiwell U.S. through this second amended derivative complaint petitions the Court to issue a preliminary injunction to prohibit Yuan and Lin from further withdrawing any funds from said accounts, and to prohibit Defendant Bank of America from allowing any further withdrawal from said accounts.

96.     Camiwell U.S. further asks that the Court enjoin Defendants, and each of them, from dissolving Camiwell U.S. and from diminishing its assets.

97.     Camiwell U.S. further asks that the Court enjoin Defendants, and each of them, from usurping corporate opportunities of Camiwell U.S.

## TENTH CAUSE OF ACTION

### Declaratory Relief

*(Derivatively by Camiwell U.S., and individually by Zhang, against Yuan and Lin)*

98.     Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-52 as if fully set forth herein.

99.     A dispute presently exists between the parties as to who is entitled to the funds in the above-referenced B of A accounts.

100.    A judicial determination is therefore necessary to establish rightful ownership of the funds.

## ELEVENTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### *(Derivatively by Camiwell U.S. against Asiacom China)*

101.    Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-52 as if fully set forth herein.

102.    In every contract or agreement, there is an implied promise of good faith and fair dealing.  This implied promise means that each party will not do anything to unfairly interfere with the rights of any other party to receive benefits of the contract.

103.    Camiwell U.S. and Asiacom China entered into various service contracts for Camiwell U.S. to provide IT services to Asiacom China.

104.    Camiwell U.S. did all of the significant things that the contract required it to do including providing IT services to Asiacom China.

105.    By engaging in the conduct alleged herein, Asiacom China breached the implied covenant by preventing Camiwell U.S. from receiving the benefits due it under the service contracts.

106.    As a direct and proximate result of Asiacom China's breach, Camiwell U.S. was harmed in an amount to be proven at trial.

## PRAYER FOR RELIEF

Now, therefore, Plaintiff, individually and derivatively on behalf of Camiwell U.S., prays for relief and judgment as follows:

1.    For injunctive relief preventing Defendants, their successors and affiliates, and all persons acting on their behalf from further unlawfully:

    a.  further diminishing Camiwell U.S. and its assets;

    b.  transferring Camiwell U.S. assets to their own interests;

    c.  taking corporate opportunities of Camiwell U.S.

2.    For compensatory damages in an amount to be proven at trial.

3.    For punitive damages according to proof.

4.    For reasonable attorneys fees and costs to the extent permissible under applicable law.

5.    For such other and further relief as the Court may deem just and proper.

Dated:  July 25, 2024                    SAC Attorneys LLP

                                          By: Brian A. Barnhorst
                                             James Cai, Esq.
                                           Brian A. Barnhorst, Esq.
                                         Dennis Chin, Esq.
                                           Attorneys for Plaintiff and Counter-Defendant
                                         Jinju Zhang

1

## VERIFICATION

2

3       I, JINJU ZHANG, have reviewed the VERIFIED SECOND AMENDED DERIVATIVE

4    COMPLAINT and know its contents. I certify that the verified second amended complaint is true of my

5    knowledge, except as to the matters which are therein stated to be on information or belief, and as to

6    those matters, I believe them to be true.

7       I declare under the penalty of perjury under the laws of California that the foregoing is true and

8    correct.

9

10

11       Executed on July 25, 2024, in Conroe, Texas

12

13                                              JINJU ZHANG

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Doc ID: f3bcbfe3778c275232f8a9debed6d2c9a5a084c3

Exhibit **A**



关于北京亚康公司美国客户现场服务交接备忘

**Benlin Yuan <byuan@camiwell.com>**
Tue, Nov 20, 2018 at 8:46 PM
To: 王丰 <Wangfeng@asiacom.net.cn>
Cc: Jinju Zhang <jinju.zhang@camiwell.com>, caowei@asiacom.net.cn, 徐清 <qxu@asiacom.net.cn>

王总，

邮件收悉。

我们会尽快确定，然后电邮贵司。

谢谢！

袁本林

On Tue, Nov 20, 2018 at 4:01 AM 王丰 <Wangfeng@asiacom.net.cn> wrote:

美国凯威公司：

根据公司发展战略，我司拟成立美国子公司，从2019年1月1日承担美国客户的机场服务业务、服务器交付维保服务，以及网络布线工程服务、满足美西机房的运维服务和网络布线工程服务。

我司将由美国凯威公司3年来为亚康美国客户提供的现场稳定服务，为便双方合作有一圆满的结束。同时确保亚康美国客户现场服务的平稳交接并最大程度保障美国客户的利益。确保正在执行工程项目的顺利实施，我司提出如下服务切换方案：

1. 机房运维服务（包括同里和满南）：交接起始日期为2019年1月1日，交接期为31天，2019年1月31日交接结束。亚康美国子公司全面承担同里和满南的机房运维服务。在交接期内，美国凯威承担工程师协助亚康美国子公司挂场工程师完成现场运维服务。亚康美国子公司挂场工程师威在交接期内投入的挂场工程师人数。运维服务合同期满时，在交接期结束后计算出相关费用并一次性支付。
2. 网络布线项目：在2019年1月1日前后启动的网络布线项目，继续由美国凯威公司负责实施，项目结束后服务自动结束，亚康公司按照2018年网络布线的项目人员加班费用。2019年1月1日及以后启动的项目，由亚康美国子公司负责。
3. 服务器交付和维保：美国凯威承担的服务器维保交付和维保服务截至到2018年12月31日，从2019年1月1日，由亚康美国子公司负责。

我司近期将安排人员与贵司商定服务交接具体事宜。

再次感谢凯威公司在过去给与我司的帮助与支持，谢谢！

王丰

CERTIFICATION

I, Connie Chen, am a court interpreter/translator, California Judicial Council #700105, member of American Translators' Association (ATA); Northern California Translators' Association (NCTA) and National Judicial Interpreters and Translators (NAJIT).

I certified that I have reviewed the following English translation along with their corresponding Simplified Chinese documents pertaining to Asiacom Americas Inc. (USA) and CAMiWell Inc., that were provided to me for accuracy and correctness to the best of my knowledge and abilities.

> Email correspondences dated November 20, 2018 between Benlin Yuan and Feng Wang;

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  This Certification is signed on the 23rd day of June, 2024, County of Santa Clara, State of California.

*Connie Chen*

Connie Chen
Judicial Council # 700105

Benlin Yuan <byuan@camiwll.com>

To: Feng Wang  <Wangfeng@asiacom.net.cn>

Cc; jingju Zhang <jinju.zhang@camiwell.com>, caowei@asiacom.net.cn, qxu@asiacom.net.cn>


General Manager Wang:

Received your message.

We will confirm as soon as possible, and then email your company.

Thank you.

Benlin Yuan


On Tue., Nov. 20, 2018 at 4:01 am Feng Wang <Wangfeng@asiacom.net.cn>

US Camiwell Company:

According to the development strategy of company, our company plans to set up a US subsidiary, to undertake onsite service business for US customers starting January 1, 2019, including but not limited to Alibaba's Eastern US and Western US server room operation maintenance services, server delivery and maintenance services, and network cabling engineering services, Didi Eastern US server room operation maintenance and network cabling engineering services.

Our company appreciates US Camiwell's onsite services for Asiacom's US customers in the last 3 years.  In order to have a successful ending of our mutual cooperation, and ensure that Asiacom US customers' onsite services have a smooth transition and in protection of US customers' best interest, and successful execution of on-going engineering projects, our company makes the following service transition proposal:

1. Server room operation maintenance services (including Alibaba and Didi): date of transition will be January 1, 2019, transition period will be 31 days, concluding on January 31, 2019.  Asiacom US will take over all the server room operation maintenance for Alibaba and Didi.  During the transition, US Camiwell onsite engineers will assist Asiacom US onsite engineers to complete onsite operation maintenance.  Asiacom US will count the number of onsite engineers of US Camiwell, and pay according to 2018 operation maintenance service contract price, calculate the related fees after the transition period and make one-time payment.
2. Network cabling project: For network cabling projects started before January 1, 2019, US Camiwell will continue to be responsible for execution, and the projects will end

automatically upon finish. Asiacom will execute and pay fees according to 2018 network cabling project. Asiacom will be responsible for the projects starting after January 1, 2019.

3. The delivery and maintenance of servers: US Camiwell will be responsible for server delivery and maintenance until December 31, 2018. Asiacom will be responsible after January 1, 2019.

Our company will arrange personnel to discuss and finalize concrete transition matters with your company.

Thank you again for Camiwell's past assistance and support for our company. Thank you.


Feng Wang

Exhibit **B**

# Device and Asset Transfer Agreement

**Asiacom Americas Inc.**

Address:  21400 Ridgetop Circle, Suite 180, Sterling, VA, 20166, USA

Telephone:  +1(703)517-7818

Email:  contact@asiacom-americas.com

**CAMiWell Inc. (USA)**

Address:  5201 Great America Pkwy., Suite 320, Santa Clara, CA, 95054, USA

Telephone:  +1(571)388-8797

Email:  byuan@camiwell.com

Asiacom Americas Inc. （以下简称甲方）与 CAMiWell Inc. (USA)（以下简称乙方），就乙方部分电子设备及仪器，以及部分办公家具等资产转让给甲方事宜，经双方协商一致同意下述条款：

1    本协议有效期自 双方签字之日起至 甲方付款日终止。

2    本协议签订后，乙方负责提供转让设备和资产清单，相关信息包括但不限于：设备名称，规格，数量，原始购买日期，购买厂商，购买价格，购买发票（复印件），存放地点等；甲方负责设备及资产的现场核实清点。双方签字确认转让清单。

3    电子类设备及仪器的折旧年限按 5 年计算（5 year straight line），办公家具的折旧年限按 10 年计算（10 year straight line）。实际转让价格按照折旧年限和原始购买价来计算。

4    电子类设备及仪器的转让日期为 2019 年 2 月 1 日，办公家具的转让日期为 2019 年 5 月 1 日。

5    本协议的最终转让价格，根据双方最终核实确认的设备及资产清单来计算。

6    乙方给甲方开具正规发票，甲方在收到乙方发票后 30 天内，一次性支付乙方设备及资产转让价格。

7    本协议一式二份，经双方代表签字后生效。双方各执一份，每份具有同等法律效力。

8    双方最终核实确认的设备及资产清单（含转让价格），将作为本协议的附件，和协议正文具有同等法律效力。

*<本页以后无正文，下页为签字页>*

<本页为签字页>

<This is the signature page>

**Asiacom Americas Inc.**                                **CAMiWell Inc. (USA)**

Signature:                                               Signature:

Name (print), Position:                                  Name (print), Position:

Ben Tao Yuan, CEO                                        Benlin Yuan, President

Date:    5/5/2019                                        Date:

