James Cai (#200189)
Brian A. Barnhorst (#130292)
Julie Bonnel-Rogers (#176200)
Dennis Chin (#236466)
**SAC ATTORNEYS LLP**
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff, **JINJU ZHANG**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JINJU ZHANG, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>BENLIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEIJING ASIACOM INFORMATION TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1-20, inclusive<br><br>                    Defendants. | Case No.: 3:23-cv-05818-VC<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS BENLIN YUAN AND HONG LIN**<br><br>Date:          August 15, 2024<br>Time:         10:00 a.m.<br>Judge:       Hon. Vince Chhabria<br>Courtroom:  4 – 17th Floor |

Plaintiff, JINJU ZHANG ("Plaintiff"), submits the following opposition to the Motion for Summary Judgment ("MSJ") filed by Defendants Benlin Yuan ("Yuan") and Hong Lin ("Lin") (collectively "Defendants").  Pursuant to Civil Local Rule 7-3, Plaintiff also includes herewith Objections to the Declaration of Benlin Yuan at pages 16-21, *infra*.

## I.   INTRODUCTION AND SUMMARY OF ISSUES

Defendants' have hastily filed this MSJ, arguing that there are no genuine disputes as to any material facts, and that Defendants are therefore entitled to judgment as a matter of law as to the following claims asserted by Plaintiff in his First Amended Complaint ("FAC"):

| FAC ¶ | Claim |
|---|---|
| FAC ¶¶ 38-44 | First Cause of Action for Conversion |
| FAC ¶¶ 45-50 | Second Cause of Action for Breach of Fiduciary Duty |
| FAC ¶¶ 61-65 | Fifth Cause of Action for Preliminary Injunction |
| FAC ¶¶ 66-67 | Sixth Cause of Action for Declaratory Relief |

Plaintiff opposes Defendants' MSJ, contending that there *are* genuine disputes as to material facts, and, as such, Defendants are *not* entitled to judgment as a matter of law.

Plaintiff also opposes Defendants' MSJ for lack of evidence.  Inter alia, Yuan unilaterally testifies on behalf of himself and Lin in violation of  Federal Rules of Evidence ("Fed Rules Evid") 801.  (See Plaintiff's Objections to Yuan Declaration, *infra*.)

For the reasons discussed herein, Defendants' motion must be denied in its entirety.

## II.   RELEVANT FACTS

Camiwell Inc. (also known as Camiwell U.S. or Camiwell) is an information technology company based in Santa Clara, California.  [Zhang Dec. ¶ 3.]  At all times relevant, the directors of Camiwell were and are Zhang, Yuan, and Lin.  [Zhang Dec. ¶ 3.]  Camiwell shareholders are Yuan (40%), Zhang (35%), and Lin (25%).[1]  [Zhang Dec. ¶ 3.]

/ / / / /

---

[1] As discussed *infra*, share ownership is itself a disputed issue of material fact. Zhang contends he owns 35% of the shares. [Zhang Dec. ¶ 3.] Defendants contend that Plaintiff holds only a 30% interest. Defendants concede that Plaintiff's shareholder interest—whether 30% or 35%—is disputed. [See Dkt. 101, Yuan Dec. ¶ 25-26.]

On July 20, 2020, Plaintiff filed Santa Clara County Case No. 20CV368535 against Yuan and Lin (the "State Case"). The State Case asserted four claims: actions against Camiwell for an accounting and for enforcement of Plaintiff's inspection rights under the Corporations Code, and actions against Yuan and Lin for breach of fiduciary duty and for unfair business practices. [See Dkt. 102, Defendants' Request for Judicial Notice "RJN"); Zhang Dec. ¶ 6.]

In September of 2023, the State Case was concluded when Plaintiff accepted separate offers to compromise pursuant to California Code of Civil Procedure section 998 made by Camiwell ($353,000) and by Yuan and Lin ($50,000). [Defendants' RJN, Dkt. 102; Zhang Dec. ¶ 7.] Judgment was entered in favor of Plaintiff. [Zhang Dec. ¶ 7.]

After judgement was entered for Plaintiff's in the State Case, Defendants began a new and distinct pattern of wrongful conduct separate from the dispute that was the subject of the State Case. It is Defendants' conduct that occurred *after* the conclusion of the State Case that is the subject of Plaintiff's current complaint before this Court. Specifically, Plaintiff alleges that:

- Defendants filed a Certificate of Election to Wind Up and Dissolve Camiwell without shareholder notice to Plaintiff and without Plaintiff's consent. [Plaintiff's RJN, Ex. 1; Zhang Dec. ¶ 18, Ex. A.]

- Defendants made unauthorized withdrawals totaling approximately $672,000 from Camiwell's account at Bank of America (account number 3251 1222 0628), without Plaintiff's knowledge or consent, as follows:

  o $162,500 transfer to a Canadian company controlled by Yuan called Scinall Inc.;[2]

  o $200,000 in the form of a cashier's check payable to an unknown recipient;

  o $309,438 in the form of cashier's check payable to an unknown recipient.

[Zhang Dec. ¶¶ 11, 12, and 15.]

---

[2] According to the Canadian government, Yuan and Lin are the directors and owners of Scinall. See Ex. D to the Zhang Declaration.