                                                                  05/05/2019

Attachment 1

**Device/Asset Transfer List and Price**
(from CAMIWell Inc USA to Asiacom Americas Inc)

CAMIWell Inc / 2019.08

Currency: USD

| # | Type | Device/Asset Name | Description / Specification | Seller | Purchase Date | Qty | Unit Price | Purchase Amount | Location | Transfer Date | Transfer Price | Remark |
|---|------|-------------------|----------------------------|--------|---------------|-----|-----------|-----------------|----------|---------------|----------------|--------|
| 1 | Laptop | Dell Inspiron13 laptop i7359 | Dell Inspiron13 laptop i7359 | Microsoft Store | 2016-03-30 | 2 | $803.66 | $1,607.31 | CA | 2019-02-01 | $696.50 | 5 year straight line |
| 2 | Laptop | Dell Inspiron13 laptop i7359 | Dell Inspiron13 laptop i7359 | Microsoft Store | 2016-04-01 | 1 | $740.94 | $740.94 | VA | 2019-02-01 | $321.07 | 5 year straight line |
| 3 | Laptop | Dell Inspiron13 laptop i7359 | Dell Inspiron13 laptop i7359 | Microsoft Store | 2016-05-30 | 1 | $708.79 | $708.79 | CA | 2019-02-01 | $342.59 | 5 year straight line |
| 4 | Laptop | Dell Inspiron 13 laptop | Dell Inspiron 7000 13.3" FHD (1920 x 1080) Touchscreen 2 in 1 convertible Laptop, Intel Core i7(6500U, 8GB, 256GB SSD, HDMI | Amazon | 2016-08-03 | 1 | $715.35 | $715.35 | CA | 2019-02-01 | $369.60 | 5 year straight line |
| 5 | Laptop | Dell Inspiron 13 laptop | Dell Inspiron 13 i7359 8405SLV Signature Edition 2 in 1 PC | Microsoft Store | 2016-09-05 | 1 | $766.16 | $766.16 | CA | 2019-02-01 | $408.62 | 5 year straight line |
| 6 | Laptop | Dell Inspiron 13 laptop | Dell Inspiron 13 i7359 8405SLV Signature Edition 2 in 1 PC | Microsoft Store | 2016-11-28 | 1 | $775.80 | $775.80 | CA | 2019-02-01 | $439.62 | 5 year straight line |
| 7 | Laptop | Dell Inspiron 13 laptop | Dell Inspiron i73596404SLV 13.3 inch 2in1 Touchscreen Laptop (6th Generation Intel Core i7, 8 GB RAM, 256 GB SSD) | Amazon | 2017-05-29 | 1 | $687.37 | $687.37 | CA | 2019-02-01 | $458.25 | 5 year straight line |
| 8 | Laptop | Adorama Laptop | Laptop for Label Printing | Adorama | 2017-05-29 | 1 | $389.99 | $389.99 | VA | 2019-02-01 | $259.99 | 5 year straight line |
| 9 | Laptop | Dell Inspiron 13 laptop | Dell Inspiron i73596404SLV 13.3 inch 2in1 Touchscreen Laptop (6th Generation Intel Core i7, 8 GB RAM, 256 GB SSD) | Amazon | 2017-08-10 | 1 | $680.00 | $680.00 | VA | 2019-02-01 | $497.33 | 5 year straight line |
| 10 | Laptop | Lenovo FLEX 5 Laptop | Lenovo FLEX 5 14 Laptop Computer 7th Gen Intel i5 | Costco | 2017-11-07 | 2 | $847.99 | $1,695.98 | VA | 2019-02-01 | $1,300.25 | 5 year straight line |
| 11 | Laptop | Lenovo FLEX 5 Laptop | Lenovo FLEX 5 14 Laptop Computer 7th Gen Intel i5 256GB SSD 8GB DDR4 Integrated Intel HD Graphics 620 with Windows 10 | Staples.com | 2017-11-25 | 7 | $614.79 | $4,303.53 | VA | 2019-02-01 | $3,299.37 | 5 year straight line |
| 12 | Laptop | Dell Laptop | Dell I5379 Laptop | Costco | 2017-12-04 | 1 | $741.99 | $741.99 | VA | 2019-02-01 | $581.23 | 5 year straight line |
| 13 | Laptop | Lenovo FLEX 5 Laptop | Lenovo FLEX 5 80XA0009US 14 Laptop Computer 7th Gen Intel i5 256GB SSD 8GB DDR4 Win 10 Integrated Intel HD Graphics 620 | Staples.com | 2018-02-27 | 5 | $614.79 | $3,073.95 | VA | 2019-02-01 | $2,510.39 | 5 year straight line |
| 14 | Laptop | Lenovo FLEX 5 Laptop | Lenovo FLEX 5 80XA0000US 14" Laptop Computer (7th Gen Intel i5, 256GB SSD, 8GB DDR4, Win 10 Integrated Intel HD Graphics 620) | Staples.com | 2018-03-16 | 2 | $655.49 | $1,310.98 | CA | 2019-02-01 | $1,082.48 | 5 year straight line |
| 15 | Laptop | Lenovo Laptop | Lenovo ThinkPad Laptop | Costco | 2018-06-27 | 1 | $1,599.99 | $1,599.99 | VA | 2019-02-01 | $1,404.49 | 5 year straight line |
| 16 | Laptop | Lenovo Flex5 Laptop | Lenovo Flex 5 Series 2-in-1 Touchscreen Laptop - Intel Core i3 | Costco.com | 2018-09-15 | 2 | $559.94 | $1,119.87 | VA | 2019-02-01 | $1,045.21 | 5 year straight line |
| 17 | Laptop | Lenovo Flex5 Laptop | Lenovo Flex5 Laptop | Costco | 2018-09-19 | 6 | $529.99 | $3,179.94 | VA | 2019-02-01 | $2,967.94 | 5 year straight line |
| 18 | Laptop | Lenovo Flex5 Laptop | Lenovo Flex5 Laptop | Costco | 2018-09-22 | 6 | $529.99 | $3,179.94 | VA | 2019-02-01 | $2,967.94 | 5 year straight line |
| 19 | Monitor | Sony Monitor | SONY - 1000X MK1I Monitor | Bestbuy | 2018-03-16 | 1 | $370.99 | $370.99 | VA | 2019-02-01 | $309.16 | 5 year straight line |
| 20 | Printer | HP Printer | HP - LaserJet Pro m452n Black-and-White Printer - Grey | BestBuy.com | 2017-11-18 | 3 | $169.59 | $508.77 | VA | 2019-02-01 | $390.06 | 5 year straight line |
| 21 | Printer | HP Printer | HP LaserJet PrinterMFP M28 | Bestbuy | 2018-03-18 | 1 | $349.79 | $349.79 | VA | 2019-02-01 | $291.49 | 5 year straight line |
| 22 | Fiber Tester | Fluke Slit Fiber Tester | Fluke Networks FTK1000 SimpliFiber Pro Singlemode Fiber Verification Kit, Fiber Tester | Amazon | 2018-03-02 | 1 | $2,760.23 | $2,760.23 | VA | 2019-02-01 | $2,300.19 | 5 year straight line |
| 23 | Fiber Tester | Fluke MPO Tester | Fluke Networks MFTK1400 MultiFiber Pro Testing and Inspection Kit | Amazon | 2018-10-24 | 1 | $10,290.59 | $10,290.59 | VA | 2019-02-01 | $9,776.06 | 5 year straight line |
| 24 | Office Furniture | Office Chair | Bonum Executive Office Chair Thick Padding Big & Tall 500lb Capacity Size | Amazon | 2018-06-02 | 1 | $208.96 | $208.96 | VA | 2019-05-01 | $191.57 | 10 year straight line |
| 25 | Office Furniture | Office Chair / Desk | Mesh Task Chair Chairs: 4, Desk:5 | Costco | 2018-06-02 | 1 | $1,199.40 | $1,199.40 | VA | 2019-05-01 | $1,099.45 | 10 year straight line |
| 26 | Office Furniture | Office White board (small) | Quartet Whiteboard, 3' x 4' Dry Erase Board, White Board with Aluminum Frame | Amazon | 2018-06-07 | 1 | $66.77 | $66.77 | VA | 2019-05-01 | $61.21 | 10 year straight line |
| 27 | Office Furniture | Office White board | Quartet Whiteboard, 4' x 6', Aluminum Frame | Amazon | 2018-07-16 | 1 | $159.00 | $159.00 | VA | 2019-05-01 | $147.08 | 10 year straight line |
| 28 | Office Furniture | Boarding room table | Modern Boat Shaped 10' Feet Conference Table, OF-CON-C57 | Amazon | 2018-08-24 | 1 | $1,399.00 | $1,399.00 | VA | 2019-05-01 | $1,305.73 | 10 year straight line |
| 29 | Office Furniture | Office Chairs | Mesh Task Chair: 6 | Costco | 2018-08-24 | 6 | $81.50 | $489.02 | VA | 2019-05-01 | $456.42 | 10 year straight line |

Total $37,281.29

Asiacom Americas Inc.
Name (print), Position:
Ben Tao Yuan, CEO
Signature:
Date: 9/5/2019

CAMIWell Inc. (USA)
Name (print), Position:
Berlin Yuan, President
Signature:
Date:
09/04/2019

## CERTIFICATION

I, Connie Chen, am a court interpreter/translator, California Judicial Council #700105, member of American Translators' Association (ATA); Northern California Translators' Association (NCTA) and National Judicial Interpreters and Translators (NAJIT).

I certified that I have reviewed the following English translation along with their corresponding Simplified Chinese documents pertaining to Asiacom Americas Inc. (USA) and CAMiWell Inc., that were provided to me for accuracy and correctness to the best of my knowledge and abilities.

>    Email correspondences dated November 20, 2018 between Benlin Yuan and
>    Feng Wang;

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  This Certification is signed on the 23rd day of June, 2024, County of Santa Clara, State of California.

*Connie Chen*

Connie Chen
Judicial Council # 700105

**Device and Asset Transfer**

**Agreement**

Asiacom Americas Inc.

Address: 21400 Ridgetop Circle, Suite 180, Sterling, VA, 20166, USA

Telephone: +1(703)517-7818

Email: contact@asiacom-americas.com

CAMiWell Inc. (USA)

Address: 5201 Great America Pkwy., Suite 320, Santa Clara, CA, 95054, USA

Telephone: +1(571)388-8797

Email: byuan@camiwell.com

Asiacom Americas Inc. (hereinafter referred to as Party A) and CAMiWell Inc. (USA) (hereinafter referred to as referred to as Party B), agree to the following terms and conditions regarding transfer part of Party B's electronic devices and equipment, and part of the assets such as furniture to Party A:

1. This agreement is effective from the date of both parties' signatures to the date when Party A pays the money.
2. After execution of this Agreement, Party B shall be responsible for providing an inventory list of equipment and asset transferred, relevant information shall include but not limited to, equipment's name, model, number, original date of purchase, vendor, purchase price, purchase invoice (copy), storage location; Party A shall be responsible for check inventory on site, and both parties will sign off the inventory list.
3. The amortization of electronic devices will be calculated based on 5 year (5 year straight line), amortization for office furniture will be calculated based on 10 years (10 year straight line).  Actual transfer price will be calculated based on amortization years and original purchase price.
4. The transfer date for electronic equipment was February 1, 2019, office furniture transfer date was May 1, 2019.
5. The final transfer price in this Agreement, will be calculated based on final confirmed equipment and asset inventory list.
6. Party B will issue formal invoice to Party A.  Party A will pay, within 30 days up receipt of Party B invoice, one time transfer price for Party B equipment and asset.
7. This Agreement has two copies, and will become effective upon execution by both parties. Each party will keep one copy, and each copy has same legal effect.
8. The final confirmed inventory list (including transfer price), will be an attachment to this Agreement, with same legal effect as the main agreement.