1     Yuan admits to these withdrawals [Dkt. 101, ¶¶ 31, 32], claiming that he and Lin were

2     *entitled* to the money as *shareholder distributions* after Plaintiff received a $353,000 payment from

3     Camiwell to compromise the State Case.  [Dkt. 101,¶ 29(a) and (b); ¶ 34.][3]  This assumes, though,

4     that the $353,000 payment was a shareholder distribution, and *there is absolutely no evidence of*

5     *this*.  Rather than a distribution, the $353,000 payment was in settlement of Plaintiff's claims against

6     Yuan and Lin for breach of fiduciary duty and unfair business practices, which Defendants wrong-

7     fully caused Camiwell to make on their behalf in further breach of their fiduciary duties to Plaintiff.

8     Based on Defendants' post-settlement conduct, Plaintiff has asserted in the instant action

9     claims for, inter alia, conversion, breach of fiduciary duty, injunction, and declaratory relief.

10    Triable issues of material fact preclude summary judgment as to each of those claims.

11    ## III.   STANDARD OF REVIEW

12    Summary judgment is only appropriate "if the movant shows that there is no genuine

13    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

14    R. Civ. P. 56(a); see also *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  A genuine issue

15    of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material"

16    only if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty*

17    *Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

18    "A moving party without the ultimate burden of persuasion at trial—usually, but not

19    always, a defendant—has both the initial burden of production and the ultimate burden of

20    persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

21    210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving

---

[3] Yuan's declaration stated in part:
   29. Thus, as far as Hong and I were concerned:
       (a) the $353,000 payment from Camiwell U.S. was Plaintiff's full shareholder distribution
       from the assets available at the time; and
       (b) Hong and I were entitled to all the remaining funds as our shareholder distributions
       (except for the amounts to pay the remaining corporate creditor).
   * * * *
   34. Plaintiff is not the only shareholder entitled to distributions. As directors with a two to one voting
   majority, Hong and I have the power to authorize corporate distributions to ourselves, and we did not
   need Plaintiff's consent to authorize the distribution.

1  party must either produce evidence negating an essential element of the nonmoving party's

2  claim or defense or show that the nonmoving party does not have enough evidence of an

3  essential element to carry its ultimate burden of persuasion at trial." *Id.* (citing *High Tech Gays*

4  *v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990). "In order to carry its

5  ultimate burden of persuasion on the motion, the moving party must persuade the court that

6  there is no genuine issue of material fact." *Id.* (internal citation omitted).

7        "If a moving party fails to carry its initial burden of production, the nonmoving party has

8  no obligation to produce anything." *Id.* at 1103 (internal citation omitted).  If, however, a

9  moving party carries its burden of production, the nonmoving party must produce evidence to

10  support its claim or defense.  See *id.*  Only if the nonmoving party fails to produce enough

11  evidence to create a genuine issue of material fact, will the moving party's motion for summary

12  judgment be granted.  See *id.*  But if the nonmoving party produces evidence to create a genuine

13  issue of material fact, the nonmoving party defeats the motion. See *id.*

14  **IV.   ARGUMENT**

15        **A.  Defendants' Res Judicata Argument Fails.**

16        Defendants argue that res judicata precludes Plaintiff from asserting any shareholder

17  distribution claims in the instant case.  [Dkt. 100, p. 8.]  Defendants cite to no law in support of

18  this argument, instead citing only to the Yuan Declaration at ¶¶ 34-35.  Defendants' argument is

19  without merit for the following reasons.

20        First, the doctrine of res judicata "prevents relitigation of the same cause of action in a

21  second suit between the same parties or parties in privity with them." *Mycogen Corporation v.*

22  *Monsanto Company*, 28 Cal.4th 888, 896 (2002).  Res judicata bars a subsequent claim when

23  "'(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is

24  on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding

25  or parties in privity with them were parties to the prior proceeding.' Upon satisfaction of these

26  conditions, claim preclusion bars 'not only . . . issues that were actually litigated but also issues

27  that could have been litigated.'" *Planning & Conservation League v. Castaic Lake Water*

28  *Agency*, 180 Cal. App. 4th 210, 226 (2009).

Here, res judicata is not applicable because the claims being made by Plaintiff arise from conduct that occurred *after* resolution of the State Case between the Plaintiff and Defendants. Thus, the claims that are the subject of the current complaint could not have been litigated in the State Case because they had not yet occurred when the State Case was being litigated.

In Plaintiff's FAC, it is clear that Plaintiff is not seeking damages for the same claims that were previously litigated and resolved in the State Case.  FAC ¶¶ 32-34 clearly seeks redress for Defendants' wrongful conduct that occurred *after* the resolution of the State Case:

> 32. Following the 998 offers and acceptances in the State Case, Yuan and Lin resumed their looting and assault on Camiwell U.S.
>
> 33. On September 28, 2023 (less than a week after the 998 offers were accepted), Yuan and Lin filed a Certificate of Election to Wind Up and Dissolve Camiwell U.S. without Zhang's knowledge or consent.
>
> 34. Next, they made three separate and unauthorized withdrawals totaling almost $672,000 from Camiwell U.S.'s account at Bank of America (account number 3251 1222 0628), all without Zhang's knowledge or consent, as follows:
>
>     a. $162,500 transfer to a Canadian company controlled by Yuan called Scinal [sic: Scinall] Inc., Canada
>
>     b. $200,000 in the form of a cashier's check payable to an unknown recipient
>
>     c. $309,438 in the form of cashier's check payable to an unknown recipient

[Dkt. 71.] Winning a judgment against Defendants in the State Case does not deprive Plaintiff of the right to sue the same Defendants again for the Defendants' further subsequent conduct of a similar nature.  *Lawlor v. National Screen Service Corp.,* 349 U.S. 322 (1955).