<There is no formal content on this page.  Next page is signature page>

<This is the signature page>

Asiacom Americas Inc.                    CAMiWell Inc. (USA)


Signature:                               Signature:

_____                  _____

Name (print), Position:                  Name (print), Position:

Ben Tao Yuan, CEO                        Benlin Yuan, President

_____                  _____

Date: 5/5/2019                           Date:

_____                  _____05/05/2019_____

# Exhibit C

DEF 3047                                          Confidential

# CAMiWell Inc.
**（加拿大凯威公司）**

HST#: 83592 5777 RT0001

5946 Dalebrook Cres.,
Mississauga, ON L5M 5S1, Canada
Phone: +1(416)640-8325

# INVOICE

**DATE（发票日期）：**
2018-09-18

**INVOICE #（发票编号）：**
CI_2018_119

**Bill To:**
**Beijing Asiacom Info Technology Co.,Ltd**
北京亚康万玮信息技术有限公司

Floor 8 Chuangfu Building, Block 18 Danling St.,
Haidian Nan Rd., Haidian District,Beijing,P.R.China,100080
北京市海淀区海淀南路丹棱街18号创富大厦8层(100080)
Phone(电话): +86(10)-58834060

**For:**
Ali USA IDC Cabling Project Service ( Jan 2018 to Jul 2018)
阿里美国IDC机房网络布线项目服务（2018年1月至7月）

Currency(货币): US$(美元)

| SALES DESCRIPTION (产品/服务内容) | AMOUNT（金额） |
|---|---|
| Ali USA IDC Cabling Service (Project Management,Technical Support, Installation, Test and Troubleshooting， Delivery) (Completed between Jan 2018 and Jul 2018) (Balance Payment)<br>阿里美国IDC机房布线工程（项目管理，技术支持，项目实施，测试和故障排查，项目验收交付）（2018年1月至7月31日交付完成的项目）（费用余款） | 325,910.84 |
| *CAMiWell 美元帐户电汇信息*<br>帐户名: CAMiWell Inc<br>帐户货币: 美元<br>帐号:<br>开户银行: Bank of Montreal （加拿大蒙特利尔银行）<br>开户银行地址:<br>　　2825 Eglinton Ave. West,<br>　　Mississauga, ON, L5M 6J3<br>　　Canada<br>BMO SWIFT BIC Code:  BOFMCAM2<br>BMO本地清算号: CC000139782 | |
| Subtotal（小计） | $325,910.84 |
| HST（税） | $0.00 |
| **TOTAL(总计)（美元）** | **$325,910.84** |

If you have any questions concerning this invoice, contact us at accounting@camiwell.com
如对发票有任何问题，请通过邮件与我们联系: accounting@camiwell.com

**Signature（签字）：**

**THANK YOU FOR YOUR BUSINESS!**
谢谢合作!

# CAMiWell Inc.

**（加拿大凯威公司）**

HST#: 83592 5777 RT0001

5946 Dalebrook Cres.,
Mississauga, ON L5M 5S1, Canada
Phone: +1(416)640-8325

# INVOICE

**DATE（发票日期）：**
2018-08-15

**INVOICE #（发票编号）：**
CI_2018_116

**Bill To:**
**Beijing Asiacom Info Technology Co.,Ltd**
**北京亚康万玮信息技术有限公司**

Floor 8 Chuangfu Building, Block 18 Danling St.,
Haidian Nan Rd., Haidian District,Beijing,P.R.China,100080
北京市海淀区海淀南路丹棱街18号创富大厦8层(100080)
Phone(电话): +86(10)-58834060

**For:**
Ali USA IDC Cabling Project Service ( Jan 2018 to Jul 2018)
阿里美国IDC机房网络布线项目服务（2018年1月至7月）

Currency(货币): US$(美元)

| SALES DESCRIPTION (产品/服务内容) | AMOUNT（金额） |
|---|---|
| Ali USA IDC Cabling Service (Project Management,Technical Support, Installation, Test and Troubleshooting， Delivery) (Completed between Jan 2018 and Jul 2018) (Partly Payment)<br>阿里美国IDC机房布线工程（项目管理，技术支持，项目实施，测试和故障排查，项目验收交付）<br>（2018年1月至7月31日交付完成的项目）（部分费用） | $350,000.00 |
| *CAMiWell 美元帐户电汇信息：*<br>帐户名: CAMiWell Inc.<br>帐户货币: 美元<br>帐号: ▮▮▮▮▮▮▮▮<br>开户银行: Bank of Montreal  (加拿大蒙特利尔银行)<br>开户银行地址:<br>    2825 Eglinton Ave. West.<br>    Mississauga, ON. L5M 6J3<br>    Canada<br>BMO SWIFT BIC Code:  BOFMCAM2<br>BMO本地清算号: CC000139782 | |
| Subtotal（小计） | $350,000.00 |
| HST（税） | $0.00 |
| **TOTAL(总计)（美元）** | $350,000.00 |

If you have any questions concerning this invoice, contact us at accounting@camiwell.com
如对发票有任何问题，请通过邮件与我们联系: accounting@camiwell.com

**Signature（签字）：**

**THANK YOU FOR YOUR BUSINESS!**
**谢谢合作!**

E X H I B I T   B

REDLINE VERSION OF PROPOSED VERIFIED SECOND
AMENDED DERIVATIVE COMPLAINT



1   James Cai (SBN 200189)
    jcai@sacattorneys.com
2   Brian A. Barnhorst (SBN 130292)
    bbarnhorst@sacattorneys.com
3   Dennis Chin (SBN 236466)
    dchin@sacattorneys.com
4   SAC ATTORNEYS LLP
    1754 Technology Drive, Suite 122
5   San Jose, California 95110
    Telephone: (408) 436-0789
6
7
    Attorneys for Plaintiff and Counter-Defendant Jinju Zhang
8

9                    UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11   JINJU ZHANG, an individual;              Case No.: 3:23-cv-05818-CRB

12                     Plaintiff,             [PROPOSED] VERIFIED SECOND
                                              AMENDED COMPLAINT
13   vs.                                      1.  CONVERSION
                                              2.  BREACH OF FIDUCIARY DUTY
14   BENLIN YUAN, an individual; HONG LIN,    3.  FRAUD (CONCEALMENT)
     an individual; CAMIWELL, INC., a California   3.4.FRAUD (INTENTIONAL
15   corporation; CAMIWELL, INC. (CANADA),        MISREPRESENTATION)
     a Canadian corporation; BEIJING ASIACOM  4.5.UNJUST ENRICHMENT
16   INFORMATION TECHNOLOGY CO., LTD.,        5.6.UNJUST ENRICHMENT
     a Chinese corporation; ASIACOM          6.7.COMMON COUNTS: MONEY HAD AND
17   AMERICAS, INC., a Virginia corporation;      RECEIVED
     BANK OF AMERICA CORPORATION, a          7.8.COMMON COUNTS: MONEY HAD AND
18   National Association; and DOES 1 to 20,      RECEIVED
     inclusive,                              8.9.PRELIMINARY INJUNCTION
19                                           9.10. DECLARATORY RELIEF
                      Defendants.            10.11.    BREACH OF IMPLIED
20                                               COVENANT OF GOOD FAITH AND
                                                 FAIR DEALINGS
21

22

23

24   AND RELATED CROSS-ACTIONS

25

26

27

28

        [PROPOSED] VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT
                                  1
                                          Zhang v. Yuan, et al., 3:23-cv-05818-CRB

1
2
3        Comes now the Plaintiff, JINJU ZHANG (~~"~~Plaintiff~~_~~ or "Zhang"), and alleges for himself and
4   derivatively on behalf of nominal defendant CAMIWELL, INC. (formerly Camiwell, LLC, "Camiwell
5   U.S."), as follows:

**THE PARTIES**

7   1.       Plaintiff ~~Zhang~~ is an individual residing in Conroe, ~~Texas~~ [1]TX, formerly residing in Santa Clara
8   County, CA.
9   2.       Plaintiff is informed and believes and, based thereon, alleges that Defendant BENLIN YUAN
10  ("Yuan") is an individual residing in Mississauga, Ontario, Canada, and was at all relevant times
11  conducting business in Santa Clara County, California.  Plaintiff is informed and believes, and thereon
12  alleges that ~~Defendant~~ Yuan ~~was~~is and ~~is~~, at all relevant times, was the CEO of Camiwell~~, Inc.~~
13  ~~("Camiwell U.S.")~~ and ~~has~~holds 40% of ~~the~~its shares ~~of Camiwell U.S.~~, that he was and is an
14  employee and/or agent of Defendant BEIJING ASIACOM ~~INFORMATION~~INFORMA-TION
15  TECHNOLOGY CO., LTD ("Asiacom China~~")~~"), as its key business ~~manager in~~manager in charge of
16  its businesses in the U.S. and Canada~~.~~; and that he was and is the spouse of Defendant HONG LIN~~.~~
17  ("Lin").
18  3.       Plaintiff is informed and believes and, based thereon, alleges that ~~Defendant HONG LIN~~
19  ~~("Lin") is the spouse of Yuan, and~~ is an individual residing in Mississauga, Ontario, Canada, and was
20  at all relevant times conducting business in Santa Clara County, California. ~~ Lin~~; that she is the spouse
21  of Yuan;, and that, at all relevant times, she owned at most 25% of the shares of Camiwell~~;~~ U.S.
22  4.       Plaintiff is informed and believes and, based thereon, alleges that ~~nominal Defendant~~
23  ~~CAMIWELL, INC.~~ ("Camiwell U.S.")~~,~~ is and, at all times relevant to this action, was a California
24  corporation conducting business in Santa Clara County, California, with its principal place of business
25  in Santa Clara County, California.
26
27  _____
28  [1]   ~~Previously, Mr. Zhang resided in Santa Clara County, California.~~

[PROPOSED] VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT
2
*Zhang v. Yuan, et al.*, 3:23-cv-05818-CRB

5.      Plaintiff is informed and believes and, based thereon, alleges that Defendant CAMIWELL, INC. (CANADA) ("Camiwell Canada"), is and, at all times relevant to this action, was a Canadian corporation conducting business in Santa Clara County, California.