Second, in support of their res judicata argument, Defendants cite to Yuan's Declaration at ¶¶ 34-35.  Plaintiff objects to Yuan's averments as unsubstantiated and disputed facts pursuant to Fed Rules Evid. 703, 901, 1004.  [See Objections, *infra*.]  The Court cannot reasonably accept

Yuan's testimony at ¶¶ 34-35 as credible and reasonable pursuant to Fed Rules Evid. 703, 901, 1004.  Further, Plaintiff Zhang disputes many of the factual assertions in Yuan's declaration. [See Zhang Dec. ¶ 2 et seq.]  Because the Court cannot assess credibility in competing declarations, a triable issue of material fact is in dispute, precluding summary judgment.

**B.   Defendants' Motion Must Be Denied as to Plaintiff's First Cause of Action, for Conversion, Because There Are Genuine Disputes as to Material Facts.**

Defendants argue they did not commit any wrongful act of conversion when they authorized and made distributions to themselves.  [Dkt. 100, p. 8.]  Defendants cite to *Lee v. Hanley,* 61 Cal. 4th 1225, 1240 (2015), in reciting the elements of conversion, which Plaintiff does not dispute.  However, Defendants do not cite to any *evidence* in support of their argument, which is without merit.

Here, Defendants converted by transferring funds from Camiwell's bank account to themselves.  Yuan admits in his declaration that he transferred $671,983.73 from the Camiwell Bank of America accounts to himself and his wife on September 26 and 28, 2023.  [See Dkt. 101,  Yuan Dec. ¶¶ 31, 32.]

This act of transferring funds was wrongful pursuant to Camiwell Bylaws, Article II, § 4 and California Corporations Code ("Corp. Code") § 310.  Camiwell Bylaws, Art. II, § 4, states that transactions taken by a director of Camiwell to financially benefit himself requires a special meeting and full disclosure to the shareholders pursuant to California Corporations Code ("Corp. Code") § 310.  Consistent with the statute, section 4 of the Camiwell Bylaws [Zhang Dec., Ex. C] states in relevant part:

> The notice will also state the general nature of any proposed action to be taken at the meeting to approve any of the following matters:
>
> > (i) A transaction in which a director has a financial interest, within the meaning of California Corporations Code §310 . . . .

Corporations Code section 310(a)(1) states that financial transactions made by a director of a corporation for his or her own material financial interest are void or voidable unless fully disclosed to the shareholders:

     (a) No contract **or other transaction between a corporation and one or more of its directors,** or between a corporation and any corporation, firm or association **in which one or more of its directors has a material financial interest, is either void or voidable because such director or directors** or such other corporation, firm or association **are parties** or because such director or directors are present at the meeting of the board or a committee thereof which **authorizes, approves or ratifies the contract or transaction**, **if**:

     (1) **The material facts as to the transaction and as to such director's interest are fully disclosed or known to the shareholders and such contract or transaction is approved by the shareholders (Section 153) in good faith, with the shares owned by the interested director or directors not being entitled to vote thereon**…

Cal. Corp. Code § 310; see also *Cahle v. Stephens* (1931) 214 Cal. 89 (1931) (director was bound to act with utmost good faith in dealing with corporation).

     Defendants wrongfully violated the Camiwell Bylaws and section 310 when they transferred funds from the Camiwell Bank of America accounts to themselves in September of 2023 without calling a shareholder meeting and disclosing the terms of the financial transaction to Plaintiff before acting.

     Plaintiff was damaged because the funds taken belonged to Camiwell, and, as a shareholder in Camiwell, Plaintiff had a financial interests in its assets.  Further, the conduct of the Defendants caused Plaintiff to be rightfully suspicious and anxious about other acts of the financial mismanagement against Camiwell being committed by Defendants about which Plaintiff may not have been notified as per the Bylaws.  [Zhang Dec. at ¶ 15.]

     Defendants argue that they were entitled to unilaterally make distributions to themselves after paying the judgments in the State Case because, they claim, (a) the payment of $353,000 to Plaintiff constituted a distribution of his share of available cash; and (b) they collectively held 70% of the shares of Camiwell.  Neither claim has merit, and both are underpinned by disputed issues of material fact.

     There is no competent evidence that the payment of $353,000 to Plaintiff constituted a distribution of his share of available cash.  Both the 998 offers and the resulting judgments are devoid of any suggestion that the payment constituted a distribution of Plaintiff's share of available cash.  On the contrary, Plaintiff understood that the payment was in settlement of his claims of unfair business practices and breach of fiduciary duty.  [See Zhang Declaration at ¶¶ 7

and 14.]  There therefore exists a disputed issue of material fact as to whether the payment of $353,000 to Plaintiff constituted a distribution or simply the compromise of a disputed claim.