6.      Plaintiff is informed and believes and, based thereon, alleges that ~~Defendant BEIJING ASIACOM INFORMATION TECHNOLOGY CO., LTD.~~ ("Asiacom China"~~)~~, was and is a Chinese information technology services company headquartered in Beijing, China, that provides IT services (such as network cabling and server operation and maintenance in data centers for major ~~cusomers~~customers such as Alibaba and Didi~~, in China and US~~) throughout China and in California, including in this judicial district. At all relevant times, Yuan was and is Asiacom China's key business manager and agent and/or employee, ~~at all relevant times,~~ in charge of business in the U.S. and Canada ~~is Defendant Yuan~~.

7.      Plaintiff is informed and believes and, based thereon, alleges that Defendant ASIACOM AMERICAS, INC. ("Asiacom ~~U.S.")~~Americas"), is a Virginia corporation wholly owned by Asiacom China~~;~~ and that, at all times relevant, it was and is conducting business in Santa Clara County, California, through its key business manager and agent and/or employee, Yuan.

8.      Plaintiff is informed and believes and, based thereon, alleges that Defendant BANK OF AMERICA CORPORATION ("B of A") is a National Association, and, at all times relevant, was and is conducting business in Santa Clara County, California.

9.      Plaintiff is informed and believes and, based thereon, alleges that, at all relevant times, each of the Defendants other than B of A, or some of them, were the partners, agents, servants, and/or employees of one or more of the other said Defendants and, in doing the things hereafter alleged, were acting within the scope of said Defendants' authority such as a partner, agent, servant, and/or employee and with the permission and consent of the other Defendants.

**JURISDICTION AND VENUE**

10.     The Court has subject matter jurisdiction over this matter and its California state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

11.     The Court has personal jurisdiction over Defendants because they purposefully availed
themselves of the benefits and protections of the laws of the State of California and the United States
and have substantial minimum contacts to~~with~~ and business in this judicial district:

   i)     The Court has personal jurisdiction ~~of~~over Defendants Yuan and Lin, who have
          purposefully availed themselves to~~of~~ the benefits and protections of the laws of
          the State of California as owners of Camiwell U.S~~., a California corporation~~.

   ii)    The Court has personal jurisdiction over Camiwell U.S~~.~~, a California
          corporation with a principal place of business in Santa Clara County, California,
          ~~as it~~which has purposefully availed itself to~~of~~ the benefits and protections of the
          laws of the State of California by registering ~~it's~~its corporate status with the
          Office of the California Secretary of ~~State's Office~~State.

   iii)   The Court has personal jurisdiction over Asiacom ~~U.S.~~Americas as it
          purposefully availed itself to~~of~~ the benefits and protections of the laws of the
          State of California ~~with~~by its filing of ~~a~~ corporate status ~~registered~~ with the
          Office of the California Secretary of ~~State's Office~~State to do business in the
          State of California, and ~~paid~~by paying taxes to the California Franchise Tax
          Board to keep its corporate status active in the State of California.  Asiacom
          ~~U.S.~~Americas has sufficient minimum contacts with the State of California by
          conducting business in the County of Santa Clara, California, through ~~it's~~its key
          business manager and agent and/or employee ~~Defendant~~ Yuan ~~in the County of
          Santa Clara, California~~.

   iv)    The Court has personal jurisdiction over Camiwell Canada ~~as it has~~due to its
          sufficient minimum contacts with the State of California ~~as it shares~~because, at
          all times relevant, it shared with Camiwell U.S. the same website, same
          customers, and same ownership (except for Zhang, who ~~dees~~is not ~~own~~an owner
          of Camiwell Canada~~) as Camiwell U.S.~~), and ~~performs~~performed the same
          business services and ~~utilizes~~utilized the same or substantially similar employees
          as Camiwell U.S~~.~~, which has a principal place of business in Santa Clara

1  County, California.  As CEO of Camiwell Canada, Defendant Benlin Yuan
2  (Yuan) managed all projects and sent out emails to his employees directing them
3  to work in California.  On a systematic and quarterly basis, Yuan and his
4  employees traveled to California for work and lived in Plaintiff's house in San
5  Jose, California.  As CEO of Camiwell Canada, he actively directed Camiwell
6  U.S. to commit tax fraud by sending out fake invoices for services for consulting
7  that were never rendered and asked Camiwell U.S. to pay share shareholder
8  dividends in the guise of consultant fees.

9  12.   The Court has personal jurisdiction over Asiacom China as it purposely availed itself of the

10  protections, privileges, and benefits of the protection of the laws of the State of California when it hired

11  Defendantretained Yuan as its key manager and agent and/or employee in developing and executing

12  Asiacom China's execution of business in the State of California. Asiacom China also had sufficient

13  minimum contacts which were continuous and systematic with the State of California, which, at all

14  relevant times, were continuous and systematic, when it subcontracted its IT work with Camiwell U.S.,

15  which accounted for 95% of Camiwell U.S.'s business. The IT work was performed by approximately

16  35 engineers of Camiwell U.S. in Virginia and 15 engineers in California and at two data centers for

17  network cabling and server maintenance in the Santa Clara, California.  As evidenced in an email by

18  Feng Wang, Vice President ofBased on Asiacom China in charge of overseas business, Wang thanked

19  Camiwell U.S.'s past years of service and wanted to ensure a smooth transition with Camiwell U.S.'s

20  engineers assisting Asiacom U.S.'s engineers when Asiacom China sets up its own operations in the U.S.

21  See Exhibit A, Email from Feng Wang dated November 20, 2018 with translation from Chinese to

22  English.

23       v)   In factChina's conduct as alleged herein, this representation was untrue since

24  Asiacom U.S. immediately thereafter conjured a secret plan with Yuan and his

25  brother Ben Tao Yuan to raid Camiwell U.S. by hiring away (instead of

26  transitioning to work to Asiacom U.S.'s own engineers, because there was none)

27  all of approximately 50 of its engineers (15 of whom were working in data

28  centers located in Santa Clara County, California) and looting almost all of

1 | ~~Camiwell U.S.'s equipment and assets for a nominal amount of $37,000. This~~

2 | Court's exercise of jurisdiction over ~~the Defendants~~ Asiacom China would

3 | comport with traditional notions of fair play and substantial justice.

4 | 12.   The amount in controversy exceeds $75,000 exclusive of interest and costs.

5 | 13.   Venue is proper in the Court pursuant to 28 U.S.C. § 1391 because a substantial part of the

6 | events and omissions giving rise to the claims alleged ~~in this First Amended Complaint~~herein occurred

7 | in Santa Clara, California, and the Northern District of California.  Also, the core business and assets at

8 | issue ~~in this First Amended Complaint~~ were and are primarily in this judicial district.

9 | ~~14.1.   The amount in controversy exceeds $75,000 exclusive of interest and costs.~~

10 | **ALTER EGO ALLEGATIONS**

11 | 14.   ~~15~~  Plaintiff is informed and believes, and based thereon, alleges that Defendants Yuan and

12 | Lin, Camiwell Canada, and Asiacom ~~U.S., is~~Americas are and, at all times ~~is was~~since its formation,

13 | were the alter egos of each other; there was a unity of ownership and interest by ~~and,~~ between, and

14 | among said Defendants ~~Yuan, Lin, Camiwell Canada, and Asiacom U.S.~~ such that any separateness

15 | between them has never existed~~,~~ and/or has ceased to exist.

16 | 15.   Yuan and Lin own and, at all relevant times, owned Camiwell Canada~~, concealing from~~.

17 | Plaintiff ~~Zhang. Yuan, while being CEO of~~ is informed and believes, and based thereon, alleges that

18 | Camiwell Canada was formed and operated with inadequate capitalization, had no employees, and

19 | failed to respect corporate formalities.

20 | 16.   Yuan and Lin were the directors of Camiwell Canada from the time of its formation.  In January

21 | of 2019, Lin was removed as a director and was replaced by Feng Wang and Jiang Xu.  Plaintiff

22 | ~~Camiwell US,~~ is informed and believes, and based thereon, alleges that Feng Wang and Jiang Xu are

23 | two members of senior management of Asiacom China and Asiacom Americas.

24 | Without Plaintiff's knowledge or consent, while CEO of Camiwell U.S., and at the direction of Asiacom

25 | China, Yuan secretly incorporated Asiacom ~~U.S.~~(Americas~~)~~ with his brother Ben Tao Yuan as its CEO~~)~~

26 | —as a subsidiary ~~for~~of Asiacom China and as a competitor of Camiwell ~~US, together, Yuan, Ben Tao~~

27 | ~~Yuan, Lin, and Asiacom U.S. carried out a secret corporate raid plan against Camiwell U.S., by hiring~~

28 | ~~away all its engineers and acquiring all its assets for the nominal amount of $37,000 (pursuant to a secret~~

1   ~~contract signed by Yuan as President of Camiwell U.S. and his brother Ben Tao Yuan as CEO of Asiacom~~

2   ~~U.S.)~~

3   16.   U.S. Plaintiff is informed and believes, and based thereon, alleges that ~~Defendants Camiwell~~

4   ~~Canada and~~ Asiacom ~~U.S. were~~ Americas was formed and operated with inadequate capitalization, had

5   no employees, and failed to respect ~~other~~ corporate formalities ~~that would indicate a separate existence~~

6   ~~from each other .~~.

7   17.   Plaintiff is informed and believes, and, ~~basesd~~based thereon, alleges that Camiwell Canada and

8   Asiacom Americas had no separate existence even before Asiacom ~~China~~Americas acquired Camiwell

9   Canada in May of 2019.

10   ~~17.~~18. Plaintiff is informed and believes, and, based thereon, alleges that Defendants Yuan and Lin,

11   Camiwell Canada, and Asiacom ~~U.S.~~Americas commingled and failed to segregate the funds and assets

12   of each other from their own and treated the assets and funds nominally belonging to each other as their

13   own funds.

14   ~~18.~~19. Plaintiff is informed and believes, and based thereon, alleges that Defendants Yuan and Lin

15   ~~have~~ controlled, dominated, managed, and operated Camiwell Canada ~~since its formation~~ for their

16   benefit from the time of its formation until January of 2019, when Asiacom China effectively took

17   control, and then ultimately acquired it in May of 2019.

18   ~~19.~~20. Plaintiff is informed and believes, and based thereon, alleges that ~~Defendants~~ Yuan and Lin,

19   together with Asiacom China, have controlled, dominated, managed, and operated Asiacom

20   ~~U.S.~~Americas since its formation for their benefit.