In September of 2023, the State Case was concluded when Plaintiff accepted two offers to compromise pursuant to Code of Civil Procedure section 998, and judgment was entered in Plaintiff's favor.  [Plaintiffs RJN, Dkt. 102; Zhang Dec. ¶¶ 7 and 14.]  The operative language of each 998 offer is essentially identical:

> Pursuant to Section 998 of the Code of Civil Procedure ("CCP"), Defendants Benlin Yuan and Hong Lin ("Defendants") in the above-captioned action hereby offer to have judgement entered in favor of Plaintiff Jinju Zhang ("Zhang") and against Defendants in the amount of $50,000, including reasonable attorney's fees and costs up to and including the date of this offer. [¶] This offer does not constitute an admission of liability by or on behalf of Defendants.
>
> * * * *
>
> Pursuant to Section 998 of the Code of Civil Procedure, Defendant CAMIWELL INC. in the above-captioned action hereby offers to have judgment entered in favor of Plaintiff Jinju Zhang ("Zhang") and against Defendant CAMIWELL INC. in the amount of Three Hundred and Fifty-Three Thousand Dollars and Zero Cents ($353,000.00) inclusive of Plaintiff and including the date of this offer. [¶] This Offer does not constitute an admission of liability by or on behalf of Defendant CAMIWELL INC.

Similarly, the operative language of each judgment entered in favor of Plaintiff is essentially identical:

> Judgment is hereby entered, against Defendants Benlin Yuan and Hong Lin (together, "Defendants") and in favor of Plaintiff Jinju Zhang, in the above-entitled action, pursuant to Section 998 of the California Code of Civil Procedure, in the sum of Fifty Thousand Dollars ($50,000) including reasonable attorney's fees and costs up to and including the date of the offer. The judgment against

Defendants does not constitute an admission of liability by or on behalf of Defendants.

* * * *

Judgment is hereby entered, against Defendant Camiwell Inc. ("Defendant") and in favor of Plaintiff Jinju Zhang, in the above-entitled action, pursuant to Section 998 of the California Code of Civil Procedure, in the sum of Three Hundred and Fifty-Three Thousand Dollars and Zero Cents ($353,000.00) inclusive of Plaintiff's fees and costs up to and including the date of the offer. The judgment against Defendant does not constitute an admission of liability by or on behalf of Defendant.

Nothing in either the offers or the judgments suggests in any way that the payment of $353,000 to Plaintiff was a shareholder distribution.

As argued below, there is also a disputed issue of material fact as to whether Zhang held (and holds) 30% or 35% of the shares of Camiwell. Because there are disputed issues of material fact regarding Defendants' conversion of the funds from Camiwell's Bank of America accounts for their personal benefit, Defendants' motion must be denied.

**C.** **Defendants' Motion Must Be Denied as to Plaintiff's Second Cause of Action, for Breach of Fiduciary Duty, Because There Are Genuine Disputes as to Material Facts.**

As directors of Camiwell, Defendants concede that they owe a fiduciary duty to Plaintiff. [Dkt. 100, p. 8.] Defendants argue that they did not breach their fiduciary duty to Plaintiff when they made cash distributions to themselves because as "directors holding a two to one voting advantage" Defendants had the power to authorize the withdraws to themselves. [Dkt. 100, p. 9.] Defendants further argue that Plaintiff sustained no damage or injury by Defendants' conduct. [Dkt. 100, p. 9.] Defendants cite no law or evidence in support of their argument, which is without merit.

It should require no citation to authority that a majority of shareholders may authorize distributions to themselves at the expense of the minority. Such distributions would constitute a

breach of Defendants' fiduciary duties. "It is a violation of this duty for officers, or directors or majority stockholders to give away or appropriate to themselves any corporate assets." *Mueller v. MacBan*, 62 Cal. App. 3d 258, 274 (1976).

There are at least two instances of breach of fiduciary duty by Defendants: (1) Defendants' undisclosed transfer of $671,983.73 to themselves on September 26 and 28, 2023; and (2) the purported dissolution of Camiwell on September 27-28, 2023.

### 1. Breach of Fiduciary Duty #1

As set forth in B., *supra*, there is (at a minimum) at least one disputed issue of material fact exists as to whether Defendants wrongfully appropriated corporate assets—*i.e.*, the $671,983.73 in Camiwell's bank accounts. Defendants contend that the Camiwell 998 offer, acceptance, and resulting judgment in the amount of $353,000 was a shareholder distribution, whereas Plaintiff contends that it was the settlement of a disputed claim. Nothing in the 998 offer or the judgment supports Defendants' position, and Zhang flatly disputes Yuan's averment in this regard.

Defendants presumably deny that they were obligated to give notice and conduct a meeting before deciding to transfer to themselves the bulk of the remaining cash of Camiwell, or contend that they did give such notice and/or held such a meeting. Zhang contends that they were obligated to give notice, but they failed to do so; and that they were obligated to conduct a meeting, but they failed to do so.

### 2. Breach of Fiduciary Duty #2

Yuan admits in his declaration that he and Lin asked the Camiwell attorney to dissolve Camiwell after settlement of the State Case. [Dkt. 101, ¶ 30] Indeed, Yuan and Lin each signed a Certificate of Election to Wind Up and Dissolve on September 27, 2023, and the document was filed with the California Secretary of State on September 29, 2023. [RJN, Ex. 1; Zhang Dec. at ¶ 18, Ex. F.]

Plaintiff alleges that Defendants' breached their fiduciary duty when they purported to dissolve Camiwell without calling a special meeting of shareholders as required by Camiwell Bylaws, Art. II, Section 4, and without conducting a vote and obtaining a 70% affirmative vote

for dissolution as required by Camiwell Bylaws, Art. III , §14.  Camiwell Bylaws, Art. II,

Section 4 requires a special shareholder meeting:

> The notice will also state the general nature of any proposed action to be taken at the meeting to approve any of the following matters:
>
> . . . .
>
> (iv) A voluntary dissolution under Corporations Code §1900 . . . .