21   ~~20.~~21. Plaintiff is informed and believes, and based thereon, alleges that ~~Defendant~~ Camiwell Canada

22   and Asiacom ~~U.S.~~Americas is, and at all times mentioned was, a mere shell, instrumentality and

23   conduit through which ~~Defendants~~ Yuan and Lin ~~carry~~carried on their activities. ~~Defendants~~ Yuan and

24   Lin exercised ~~and continue to exercise~~ such complete control and dominance of the activities of

25   ~~Defendant~~ Camiwell Canada and Asiacom ~~U.S.~~Americas that any individuality or separateness of them

26   do not, and all relevant times did not, exist. Plaintiff is informed and believes, and based thereon,

27   alleges that ~~Defendant~~ Camiwell Canada and Asiacom ~~U.S.~~Americas existed and exist solely to ensure

28   that ~~Defendants~~ Yuan and Lin remain "judgment proof."

1   22.     Plaintiff is informed and believes, and based thereon, alleges that Asiacom China caused

2   Asiacom Americas to be created solely to insulate itself from liability in the US and Canada.

3   ~~21.~~ 23.  Adherence to the fiction of the separate existence of ~~Defendants~~ Asiacom China, Asiacom

4   Americas, Camiwell Canada, ~~Asiacom U.S.~~, Yuan, and Lin as entities distinct from each other would

5   permit an abuse of privileges against liability afforded to companies and corporations, and would result

6   in unfairness to Plaintiff and an inequitable result.  It would promote injustice by allowing said

7   Defendants ~~Camiwell Canada, Asiacom U.S., Yuan, and Lin~~ to evade liability and/or to veil assets that

8   should in equity be used to satisfy the judgment sought by Plaintiff in this action.

9                                **GENERAL ALLEGATIONS**

10  ~~24.     Camiwell U.S., is an information technology company based in Santa Clara, California.  At all~~

11  ~~times relevant, the directors were and are Zhang, Yuan, and Lin; the officers were Zhang, Yuan, and~~

12  ~~Lin, the officers were and are Zhang, Yuan, and Hui Sun ("Sun"); the shareholders were and are Yuan~~

13  ~~(40%), Zheng (35%), and Lin (25%). Lin and Yuan are married and therefore jointly control 65% of~~

14  ~~the equity of Camiwell U.S.~~  Plaintiff is informed and believes, and, based thereon, alleges that

15  Camiwell Canada is located in Mississauga, Ontario, Canada; ~~it was incorporated by Yuan~~ Yuan and

16  Lin formed Camiwell Canada on or about 12/5/13, and were initially the sole owners and directors.

17  25.     Zhang formed Camiwell U.S. initially as a Delaware LLC on 9/16/14; on or about 6/8/2018, it

18  was converted into a California corporation.  At all times relevant, the directors were and are Zhang,

19  Yuan, and Lin; the officers were and are Zhang, Yuan, and Hui Sun; the shareholders were and are

20  Yuan (40%), Zheng (35%), and Lin (25%).  As husband and ~~is owned exclusively by~~ wife, Yuan and

21  Lin ~~Initially,~~ jointly control 65% of the equity of Camiwell U.S.

22  /////

23  ~~22.~~     Camiwell U.S. ~~did not have much business when it started~~ is an information technology company

24  based in Santa Clara, California.  Beginning in ~~2014.~~

25  ~~23.~~     ~~In~~ December of 2015, Camiwell ~~U.S.'s business started to grow.~~

26  ~~24.~~ 26.  ~~From 2016 to 2017, Camiwell~~ U.S.'s business ~~continue~~ began to grow.  This trend continued

27  through 2016 and 2017; however, Yuan was unwilling to provide business operation data and contract

28  information.

1  ~~25.~~27.  In the early months of 2018, Yuan refused to provide business and accounting records to Zhang

2  and told Zhang there were no written contracts and only verbal agreements with Asiacom China, its

3  major customer.

4  28.      ~~After~~In or about May _of_ 2018, Yuan told Zhang that Asiacom China wanted to merge with

5  Camiwell U.S., but _he_ refused to disclose _to Zhang_ any concrete terms ~~and~~or conditions. ~~Therefore,~~

6  ~~Zhang responded in the negative for~~Due to this lack of ~~visibility~~ _transparency, Zhang refused to_

7  _consent to the merger._

8  ~~26.~~29.  Yuan _next_ suggested that Camiwell U.S. be sold to Camiwell Canada ~~(a company that~~ _, which_

9  Yuan and Lin owned~~)~~_, and that they would_ then sell Camiwell Canada to Asiacom China.

10 ~~27.~~30.  A few days later, Asiacom China offered to purchase Camiwell U.S. ~~and let~~ _, proposing that_

11 Yuan _would_ be in charge of the Virginia office and do business in the East Coast, ~~and~~while Zhang

12 _would be_ in charge of the California site and do business in the West Coast.  Zhang refused_,_ and the

13 merger negotiations ended.

14 ~~28.~~31.  Until the end of 2018, Camiwell U.S.'s main customer was ~~Defendant~~Asiacom China, which is

15 a contractor for large Chinese technology companies _such as Alibaba (China's equivalent of Amazon)_

16 _and Didi (Uber),_ providing mainly local data center server operation and maintenance and network

17 cabling services.  Asiacom China would subcontract its IT work to Camiwell U.S. through various

18 service contracts accounting for about 95% of Camiwell U.S.'s business.  The IT work was performed

19 by approximately ~~fifty~~35 engineers ~~of Camiwell U.S., approximately fifteen of whom were working~~in

20 _Virginia and 15 engineers in California_ at two data centers for network cabling and server maintenance

21 in Santa Clara, California.

22 _32.      On November 20, 2018, Feng Wang, General Manager and_ Vice President of Asiacom China in

23 charge of overseas business, sent an email ~~and thanked~~to Camiwell U.S. _thanking_ Yuan and ~~Plaintiff~~

24 Zhang for Camiwell U.S.'s past years of service and _advising that Asiacom China "plans to set up a US_

25 _subsidiary, to undertake onsite service business for US customers starting January 1, 2019 . . . ." He_

26 wanted to ensure a smooth transition ~~with~~ _, and stated, "During the transition, US_ Camiwell

27 U.S.'s~~onsite~~ engineers ~~assisting~~will assist Asiacom ~~U.S.'s~~US _onsite_ engineers ~~when Asiacom China set~~

28

1  up its own operations in the to complete onsite operation maintenance." A true copy of that email, with

2  translation from Chinese to English, is appended as **Exhibit A** hereto.

3  29.33. In fact, as detailed below, this representation was untrue. Asiacom China had no onsite

4  engineers, and "Asiacom US" (which did not yet exist; see next paragraph) had none, either. Rather,

5  Yuan conspired with Asiacom China to hire away Camiwell U.S. engineers and to acquire Camiwell

6  U.S. equipment and assets for a nominal sum.

7  34.    The day after Wang's email—November 21, 2018—a company named UCC Retrievals, Inc.,

8  "pursuant to instructions of counsel," submitted for filing with the Corporation Commission of the

9  Commonwealth of Virginia the Articles of Incorporation for Asiacom Americas Inc. The sole

10 incorporator was Ruming Liu; Plaintiff is informed and believes, and, based thereon, alleges that Ms.

11 Liu is an attorney in Sunnyvale, CA (SBN 282062). According to the Articles of Incorporation, the

12 initial directors were Ben Tao Yuan, the brother of Defendant Yuan; Feng Wang, the aforementioned

13 General Manager of Asiacom China; and Jiang Xu. Plaintiff is presently unaware of Mr. Xu's

14 capacity, but he appears to be with Asiacom China; he was cc'd (at qxu@asiacom.net.cn) on the email

15 from Wang and both he and Wang list the same address in Beijing. Plaintiff had no contemporaneous

16 knowledge of this filing.

17 30.35.  On November 24, 2018, at a Camiwell U.S. shareholder meeting, Yuan told PlaintiffZhang that

18 he would be fully loyal to Camiwell U.S. and not do anything that would be competitive against

19 Camiwell U.SH.

20 31.    On November 26, 2018, after the failure of the attempted acquisition of Camiwell US and

21 concealing from Plaintiff, Asiacom China in collusion with Yuan incorporated Asiacom U.S. as its

22 subsidiary, with Yuan's brother Ben Tao Yuan acting as its CEO, using the Camiwell's address in

23 Virginia as its office in US.

24 36.    Concealing from Plaintiff and contrary to the promise of Feng Wang for a professional and

25 cooperative transition of business, Asiacom U.S., through YuanThe effective date of the Certificate of

26 Incorporation of Asiacom Americas Inc. was November 26, 2018. Its initial address listed in the

27 Articles of Incorporation was 45800 Amsterdam Terrace, #36, Dulles, VA 20166100 Shockoe Slip 2d

28 Floor, Richmond, VA, which was the business address for Camiwell U.S.

1  37.   On November 30, 2018, Ben Tao Yuan signed and caused to be filed with the California

2  Secretary of State a Statement and Designation by Foreign Corporation for Asiacom Americas Inc.

3  38.   On January 30, 2019, Defendant Lin was replaced on the board of Camiwell Canada by Feng

4  Wang and Jiang Xu. i.

5  32.   On or about May 5, 2019, Ben Tao Yuan, as CEO of Asiacom Americas, and his brother ~~Ben Tao~~

6  ~~Yuan as CEO of Asiacom U.S., carried out a secret corporate raid plan by hiring almost all 50 of the~~

7  ~~engineers of Camiwell U.S (instead of transitioning the work from Camiwell U.S.'s engineers to Asiacom~~

8  ~~U.S.'s engineers, which were non-existing), and purchasing all of Camiwell U.S.'s equipment necessary~~

9  ~~for business for the nominal amount of $37,281.29 pursuant to a~~ Defendant Benlin Yuan, as President

10  of Camiwell U.S. entered into the Device and Asset Transfer Agreement (the "Asset Transfer

11  Agreement") ~~with Yuan signing as President of Camiwell U.S. and his brother Ben Tao Yuan as CEO of~~

12  ~~Asiacom U.S. See **Exhibit B**, *Device and Asset Transfer Agreement with*~~"), a true copy of which, with

13  translation from Chinese to English-

14  ~~33.~~ 39.  ~~Concealing from Plaintiff, Yuan as CEO of Camiwell U.S. signed~~, is appended as **Exhibit B**

15  hereto.  By the terms of that agreement, Asiacom Americas acquired all of the assets and equipment of

16  Camiwell U.S. for the nominal sum of $37,281.29  Plaintiff only became aware of the Asset Transfer

17  Agreement, ~~that transferred almost all assets of Camiwell U.S. to Asiacom U.S., with Yuan's brother~~

18  ~~signing on behalf~~ via discovery in the State Action (see ¶ 41, *infra*) in or about October of ~~Asiacom~~

19  ~~U.S. which was and is, at all relevant times, a subsidiary of Asiacom China~~2021.

20  ~~34.~~ 40.  Plaintiff is informed and believes and, based thereon, alleges that Yuan and his brother hold an

21  ownership interest in Asiacom China, ~~and~~ and/or Asiacom Americas.