Moreover, the Camiwell Bylaws, Art. III, §14, requires a affirmative vote by 70% of the

shareholders to dissolve the corporation:

> The following decisions would need the written consent or affirmative vote of the holders of at least seventy percent (70%) of the common stock of the Corporation, and any such act or transaction entered into without such consent or vote shall be null and void ab initio, and of no force or effect:
>
> (a)  liquidate, dissolve or wind-up the business and affairs of the Corporation, effect any merger or consolidation or any other deemed liquidation event, or consent to any of the foregoing . . . .

[Zhang Dec., Ex. C.]

Thus, when Defendants prepared and signed the dissolution forms and filed those forms

with the California Secretary of State on behalf of Camiwell, they were violating the Camiwell

Bylaws by not calling a shareholder meeting and not obtaining the requisite 70% shareholder

approval.

Defendants contend that, together, they held 70% of the Camiwell shares.  That, though,

is also a disputed issue of material fact.  Plaintiff contends that he holds a 35% interest in

Camiwell, and the documentary evidence confirms this.  In a document entitled "Unanimous

Written Consent of the Board of Camiwell Inc." and dated June 16, 2018, Plaintiff, Yuan, and

Lin acknowledged the initial share distribution was 40% to Yuan, 30% to Lin, and 30% to

Zhang; however, the document goes on to say the following:

/ / / / /

/ / / / /

RESOLVED FURTHER, that the Corporate[sic] approve the voluntary and free transfer of 25,000 shares of common shares from Hong Lin to Jinju Zhang, and after the transfer the shareholding structure will be as follows:

| Name | Class of Shares | Total Number of Shares | Shareholding Percentage |
|------|-----------------|------------------------|-------------------------|
| Benlin Yuan | Common | 200,000 | 40% |
| Jinju Zhang | Common | 175,000 | 35% |
| Hong Lin | Common | 125,000 | 25% |

See Ex. A to the accompanying Declaration of Jinju Zhang.

In a document entitled "Share Transfer Agreement" and with an effective date of July 9, 2018, Zhang, Yuan, and Lin acknowledged this transfer. See Ex. B to the Zhang Declaration, and ¶ 4. Either a disputed issue of material fact exists as to Zhang's share ownership, or, as Plaintiff contends, he in fact holds 35% of the shares of Camiwell. Under either scenario, Defendants' motion must fail.

**D. Defendants' Motion Must Be Denied as to Plaintiff's Fifth Cause of Action, for Preliminary Injunction, Because There are Genuine Disputes as to Material Facts.**

Defendants argue that Plaintiff has no stake or interest in any of Camiwell's remaining funds, and as officers of Camiwell, Defendants have an obligation to use the remaining funds to pay the company bookkeeper. [Dkt. 100, p. 9.] Defendants further argue there is no reason why the company should not be dissolved. [Dkt. 100, p. 9.] Defendants cite to California Corporations Code section 6610(a) for the principle that corporation may elect to voluntarily wind up and dissolve. [Dkt. 100, p. 10.] Defendants do not cite to any evidence, and their argument is without merit.

To obtain an injunction one must show "that the defendant's wrongful acts threaten to cause irreparable injuries, ones that cannot be adequately compensated in damages." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1352 (2003). Here, Plaintiff can adequately demonstrate a

strong likelihood that Yuan and Lin will continue to take actions that will cause harm to Camiwell if the Court does not issue a preliminary injunction to preserve the status quo.

Yuan admits to making significant cash withdrawals from Camiwell's Bank of America accounts for himself and Lin, claiming that Camiwell should be dissolved and that he and Lin are entitled to Camiwell funds without notice to Plaintiff and without shareholder approval.

      29. Thus, as far as Hong and I were concerned:

           (a) the $353,000 payment from Camiwell U.S. was Plaintiff's full shareholder distribution from the assets available at the time; and

           (b) Hong and I were entitled to all the remaining funds as our shareholder distributions (except for the amounts to pay the remaining corporate creditor).

      * * * *

      31. On September 26, 2023, I withdrew $162,500.00 from the company's Bank of America savings account. This was about 18% of the remaining balance contained in the Company's three bank accounts (or $883,821.891 ).

      32. However, on September 27, 2023, I received a notification from the Bank of America that Plaintiff changed the password and the contact email associated with these accounts. After receiving another bank notification that I was locked out of the bank accounts of Camiwell Inc. and worrying about the safety of my wife's and my share of the shareholder distributions, on September 28, 2023, I transferred another $509,438.73 from the Bank of America savings account to my personal bank account.

[See Dkt. 101,Yuan Declaration at ¶¶ 29, 31-32.][4]

---

[4] As argued *supra*, payments made to Plaintiff in resolving the State Case do not entitle Defendants to any distributions. Those payments were made to satisfy a judgment; they were not a shareholder distribution. [See Dkt. 102.] Moreover, any efforts by Defendants to pay themselves without full disclosure and shareholder approval, and any attempt by Defendants to dissolve Camiwell without calling a shareholder meeting and obtaining 70% approval, is void or voidable as per the Camiwell Bylaws, Art II, § 4, Arti II,, § 14.1, and Corp. Code §301.