22  ~~35.   In or about 2018, Asiacom China was planning an initial public offering (IPO) of its stock in~~

23  ~~China.~~

24  ~~36.~~ 41.  After losing the business of Asiacom China, Yuan began to push Zhang to dissolve Camiwell

25  U.S. Zhang became suspicious of Yuan's motives, and demanded corporate documents of Camiwell

26

27

28

1  U.S. to no avail.  On or about July 20, 2020, Zhang initiated a lawsuit in Santa Clara County Superior

2  Court (Case No. 20CV368535:, the "State ~~Case~~Action") against Yuan, Lin, and Camiwell U.S.[2]

3  ~~37.    Plaintiff did not discover the Asset Transfer Agreement until discovery in the State Case took~~

4  ~~place in or about October 2021.~~

5  ~~38.~~42.  In or about December 2021, ~~Defendant~~ Asiacom China registered its stock for an initial public

6  offering (IPO) in China.  According to its Registration Statement (rough English translation), "Due to

7  the failure of the acquisition of Camiwell in the United States, on November 26, 2018, the company

8  established the U.S. Asiacom to be responsible for the execution of business in the United States.  At

9  present, the United States and Canada are executed by Asiacom in the United States and Camiwell in

10  Canada respectively, and the main business leader is still Benlin Yuan."

11  43.    Only when he downloaded the Registration Statement in October of 2021 did Plaintiff become

12  aware of the scheme, as alleged herein, by which the Defendants deprived him of his rights and interest

13  in Camiwell U.S.

14  ~~39.~~    According to the ~~Asiacom China IPO~~ Registration Statement, after ~~Yuan registered~~the formation

15  of Asiacom ~~U.S., Camiwell Canada was acquired by~~Americas, in or about May of 2019, Asiacom China

16  (through its subsidiary in Hong Kong, Rongsheng Hi-Tech) ~~in or about May 2019.~~

17  ~~40.    According to the Asiacom China IPO registration statement, Yuan and Lin were paid RMB~~

18  ~~10.5705 million (USD and RMB exchange ratio at the time of the Complaint is about 1:7.28) for the sale~~

19  ~~of~~acquired Camiwell Canada, paying Yuan and Lin over $1.5 million in June of 2019.

20  44.    ~~According to.~~ Again, Plaintiff became aware of this only in October of 2021 when he obtained

21  the ~~Asiacom China IPO~~Registration Statement.

22  ~~41.~~45. According to the Registration Statement, Camiwell Canada diverted Asiacom China's business

23  from Camiwell U.S. to Camiwell Canada, in the amount of RMB 6.5845 million (currently about

24  $905,908) and RMB 3.6031 million ($495,721) in 2018 and 2019, respectively, while outsourcing to

25  Camiwell U.S. to provide the same IT services for no consideration.  In other words, Camiwell U.S.

26

27

28  [2]  In September of 2023, the State Case concluded with Zhang accepting separate offers to compromise from Yuan/Lin and
     Camiwell U.S. pursuant to California Code of Civil Procedure section 998.

1  employees did the work (and thus Camiwell U.S. incurred the expense of their salaries), but Camiwell

2  Canada received the income.  Plaintiff is informed and believes and, based thereon, alleges that

3  Camiwell Canada was able to minimize its own expenses by maintaining a barebones operation with

4  only two employees.  Plaintiff is further informed and believes and, based thereon, alleges that

5  Camiwell Canada's actions were at the direction of Asiacom China and/or Asiacom Americas.

6  ~~42.~~46.  This scheme enabled Yuan and Lin to maximize their profit (approximately $1.4 million)

7  through Camiwell Canada at the expense of Camiwell U.S., and enabled them to subsequently sell

8  Camiwell Canada to Asiacom China for over $1.5 million~~dollars~~.  None of said information and facts

9  were available to Zhang at the time he filed the State ~~Case~~Action, and the same were not alleged as part

10  of his claims in that action.

11  ~~43.~~47.  Following the 998 offers and acceptances in the State ~~Case~~Action, Yuan and Lin resumed their

12  looting and assault on Camiwell U.S~~.~~.

13  ~~44.~~48.  On September 28, 2023 (less than a week after the 998 offers were accepted), without Zhang's

14  knowledge or consent, Yuan and Lin filed a Certificate of Election to Wind Up and Dissolve Camiwell

15  U.S. ~~without Zhang's knowledge or consent.~~[4]

16  ~~45.~~49.  Next, ~~they~~Yuan and Lin made three separate and unauthorized withdrawals totaling almost

17  $672,000 from Camiwell U.S.'s account at Bank of America (account number 3251 1222 0628), all

18  without Zhang's knowledge or consent, as follows:

19      a.  $162,500 transfer to a Canadian company controlled by Yuan called ~~Seinal~~Scinall

20          Inc.~~, Canada~~.

21

22

23  [3] ~~Plaintiff is informed and believes and, based thereon, alleges that the dissolution has not yet occurred because Camiwell's two remaining creditors have not yet been paid, the final tax returns have not yet been filed, and the balance of funds~~

24  ~~remaining after payment of the creditors has not yet been disbursed to shareholders. Camiwell Inc. currently has $211,741.01 in funds left. These funds, along with any derivative recoveries that may be obtained in the District Court~~

25  ~~action, are its only remaining assets. Its only remaining creditors are its accountant ($50,000) and its CPA ($7,709.90), plus any additional fees that may be incurred in filing the final returns.~~

26  [4] Plaintiff is informed and believes and, based thereon, alleges that the dissolution of Camiwell U.S. has not yet occurred because its two remaining creditors—its accountant ($50,000) and its CPA ($7,709.90)—have not yet been paid, the final

27  tax returns have not yet been filed, and the balance of funds remaining after payment of the creditors has not yet been disbursed to shareholders. Camiwell U.S. currently has $211,741.01 in funds left. These funds, along with any derivative

28  recoveries that may be obtained in the instant action, are its only remaining assets. Its only remaining payables are to its two creditors plus any additional fees that may be incurred in filing the final returns.

1          b.  $200,000 in the form of a cashier's check payable to an unknown recipient

2          c.  $309,438 in the form of cashier's check payable to an unknown recipient

3   ~~46.~~ 50.  Even Camiwell U.S.'s own counsel in the State ~~Case~~Action, Attorney Marie Quashnock,

4   recognized the above-referenced funds transfer as "unauthorized" and requested, to no avail, "that Mr.

5   Yuan immediately return all funds to Camiwell's accounts."

6   ~~47.~~ 51.  Plaintiff is informed and believes and, based thereon, alleges that, absent Court intervention,

7   Yuan and Lin plan to make even more unauthorized transactions, without ~~Zhan's~~Zhang's consent and

8   inconsistent with the law and good business practices.

9   ~~48.~~ 52.  Ordinarily, Zhang would make a demand to the Board of Directors for Camiwell U.S. to take

10  action against Yuan and Lin to return the funds and profits back to Camiwell U.S.; however, such

11  demand would be futile and is excused by the fact that, as holders of a majority interest in Camiwell

12  U.S. and being two of the three directors, Yuan and Lin could decline to take any such action.  Indeed,

13  after the 998 offers were accepted, Zhang demanded return of the funds, through his counsel to counsel

14  for Yuan and Lin, to no avail. ~~Even the request from Camiwell U.S.'s own counsel, hired by Yuan and~~

15  ~~Lin themselves, to return funds to Camiwell U.S. was rebuffed by counsel for Yuan and Lin.~~

16                          **FIRST CAUSE OF ACTION**

17                              **Conversion**

18                  (*Derivatively by Camiwell U.S. against Defendants Yuan and Lin*)

19  ~~49.~~ 53.  Plaintiff restates and incorporates by this reference each of the allegations contained in the

20  proceeding paragraphs 1-~~49~~52 as if fully set forth herein.

21  ~~50.~~ 54.  Plaintiff is informed and believes that Camiwell U.S. owned and possessed $672,000 in its

22  Bank of America account after the 998 offers were accepted.

23  ~~51.~~ 55.  Plaintiff is informed and believes and, based thereon, alleges that, shortly after the 998 offers

24  were accepted, Defendants Yuan and Lin substantially interfered with Camiwell U.S.'s ownership and

25  possession of the $672,000 as herein alleged by ~~knowingly and misappropriating corporate assets of~~

26  ~~Camiwell U.S. when they withdrew almost $672,000 from Camiwell U.S.'s account at Bank of~~

27  ~~America~~making the disbursements set forth in ¶ 49, *supra*, without justification, proper authorization or

28  ~~authority,~~ consent from Camiwell U.S., and without Zhang's knowledge or consent.

1  52.   Defendants converted and dispossessed said property, assets, and funds without proper

2  authorization or consent from Camiwell, U.S.

3  53.56.  As a direct and proximate result of Defendantsthe conduct of Yuan and Lin's conductsLin as

4  alleged herein, Camiwell U.S. has been damaged in an amount to be proven at trial, but not less than

5  $4,000,000.

6  54.   Defendants Yuan and Lin's conducts were a substantial factor in causing Plaintiff's damage.

7  / / / / /

8  / / / / /

9  55.57.  In engaging in the conduct as alleged herein, Defendants Yuan and Lin, and each of them, acted

10  with oppression, fraud, or malice, entitling Plaintiff tojustifying an award of punitive damages in an

11  amount sufficient to punish said Defendants and to deter such conduct.

12  **SECOND CAUSE OF ACTION**

13  **Breach of Fiduciary Duty**

14  *(Derivatively by Camiwell U.S., and individually by Zhang, against Yuan and Lin)*

15  56.58.  Plaintiff restates and incorporates by this reference each of the allegations contained in the

16  proceeding paragraphs 1-4952 as if fully set forth herein.

17  57.59.  As members of the Board Directors of Camiwell U.S., Defendants Yuan and Lin owed to the

18  company and to its shareholders, including Plaintiff, a fiduciary duty of loyalty.

19  58.60.  As alleged herein, Defendants Yuan and Lin breached their fiduciary duties by

20  misappropriating corporate assets of Camiwell U.S. when they withdrew almost $672,000 from

21  Camiwell U.S.'s account at Bank of America, without justification or authority, and without Zhang's

22  knowledge or consent.

23  59.61.  As a direct and proximate result of the conductsconduct of Defendants Yuan and Lin, Camiwell

24  U.S. and Plaintiff have been damaged in an amount to be proven at trial, but not less than $4,000,000.

25  60.   The conduct of Defendants Yuan and Lin was a substantial factor in causing such damage.

26  61.62.  In engaging in the conduct as alleged herein, Defendants Yuan and Lin, and each of them, acted

27  with oppression, fraud, or malice, entitling Plaintiff and Camiwell U.S. to an award of punitive

28  damages in an amount sufficient to punish said Defendants and to deter such conduct.