It is clear from Yuan's own averments that there is a high likelihood that irreparable harm will occur if Defendants are not enjoined from acting under their false beliefs and assumptions that Camiwell is dissolved and that they are entitled to all remaining Camiwell funds.  While the parties are litigating their rights, the Court should preserve the status quo and prevent Defendants from taking any further actions pertaining to Camiwell to prevent irreparable harm.  For these reasons, there is a genuine dispute of material facts regarding Plaintiff's claim for injunctive relief, and Defendants' motion should therefore be denied.

**E.** **Defendants' Motion Must be Denied as to Plaintiff's Sixth Cause of Action, for Declaratory Relief, Because There Are Genuine Disputes as to Material Facts.**

Defendants argue that Plaintiff is not entitled to any of Camiwell's remaining funds because he already received his full distribution.  [Dkt. 100, p. 10.]  Defendants further argue that the remaining funds should be used to pay the company bookkeeper, with any leftover funds distributed to the Defendants as the remaining shareholders. [Dkt. 100, p. 10.] Defendants cite to no legal authorities or evidence in support of their argument, which is without merit.

| Defendants' Contention | Plaintiff's Contention |
| --- | --- |
| Plaintiff owns 30% of the shares in Camiwell. Yuan owns 40% of the shares in Camiwell. Lin owns 30% of the shares in Camiwell.<br><br>[Dkt. 101, Yuan Dec. ¶¶ 5, 11.] | Plaintiff owns 35% of the shares in Camiwell. Yuan owns 40% of the shares in Camiwell. Lin owns 25% of the shares in Camiwell.<br><br>[Zhang Dec. ¶¶ 3-5, Ex. A; see also Dkt. 101, Yuan Dec. ¶¶ 11, 16, 25, 26 acknowledging the dispute in percentage of shares owned by Plaintiff Zhang.] |
| Defendants were not required to hold any shareholder meeting before transferring distributions to themselves on September 26, 2023, after settling the State Case with Plaintiff.<br><br>[Dkt. 101, Yuan Dec. ¶ 29, 31.] | Pursuant to the Camiwell Bylaws, Art II, § 4 and Corp Code § 310, Defendants were required to hold a shareholder meeting before transferring $162,500 in Camiwell distributions to themselves only on September 26, 2023, after settling the State Case with Plaintiff.<br><br>[Zhang Dec. ¶¶ 14-17, Ex. C.] |

| Defendants were not required to hold any shareholder meeting before dissolving Camiwell.<br><br>[Dkt. 101, Yuan Dec. ¶ 29, 31.] | Pursuant to the Camiwell Bylaws, Art II, § 4 and Art. III, § 14, Defendants were required to hold a shareholder meeting and obtain 70% shareholder approval by vote before dissolving Camiwell.<br><br>[RJN, Ex. 1 ; Zhang Dec. ¶¶ 14-17, Ex. C.] |

For these reasons, there is a genuine dispute of material facts regarding Plaintiff's entitlement to declaratory relief, and Defendants' motion must therefore be denied.

## V.    OBJECTIONS TO EVIDENCE

In support of their motion, Defendants submitted a single declaration with a single exhibit.  As set forth below, Plaintiff objects to the Declaration of Benlin Yuan.

Generally, Yuan's declaration is objectionable for three reasons.  First, Yuan impermissibly testifies on behalf of his wife, Lin, throughout the entirety of the declaration.  All such testimony must be stricken as hearsay pursuant to Fed. Rules Evid 602 and 801.  This dramatically compromises the value Defendants' arguments, especially as to Lin.

Second, Yuan's declaration is grossly compromised by the inordinate amount of hearsay testimony it includes pertaining to third parties and lack of foundation and personal knowledge as to Plaintiff.  All such testimony must also be stricken pursuant to Fed. Rules Evid 602 and 801.  This further compromises the value Defendants' arguments.

Third, Yuan's declaration makes sweeping statements for which there is no adequate foundation, verification, or substantiation.  All such testimony must be stricken pursuant to Fed. Rules Evid 602 and 901, or, in the alternative, the Court should give such testimony reduced consideration pursuant to Fed. Rules Evid 611.

Specifically, Plaintiff objects to Yuan's declaration as follows:

| YUAN DEC. ¶ | CONTENT | OBJECTION |
|---|---|---|
| ¶ 3 | "Beijing Asiacom Info. Technology Co. Ltd. ("Beijing Asiacom") is a People's Republic of China information technology ("IT") company that offers services to its Chinese customers worldwide." | Lacks Personal Knowledge<br>Fed. Rules Evid 602<br><br>Lacks Foundation<br>Fed. Rules Evid 901 |
| ¶ 3 | "In 2013, an officer of Beijing Asiacom, who was Hong's high school friend, contacted her | Hearsay<br>Fed. Rules Evid 801 |