Case 3:23-cv-05818-VC   Document 105-1   Filed 07/25/24   Page 64 of 74

**THIRD CAUSE OF ACTION**

**Fraud (Concealment)**

*(Derivatively by Camiwell U.S. against Asiacom China)*

62. 63.  Plaintiff restates and incorporates by this reference each of the allegations contained in the proceeding paragraphs 1-~~49~~52 as if fully set forth herein.

63. 64.  After its attempt to legally acquire Camiwell U.S. failed, Asiacom China ~~tried to acquire~~effectively acquired Camiwell U.S. illegally and under the table.

64.  ~~On November, 20, 2018, Feng Wang, Vice President of Asiacom China in charge of overseas business, sent an email and thanked Camiwell U.S. for its past years of service to Asiacom China's customers and wanted to ensure a smooth transition with Camiwell U.S.'s engineers assisting Asiacom U.S.'s engineers when Asiacom China sets up its own operations in the U.S.~~

65.  ~~Defendant Asiacom China intentionally concealed certain facts to Plaintiff, which was to conduct a corporate raid on Camiwell U.S.~~

65.  ~~Unknown to Plaintiff at the time and contrary to the promise of Feng Wang for a professional and cooperative transition of business~~As alleged herein, Feng Wang sent an email on November 20, 2018, to Camiwell U.S., addressed to Zhang and Yuan.  Although Wang arguably had no duty to speak, once he did, he had an obligation to speak truthfully because he made certain representations but did not disclose facts that materially qualified the facts disclosed or that rendered his disclosure likely to mislead, because the facts were known or accessible only to him and he knew they were not known to or reasonably discoverable by Plaintiff, and he actively concealed from Plaintiff the ability to discovery the true and complete facts.  Under the circumstances, it was it wrongful for him to remain silent.

66.  ~~~~As alleged herein, Asiacom China secretly engaged Yuan as its manager and agent to take charge of its North America ~~operation~~operations.  Asiacom China, through its subsidiary Asiacom ~~U.S. which was incorporated by Yuan~~Americas, and conspiring with Yuan and his brother Ben Tao Yuan (acting as CEO of Asiacom ~~U.S.)~~Americas), carried out a secret corporate raid plan ~~shortly after November 24, 2018~~against Camiwell U.S. ~~by hiring~~ It hired almost all of ~~the~~Camiwell U.S.'s 50 engineers~~of Camiwell U.S.~~, and ~~purchasing,~~ without Plaintiffs' knowledge or consent, acquired Camiwell U.S.'s equipment,

[PROPOSED] VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT
16
*Zhang v. Yuan, et al.;* 3:23-cv-05818-CRB

1  files, documents, programs, and specifications ~~necessary for business~~ for the nominal amount of

2  $37,281.29.~~-~~

3  ~~67.~~66.  ~~Unknown to Plaintiff and in collusion with Asiacom China, Yuan signed~~ via the Asset Transfer

4  Agreement, which Yuan signed as President of Camiwell U.S. ~~that transferred almost all assets of~~

5  ~~Camiwell U.S. to Asiacom U.S., with Yuan's~~and his brother ~~signing on behalf of Asiacom U.S. (as its~~

6  ~~CEO) which was and is, at all relevant times, a subsidiary of Asiacom China~~signed as CEO of Asiacom

7  Americas.

8  ~~68.~~67.  Camiwell U.S.~~,~~ —and, in particular, Zhang—did not know of the concealed facts that Asiacom

9  China had a secret raid plan, ~~and Yuan~~that Asiacom China had engaged Yuan as its manager and agent

10 to take charge of its North America operations, and that Yuan had signed an Assets Transfer

11 Agreement in which Asiacom ~~U.S.~~Americas hired almost all 50 of the engineers of Camiwell U.S. and

12 purchased Camiwell U.S.'s equipment, etc., for a nominal amount until Zhang ~~later found out from~~

13 ~~the~~learned of it during discovery in the State ~~Case~~Action in ~~August 2023~~October of 2021.  Camiwell

14 U.S. reasonably relied upon in good faith of Asiacom China's words that it wanted to ensure a smooth

15 transition and Yuan's word that he would be fully loyal to Camiwell and not do anything competitive

16 against Camiwell U.S.

17 ~~69.~~68.  Asiacom China intended to deceive Plaintiff by concealing the facts and never voluntarily came

18 forth with such information.  ~~Asiacom had a desire never to tell Zhang.~~ Zhang would have never

19 known about these fact until they were revealed in ~~Yuan and Lin's discovery in August 2023.~~ October

20 of 2021.

21 / / / / /

22 / / / / /

23 / / / / /

24 / / / / /

25 / / / / /

26 ~~70.~~69.  Had the omitted information been disclosed to Zhang and Camiwell U.S., ~~Zhang and Camiwell~~

27 ~~U.S.~~they reasonably would have behaved differently by negotiating a fair ~~market value for asset~~

28 purchase price for the Camiwell U.S. assets, as ~~it was~~they were trying to do before Asiacom China's

1  attempted acquisition failed.  ~~Camiwell U.S.~~They reasonably would have hired counsel to block the

2  ~~give away~~giveaway of its assets pursuant to the Asset Transfer Agreement

3  between two related people (Yuan and his brother Ben Tao Yuan) without Board or shareholder

4  approval ~~from Camiwell U.S.~~, in violation of California Corporations Code section 1001(a).

5  ~~71.~~70.  Plaintiff and Camiwell U.S. was harmed when Camiwell U.S. lost almost all 50 of its engineers

6  and ~~its~~the equipment, etc., necessary for the business.

7  ~~72.~~71.  Defendant Asiacom China's concealment was a substantial factor in causing Plaintiff and

8  Camiwell U.~~S.'s~~S. harm.

9  //

10  //

11  //

12  72.  In engaging in the conduct as alleged herein, Asiacom China acted with oppression, fraud, or

13  malice, entitling Plaintiff and Camiwell U.S. to an award of punitive damages in an amount sufficient

14  to punish said Defendants and to deter such conduct.

15  **FOURTH CAUSE OF ACTION**

16  **(Fraud) Intentional Misrepresentation**

17  *(Derivatively by Camiwell U.S. against Camiwell Canada)*

18  73.  Plaintiff restates and incorporates by this reference each of the allegations contained in the

19  proceeding paragraphs 1-52 as if fully set forth herein.

20  74.  As an example of intentional misrepresentation committed by Camiwell Canada, on or about

21  August and September 2018, Benlin Yuan as CEO of Camiwell Canada represented to Camiwell U.S.

22  that Camiwell U.S. would get paid for services rendered to Beijing Asiacom.

23  75.  Camiwell Canada's representation was false as Camiwell U.S. did not get paid for services

24  rendered to Asiacom China.  Camiwell Canada invoiced Asiacom China approximately $350,000 in

25  August 2018 and $326,000 in September 2018 in which Camiwell Canada was paid.  These invoices

26  were not discovered until Summer 2023 during discovery in the state case.

27  76.  Camiwell Canada knew the representations were false when made as they had a desire to

28  continue having Camiwell U.S. provide services to Asiacom China for compensation.  Additionally,

[PROPOSED] ~~VERIFIED~~ SECOND AMENDED DERIVATIVE COMPLAINT
18
*Zhang v. Yuan, et al., 3:23-cv-05818-CRB*

1  Camiwell Canada never had a desire to pay Camiwell U.S. and still has not paid Camiwell U.S. for

2  services rendered to Asiacom China.

3  77.    Camiwell Canada intended that Camiwell U.S. rely on the representation that Camiwell U.S.

4  would get paid for the services rendered to Asiacom China. Camiwell Canada knew that Camiwell

5  U.S. would rely on the representation that it would get paid for services in order for Camiwell U.S. to

6  continue services for Asiacom China.

7  78.    Camiwell U.S. reasonably relied on Camiwell Canada's representation by continuing to provide

8  services to Asiacom China.

9  79.    Camiwell U.S. was harmed when Camiwell Canada did not pay Camiwell U.S. for services

10  rendered to Asiacom China.

11  80.    Camiwell U.S.'s reliance on Camiwell Canada's representation was a substantial factor in

12  causing its harm.

13              **FIFTH CAUSE OF ACTION**

14              **Unjust Enrichment Based on Fraud**

15              (Corporate Raid on Camiwell U.S.

16         (—Derivatively by Camiwell U.S. against Asiacom China; and Asiacom U.S.)Americas)

17  74.    Plaintiff restates and incorporates by this reference each of the allegations contained in the

18  proceeding paragraphs 1-4952 as if fully set forth herein.

19  77.    By engaging in the fraudulent conduct by Feng Wang, Vice President of Asiacom China in

20  charge of overseas business in conspiring with Yuan, as alleged herein, Asiacom U.S.Americas and

21  Asiacom China received the benefit of Camiwell U.S.'s labor and services for $37,281.29 when Yuan

22  and Asiacom China raided Camiwell U.S.'s assets and hired away 50 engineers to Asiacom

23  U.S.Americas which provided the services to Asiacom China. These assets included programs, files,

24  customer information, technology, data, computers, servers, and the contents on such devices. The true

25  value of what Asiacom Americas acquired will be established at trial; however, that amount is

26  approximately $3,000,000—the value of Camiwell U.S.'s labor and services actually amounted to

27  $2,460,000 (based on $8,200 per month per engineer that itself, which, at a minimum, can be

28  measured by what Asiacom China was payingoffered to pay for it in 2018 ($450,000), plus the value of

Formatted: None, Indent: Left: 0", First line: 0", Don't add space between paragraphs of the same style, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 16 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5", Don't keep with next, Don't keep lines together

Formatted: Font: Not Italic

1    50 Camiwell U.S. engineers working for six months ~~of reasonable time necessary~~ (how long it took

2    Asiacom Americas to ramp ~~things~~ up) at $8,200 per month, which is the rate that Asiacom China

3    formerly paid Camiwell U.S. Thus, Asiacom Americas received approximately $2.95 million in

4    services and assets that were intended to ~~provide the same IT services)~~ be used for the benefit of

5    Camiwell U.S.

6    ~~78.    Thus,~~ Asiacom ~~U.S.~~China and Asiacom ~~China~~Americas were ~~enriched in the amount of~~

7    ~~$2,422,719 ($2,460,000 minus $37,281.29)~~

8    ~~79.~~78. ~~Asiacom China and Asiacom U.S. were~~ unjustly enriched by engaging in self dealing with its

9    own employee and manager Yuan and their own subsidiary and/or sister company Camiwell Canada,

10    by not having to pay fair market rate fees for the IT services rendered by Camiwell U.S. ~~like~~as they

11    would have ~~had~~ to in a normal arm's-length transactions.

12                    **SIXTH**~~FIFTH~~ **CAUSE OF ACTION**

13                    **Unjust Enrichment Based on Fraud**

14                    *(Diversion of Camiwell U.S.'s Business*

15                    *(— Derivatively by Camiwell U.S. against Camiwell Canada)*

16    ~~80.~~79.  Plaintiff restates and incorporates by this reference each of the allegations contained in the

17    proceeding paragraphs 1-~~49~~52 as if fully set forth herein.