| | | |
|---|---|---|
| | and asked if she and I would be interested in forming a Canadian company to perform IT services for Beijing Asiacom's clients in Canada." | Lacks Personal Knowledge Fed. Rules Evid 602 |
| ¶ 3 | "We agreed and formed Camiwell Inc. Canada ("Camiwell Canada"). | Hearsay Fed. Rules Evid 801 |
| ¶ 4 | "In 2014, Beijing Asiacom wanted to expand its services to clients in the U.S. They asked us to from a separate U.S. company for this purpose." | Lacks Personal Knowledge Fed. Rules Evid 602<br><br>Lacks Foundation Fed. Rules Evid 901 |
| ¶ 4 | "[W]e needed someone who lived in the U.S. to venture with us. We thought of Plaintiff Zhang ("Plaintiff"), a U.S. resident whom we had previously met at a church" | Hearsay Fed. Rules Evid 801 |
| ¶ 5 | "We asked Plaintiff if he would be interested in partnering with us to set up a U.S. company for servicing Beijing Asiacom's U.S. clients." | Hearsay Fed. Rules Evid 801 |
| ¶ 7 | "In May 2018, Beijing Asiacom informed us that they wanted to acquire both Camiwell Canada and Camiwell U.S., in anticipation of Beijing Asiacom's planned IPO in China in 2019." | Hearsay Fed. Rules Evid 801 |
| ¶ 8 | "Plaintiff negotiated with Beijing Asiacom directly during the acquisition discussions." | Hearsay Fed. Rules Evid 801<br><br>Lacks Personal Knowledge Fed. Rules Evid 602<br><br>Lacks Foundation Fed. Rules Evid 901 |
| ¶ 9 | "Hong had agreed to give Plaintiff 5% of her shares of the company if Plaintiff cooperated during the acquisition process and the acquisition of the company was successful." | Hearsay Fed. Rules Evid 801 |
| ¶ 10 | "In November of 2018, with its IPO in China looming, Beijing Asiacom informed Plaintiff that they were abandoning its efforts to acquire Camiwell U.S." | Hearsay Fed. Rules Evid 801<br><br>Lacks Personal Knowledge Fed. Rules Evid 602<br><br>Lacks Foundation Fed. Rules Evid 901 |
| ¶ 11 | "[W]e contended that Hong and I owned 70%, and that Plaintiff owned 30%." | Hearsay Fed. Rules Evid 801 |

| ¶ 11 | "Plaintiff contended, however, that he owned 35% even though the acquisition fell through." | Lacks Personal Knowledge Fed. Rules Evid 602<br><br>Lacks Foundation Fed. Rules Evid 901 |
|---|---|---|
| ¶ 18 | "In the State Court Case, Plaintiff complained that he was entitled to an accounting and his share of corporate assets, but that his distribution could not be determined until Hong and I reimbursed the corporation for diversion and misappropriation of Camiwell's corporate assets and business opportunities to Camiwell Canada, Beijing Asiacom and Asiacom U.S." | Hearsay Fed. Rules Evid 801<br><br>Best Evidence Fed. Rules Evid 1004 |
| ¶ 18 | "Plaintiff also alleged that I falsified financial reports in 2017, 2018 and 2019, and also included his claim that he was entitled to a 35%, and not a 30%, distribution." | Hearsay Fed. Rules Evid 801<br><br>Best Evidence Fed. Rules Evid 1004 |
| ¶ 19 | "Hong and I denied Plaintiff's claims contending generally that we had no control over who Beijing Asiacom decided to use as its service vendors and that we gained nothing as a result of its decision to use its own subsidiary Asiacom U.S. instead of Camiwell U.S." | Hearsay Fed. Rules Evid 801<br><br>Best Evidence Fed. Rules Evid 1004 |
| ¶ 19 | "In fact, it was our opinion that Plaintiff's failure to close the acquisition deal with Beijing Asiacom damaged us because we lost the premium that we could have obtained from Beijing Asiacom for selling it a going concern with employees and operating assets." | Hearsay Fed. Rules Evid 801<br><br>Relevance 401 Fed. Rules Evid |
| ¶ 19 | "Hong and I knew that we had very little bargaining power when Beijing Asiacom wanted to acquire it." | Lacks Personal Knowledge Fed. Rules Evid 602<br><br>Speculation Fed. Rules Evid 701<br><br>Lacks Foundation Fed. Rules Evid 901 |
| ¶ 20 | "We still puzzle why Plaintiff failed to appreciate that he was negotiating with very little bargaining leverage." | Relevance 401 Fed. Rules Evid<br><br>Hearsay Fed. Rules Evid 801 |

| ¶ 21 | "We had already incurred hundreds of thousands of dollars in attorneys' fees, and the State Court Case was scheduled for a five-day jury trial on September 11, 2023, which was going to result in ten's [sic.] of thousand of dollars in more fees." | Speculation<br>Fed. Rules Evid 701 |
|---|---|---|
| ¶ 22 | "In an attempt to settle the case, Hong and I authorized two settlement offers: one for Hong and myself on the personal claims against us, and one on behalf of Camiwell U.S. on Plaintiff's accounting claim against the company." | Hearsay<br>Fed. Rules Evid 801<br><br>Settlement Communications<br>Fed. Rules Evid 408 |
| ¶ 23 | "For Hong and myself, we believed that we had absolutely no culpability with regard to diverting Camiwell U.S. assets and business opportunities, but we decided to offer $50,000 to resolve these claims with no admissions of liability. We estimated that we would have incurred more than this amount in preparing for and participating in a five day jury trial." | Hearsay<br>Fed. Rules Evid 801<br><br>Settlement Communications<br>Fed. Rules Evid 408<br><br>Speculation<br>Fed. Rules Evid 701 |
| ¶ 24 | "As to Camiwell U.S., Plaintiff did not allege any wrongdoing against Camiwell U.S. He was only seeking a shareholder accounting and payment over of the amount of his account." | Hearsay<br>Fed. Rules Evid 801<br><br>Best Evidence<br>Fed. Rules Evid 1004 |
| ¶ 25 | "During his deposition, Plaintiff testified that he understood that any salary paid to his wife was "considered as part of the distribution for [him] as a shareholder." See, Zhang Deposition Transcript Volume 1, 85:15-86:10 attached here as Exhibit A. | Hearsay<br>Fed. Rules Evid 801<br><br>Best Evidence<br>Fed. Rules Evid 1004 |
| ¶ 26 | "Based upon the remaining Company cash then on hand (which was $1,236,821.89), shareholder accounting information that we obtained in discovery, and consideration of the issue whether Plaintiff was a 30% or 35% shareholder, and the fact that we valued the Company claims against us at only $50,000.00, we offered to have the Company pay Plaintiff $353,000 in full satisfaction of his shareholder accounting claim." | Lacks Foundation<br>Fed. Rules Evid 901<br><br>Best Evidence<br>Fed. Rules Evid 1004<br><br>Settlement Communications<br>Fed. Rules Evid 408 |
| ¶ 27 | "Our analysis at the time was that if the case had gone to trial and that a full  accounting for shareholder distributions had been litigated, | Hearsay<br>Fed. Rules Evid 801 |