18    80.        By engaging in the conduct as alleged herein, Defendant Camiwell Canada received the benefit

19    of RMB 6.5845 million and RMB 3.6031 million in 2018 and 2019 when it diverted Asiacom China's

20    business from Camiwell U.S. to Camiwell Canada while outsourcing to Camiwell U.S. to provide the

21    same IT services for no consideration.  As an example, on or about August and September 208, Benlin

22    Yuan as CEO of Camiwell Canada intentionally misrepresented that Camiwell U.S. would get paid for

23    services rendered to Asiacom China.  Camiwell Canada's representation was false Camiwell U.S. was

24    never paid for such services.  Invoices show that Camiwell Canada billed Asiacom China

25    approximately $350,000 in August 2018 and $326,000 in September 2018 to which Asiacom China

26    paid.  These invoices were not discovered until Summer 2023 during discovery in the state case.

27    Camiwell Canada knew the representations were false as it never had a desire to pay Camiwell U.S.

28    and still has not paid Camiwell U.S. for services rendered to Beijing Asiacom.  Camiwell Canada had

1   the desire to continue having Camiwell U.S. provide services to Asiacom China.   Camiwell Canada

2   concealed the fact that it received $350,000 for August 2018 and $326,000 for September 2018 from

3   Beijing Asiacom.

4   81.     At the same time, Camiwell Canada was able to minimize its own expenses by maintaining a

5   barebones operation with only two employees.

6   82.     Camiwell Canada was further unjustly enriched when it received the IT services provided by

7   Camiwell U.S. without paying Camiwell U.S.

8   83.     Thus, Defendants Camiwell Canada, Asiacom China, and Asiacom U.S. unjustly enriched

9   themselves itself at the expense of Camiwell U.S., obtaining benefits wrongfully that they unjustifiably

10  have not returned.

11  84.     As a direct and proximate result of Defendants' conduct, Camiwell U.S. has been damaged in

12  an amount to be proven at trial, but not less than $1,000,000.

13  / / / / /

14  / / / / /

15  / / / / /

16  / / / / /

17                          **SEVENTH NINTH CAUSE OF ACTION**

18                      **Common Count: Money Had and Received**

19                        *(Corporate Raid on Camiwell U.S.*

20          *(   Derivatively by Camiwell U.S. against Asiacom China, and Asiacom U.S.) Americas)*

21  85.     Plaintiff restates and incorporates by this reference each of the allegations contained in the

22  proceeding paragraphs 1-49 52 as if fully set forth herein.

23  86.     By engaging in the conduct as alleged herein, Asiacom U.S. Americas received the benefit of 50

24  of the engineers and Camiwell U.S.'s assets, labor and services, and almost 50 of its engineers, for

25  $37,281.29 when Asiacom China and Yuan raided Camiwell U.S.'s assets and hired away 50 engineers

26  to Asiacom U.S. which provided the services to Asiacom China.   These assets included programs,

27  files, customer information, technology, data, computers, servers, and the contents on such devices.

28  The amount should have been $2,460,000 ($50 The true value of what Asiacom Americas acquired will

1   be established at trial; however, that amount is approximately $3,000,000—the value of Camiwell U.S.

2   itself, which, at a minimum, can be measured by what Asiacom China offered to pay for it in 2018

3   ($450,000), plus the value of 50 Camiwell U.S. engineers working for six months (how long it took

4   Asiacom Americas to ramp up) at $8,200 per month, which is the rate that Asiacom China ~~used to~~

5   ~~pay~~formerly paid Camiwell U.S. ~~took six months to ramp up the services)~~ Thus, Asiacom

6   ~~U.S.~~Americas received approximately $2,~~422,719~~95 million in services and assets that ~~was~~were

7   intended to be used for the benefit of Camiwell U.S.

8   87.    ~~The amount~~No part of the $2,~~422,719~~95 million was ~~not~~used for the benefit of Camiwell. U.S.

9   88.    ~~Asiacom U.S.~~No part of the $2.95 million has ~~not given $2,422,719~~been paid to Camiwell U.S.

10   by Asiacom Americas.

11                  **EIGHTH~~SEVENTH~~ CAUSE OF ACTION**

12                  **Common Count: Money Had and Received**

13      *(Diversion of Camiwell U.S.'s Business—Derivatively by Camiwell U.S. against Camiwell*

14              *Canada,~~Asiacom China and Asiacom Americas~~*

15   89.    Plaintiff restates and incorporates by this reference each of the allegations contained in the

16   proceeding paragraphs 1-~~49~~52 as if fully set forth herein.

17   90.    By engaging in the conduct as herein, ~~Defendant~~ Camiwell Canada received money that was

18   intended to be used for the benefit of Plaintiff based on the fraudulent intentional misrepresentations to

19   Plaintiff. Camiwell Canada received money in the amount of approximately RMB 6.5845 million and

20   RMB 3.6031 million in 2018 and 2019, respectively, from Asiacom China that ~~was intended~~should

21   have been paid to ~~be used for the benefit of~~Camiwell U.S.~~as it~~, which provided the IT services to

22   Asiacom China.

23   91.    The money that Camiwell Canada received from Asiacom China was not used for the benefit of

24   Camiwell U.S. as Camiwell Canada kept the money.

25   92.    Camiwell Canada has not paid or given ~~the money~~to Camiwell U.S. ~~for its IT services in which~~

26   the money Camiwell Canada ~~has~~received from Asiacom China for the IT services provided to

27   Asiacom China by Camiwell U.S.

28

1                       **NINTH~~EIGHTH~~ CAUSE OF ACTION**

2                        **Preliminary Injunction**

3          *(Derivatively by Camiwell U.S. against Bank of America, Yuan, and Lin)*

4   93.     Plaintiff restates and incorporates by this reference each of the allegations contained in the

5   proceeding paragraphs 1-~~49~~52 as if fully set forth herein.

6   94.     After Defendants Yuan and Lin withdrew funds deposited in the business account at Bank of

7   America (account no. 3251 1222 0628), there is still $77,544.29 remaining in that account and another

8   $134,296.28 remaining in a separate account (account no. 3251 0849 4390).

9   95.     Camiwell U.S. through this second amended derivative complaint petitions the Court to issue a

10   preliminary injunction to prohibit Yuan and Lin from further withdrawing any funds from said

11   accounts, and to prohibit Defendant Bank of America from allowing any further withdrawal from said

12   accounts.

13   96.     Camiwell U.S. further asks that the Court enjoin Defendants, and each of them, from dissolving

14   Camiwell U.S. and from diminishing its assets.

15   97.     Camiwell U.S. further asks that the Court enjoin Defendants, and each of them, from usurping

16   corporate opportunities of Camiwell U.S.

17                      **TENTH~~NINTH~~ CAUSE OF ACTION**

18                        **Declaratory Relief**

19       *(Derivatively by Camiwell U.S., and individually by Zhang, against Yuan and Lin)*

20   98.     Plaintiff restates and incorporates by this reference each of the allegations contained in the

21   proceeding paragraphs 1-~~49~~52 as if fully set forth herein.

22   99.     A dispute presently exists between the parties as to who is entitled to the funds in the above-

23   referenced B of A accounts.

24   100.     A judicial determination is therefore necessary to establish rightful ownership of the funds.

25                   **ELEVENTH~~TENTH~~ CAUSE OF ACTION**

26        **Breach of Implied Covenant of Good Faith and Fair Dealing**

27          *(Derivatively by Camiwell U.S. against Asiacom China)*

28

1   101.   Plaintiff restates and incorporates by this reference each of the allegations contained in the

2   proceeding paragraphs 1-~~49~~52 as if fully set forth herein.

3   102.   In every contract or agreement, there is an implied promise of good faith and fair dealing.  This

4   implied promise means that each party will not do anything to unfairly interfere with the rights of any

5   other party to receive benefits of the contract.

6   103.   Camiwell U.S. and Asiacom China entered into various service contracts for Camiwell U.S. to

7   provide IT services to Asiacom China.

8   104.   Camiwell U.S. did all of the significant things that the contract required it to do including

9   providing IT services to Asiacom China.

10  ~~105.   Asiacom China conduct of carrying out a secret corporate raid plan and hired away Camiwell~~

11  ~~U.S.'s CEO Benlin Yuan to be charge of business in the U.S. and Canada which Yuan brought in his~~

12  ~~own brother Ben Tao Yuan as CEO of Asiacom U.S.  Asiacom China, Asiacom U.S. Yuan and his brother~~

13  ~~conjured up a secret plan to raid Camiwell U.S. employees and assets for a nominal consideration of~~

14  ~~$37,281.19.~~

15  105.   ~~That by doing so, Asiacom China did not act fairly and in good faith, and~~By engaging in the

16  conduct alleged herein, Asiacom China breached the implied covenant by preventing Camiwell U.S.

17  from receiving the benefits due it under the service contracts.

18  106.   As a direct and proximate result of Asiacom China's breach, Camiwell U.S. was harmed ~~by~~

19  ~~Asiacom China's conduct.~~in an amount to be proven at trial.

20                              **PRAYER FOR RELIEF**

21       Now, therefore, Plaintiff, individually and derivatively on behalf of Camiwell U.S., prays for

22  relief and judgment as follows:

23       1.    For injunctive relief preventing Defendants, their successors and affiliates, and

24            all persons acting on their behalf from further unlawfully:

25            a.   further diminishing Camiwell U.S. and its assets;

26            b.   transferring Camiwell U.S. assets to their own interests;

27            c.   taking corporate opportunities of Camiwell U.S.

28

[PROPOSED] VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT
24
*Zhang v. Yuan, et al., 3:23-cv-05818-CRB*

2.  For compensatory damages in an amount to be proven at trial, but not less than $4,000,000

3.  For punitive damages according to proof.

4.  For reasonable attorneys fees and costs to the extent permissible under applicable law.

5.  For such other and further relief as the Court may deem just and proper.

Dated: June 26July 25, 2024                    SAC Attorneys LLP

By:  Brian A. Barnhorst
     James Cai, Esq.
     Brian A. Barnhorst, Esq.
     Dennis Chin, Esq.
     Attorneys for Plaintiff and Counter-Defendant
     Jinju Zhang

[PROPOSED] VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT
25

*Zhang v. Yuan, et al.*, 3.23-cv-05818-CRB

## VERIFICATION

I, JINJU ZHANG, have reviewed the VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT and know its contents. I certify that the verified second amended complaint is true of my knowledge, except as to the matters which are therein stated to be on information or belief, and as to those matters, I believe them to be true.

I declare under the penalty of perjury under the laws of California that the foregoing is true and correct.

Executed on July 25, 2024, in Conroe, Texas

_____
JINJU ZHANG

Formatted: Indent: First line: 0.19"