| | | | |
|---|---|---|---|
| | Plaintiff would have received less than the $353,000 we offered, and Hong and I would have received more than what was left over had Plaintiff took his $353,000. As such, we thought the offer should have been attractive to Plaintiff." | Relevance 401<br>Fed. Rules Evid<br><br>Settlement Communications<br>Fed. Rules Evid 408<br><br>Speculation<br>Fed. Rules Evid 701 | |
| ¶ 28 | "On September 6, 2023, Plaintiff accepted both offers. On or around September 8, 2023, I transferred two settlement payments to Plaintiff separately via wire transfer, one from the remaining balance of the company's bank accounts (for $353,000) and the other one from my personal account (for $50,000)." | Hearsay<br>Fed. Rules Evid 801<br><br>Settlement Communications<br>Fed. Rules Evid 408<br><br>Best Evidence<br>Fed. Rules Evid 1004 | |
| ¶ 29 | "Thus, as far as Hong and I were concerned:…" | Hearsay<br>Fed. Rules Evid 801<br><br>Relevance 401<br>Fed. Rules Evid | |
| ¶ 30 | "With the settlement completed, Hong and I asked the company's attorney to continue with the dissolution that I had initiated in 2019." | Hearsay<br>Fed. Rules Evid 801 | |
| ¶ 31 | "On September 26, 2023, I withdrew $162,500.00 from the company's Bank of America savings account. This was about 18% of the remaining balance contained in the Company's three bank accounts (or $883,821.891)." | Best Evidence<br>Fed. Rules Evid 1004 | |
| ¶32 | "However, on September 27, 2023, I received a notification from the Bank of America that Plaintiff changed the password and the contact email associated with these accounts. After receiving another bank notification that I was locked out of the bank accounts of Camiwell Inc. and worrying about the safety of my wife's and my share of the shareholder distributions, on September 28, 2023, I transferred another $509,438.73 from the Bank of America savings account to my personal bank account." | Hearsay<br>Fed. Rules Evid 801<br><br>Best Evidence<br>Fed. Rules Evid 1004 | |
| ¶ 33 | "Our transfers did not deplete the company's accounts. The remaining  balance of $211,902.61 was more than sufficient to pay | Lacks Foundation<br>Fed. Rules Evid 901 | |

| | | |
|---|---|---|
| | the remaining creditors (bookkeeper, tax preparation, and legal), who were owed no more than $60,000.00.   We do not understand why Plaintiff would object to our receiving shareholder distributions since he received his own distributions (approximately $503,000, the $353,000 plus the $150,000 he previously received that he acknowledged were shareholder distributions during discovery)." | Best Evidence Fed. Rules Evid 1004<br><br>Relevance 401 Fed. Rules Evid |
| ¶ 34 | "As directors with a two to one voting majority, Hong and I have the power to authorize corporate distributions to ourselves, and we did not need Plaintiff's consent to authorize the distribution." | Legal Conclusion Fed. Rules Evid 703<br><br>Lacks Foundation Fed. Rules Evid 901<br><br>Best Evidence Fed. Rules Evid 1004 |
| ¶ 35 | "The distributions to ourselves did not damage Plaintiff because the distributions came from the same pool of funds from which he had already received his distribution. Camiwell U.S. has been out of business since 2019 and did not and has not acquired or generated any additional assets or funds following the $353,000 distribution payment to Plaintiff." | Legal Conclusion Fed. Rules Evid 703<br><br>Lacks Foundation Fed. Rules Evid 901<br><br>Best Evidence Fed. Rules Evid 1004 |
| ¶ 35 | "The $211,902.61 remaining after our distributions is also more than enough left in its accounts to pay the remaining company creditors and to complete its dissolution." | Legal Conclusion Fed. Rules Evid 703<br><br>Lacks Foundation Fed. Rules Evid 901<br><br>Best Evidence Fed. Rules Evid 1004 |

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

**VI.**     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Motion for Summary Judgment filed by Defendants Benlin Yuan and Hong Lin be denied in its entirety so that this matter may proceed to trial on the merits.

Dated:  July 29, 2024                    SAC Attorneys LLP


                                         By: /s/ Brian A. Barnhorst_____
                                             James Cai, Esq.
                                             Brian A. Barnhorst, Esq.
                                             Julie Bonnel-Rogers, Esq.
                                             Dennis Chin, Esq.
                                             Attorneys for Plaintiff, JINJU ZHANG