James Cai (#200189)
Brian A. Barnhorst (#130292)
Dennis Chin (#236466)
**SAC ATTORNEYS LLP**
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff, **JINJU ZHANG**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JINJU ZHANG, an individual,<br><br>                                      Plaintiff,<br><br>v.<br><br>BENLIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEIJING ASIACOM INFORMATION TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1-20, inclusive<br><br>                                      Defendants. | Case No.: 3:23-cv-05818-VC<br><br>**PLAINTIFF JINJU ZHANG'S DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          August 15, 2024<br>Time:          10:00 am<br>Judge:        Hon. Vince Chhabria<br>Courtroom:  4 – 17th Floor |

I, Jinju Zhang, declare as follows:

1.      I am the Plaintiff in this case.  I make this declaration in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

**DISAGREMENT WITH STATEMENTS IN DEFENDANT YUAN'S DECLARATION**

2.      I have read Defendant Benlin Yuan's declaration submitted in support of Defendants' Motion for Summary Judgment.  I disagree with almost all of the statements made by Defendant Yuan and incorporate by reference the Objections to the Yuan Declaration from Plaintiff's

Doc ID: beecf8b169cf8da4c92c16c905e90477c69c999b

1    Opposition brief herein.

2    **PLAINTIFF ZHANG'S 35% SHAREHOLDER INTEREST IN CAMIWELL**

3    3.    Camiwell is an information technology company based in Santa Clara, California.  At all

4    times relevant, Defendant Benlin Yuan ("Yuan"), Defendant Hong Lin ("Lin"), and I were the

5    directors of Camiwell.   We were also the only three shareholders of Camiwell with the following

6    shareholder interests: Yuan (40%); Lin (25%); Zhang (35%).

7    4.    Any argument by Defendants Yuan and Lin that I only own 30% shareholder interest in

8    Camiwell as opposed to 35% is without merit for two reasons:

9    Reason one:   Attached hereto as **Exhibit A** is a true and correct copy of the Waiver of

10   Notice and Consent to Unanimous Written Consent dated June 16, 2018.  This document includes

11   a statement signed by Defendants Yuan and Lin confirming that I own 35% of the shares of

12   Camiwell:

13

14           **RESOLVED FURTHER**, that the Corporate approve the voluntary and free
15           transfer of 25,000 shares of common shares from Hong Lin to Jinju Zhang, and after the
             transfer the shareholding structure will be as follows:

16
| Name | Class of Shares | Total Number of Shares | Shareholding Percentage |
17   |------|-----------------|------------------------|-------------------------|
| Benlin Yuan | Common | 200,000 | 40% |
18   | Jinju Zhang | Common | 175,000 | 35% |
| Hong Lin | Common | 125,000 | 25% |
19

20

21   Reason two: I originally owned 30% of the shares in Camiwell.  Purportedly Defendant

22   Lin held 19% of the Camiwell shares for her high school friend as a proxy.   However, later it was

23   discovered that Defendant Lin's high school friend was not participating in Camiwell, and

24   Defendant Lin was holding 19% of the shares under what I believed to be false pretenses.  When

25   confronted about the scheme, Defendant Lin agreed to transfer 5% of the shares through a Share

26   Transfer Agreement to me thereby raising my shareholder interest to 35%.  Attached hereto as

27   **Exhibit B** is a true and correct copy of the Share Transfer Agreement dated July 9, 2018.  I

28

Doc ID: beecf8b169cf8da4c92c16c905e90477c69c999b

performed all the conditions required of me under the Share Transfer Agreement for the transfer of 5% of the shares by Defendant Lin to me.  I am a 35% shareholder in Camiwell.

**CAMIWELL BYLAWS**

5.      In or around June 2018, Camiwell LLC converted to Camiwell Inc. At the time of the conversion, Defendant Yuan, Defendant Lin and I signed a Waiver of Notice and Consent to Unanimous Written Consent to adopt the Camiwell Bylaws on June 16, 2018:



Attached hereto as **Exhibit A** is a true and correct copy of the Waiver of Notice and Consent to Unanimous Written Consent adopting the Camiwell Bylaws.  Attached hereto as **Exhibit C** is a true and correct copy of the Camiwell Bylaws.

**PLAINTIFF'S STATE CASE AGAINST CAMIWELL, YUAN AND LIN**

6.      On July 20, 2020, I filed an action against Defendants Yuan and Lin (Santa Clara County Case No. 20CV368535; the "State Case").  [See Dkt. 102, Defendants' Request for Judicial Notice ("RJN").]    My State Case asserted four claims: two causes actions against Camiwell for an accounting and for enforcement of Plaintiff's inspection rights under the Corporations Code, and

Doc ID: beecf8b169cf8da4c92c16c905e90477c69c999b

two causes actions against Yuan and Lin for breach of fiduciary duty and for unfair business practices.

7.     In September of 2023, the State Case was concluded when I accepted separate Offers to Compromise (Cal. Code Civ. Proc. § 998) made by Defendants Yuan and Lin on one hand and Camiwell on the other.  Judgment was entered in my favor. [See Dkt, 102,  Defendants' RJN.].     I was paid $50,000 by Defendants Yuan and Lin pursuant to the 998 Offer and Judgment.  I was paid $353,000 by Camiwell pursuant to the 998 Offers and Judgment.  In receiving these funds, I was only paid to resolve the claims I raised in the State Case.  The payment was <u>not</u> a Camiwell shareholder distribution.  The payments I received did not include any agreement by me to dissolve Camiwell.  The payments were strictly to resolve the claims I raised in the State Case.

**<u>DEFENDANTS' WRONGFUL CONDUCT AFTER THE STATE CASE</u>**

8.     I have read Defendants'  papers as to why he believes the State Case resolved all the claims between us.  I disagree with Defendants' statements.

9.     After judgement was entered in my favor in the State Case pursuant to the 998 Offers, Defendants Yuan and Lin began a new and distinct pattern of wrongful conduct separate from the conduct that had been the subject of the State Case.  It is Defendants' conduct that occurred *after* the conclusion of the State Case that is the subject of the instant action.

**<u>DEFENDANTS WITHDRAWAL OF FUNDS FROM CAMIWELL'S BANK ACCOUNTS</u>**

10.     I have read Defendant Yuan's Declaration as to why he believes he and Defendant Lin were entitled to funds from Camiwell's bank accounts, and I disagree with the statements made by Defendant Yuan.

11.      In his declaration, Defendant Yuan admits to making two major withdrawals from Camiwell's Bank of America accounts for himself and Defendant Lin after the State Case ended, claiming he and Lin were entitled to Camiwell funds: a September 26, 2023, withdraw for $162,500; and a September 28, 2023, withdrawal for $509,438.73.

Doc ID: beecf8b169cf8da4c92c16c905e90477c69c999b

29.    Thus, as far as Hong and I were concerned:

(a)    the $353,000 payment from Camiwell U.S. was Plaintiff's full shareholder distribution from the assets available at the time; and

(b)    Hong and I were entitled to <u>all</u> the remaining funds as our shareholder distributions (except for the amounts to pay the remaining corporate creditor).

\*\*\*\*\*

31.    On September 26, 2023, I withdrew $162,500.00 from the company's Bank of America savings account. This was about 18% of the remaining balance contained in the Company's three bank accounts (or $883,821.89[1]).

32.    However, on September 27, 2023, I received a notification from the Bank of America that Plaintiff changed the password and the contact email associated with these accounts. After receiving another bank notification that I was locked out of the bank accounts of Camiwell Inc. and worrying about the safety of my wife's and my share of the shareholder distributions, on September 28, 2023, I transferred another $509,438.73 from the Bank of America savings account to my personal bank account.

[See Dkt. 101, Yuan Declaration at ¶¶ 29, 31-32.]

12.    Defendant Yuan's admitted taking of $162,500 from the Camiwell bank account on September 26, 2023.   [Dkt. 101, ¶ 31]   I discovered that $162,500 were transferred from Camiwell's bank account to another Canadian  company controlled by Defendant Yuan and Lin, called Scinall, Inc. Canada.  Attached hereto as **Exhibit D** is a  true and correct copy of the Camiwell Bank of America payment to Scinall  Inc.

| 09/26/23 | WIRE TYPE:INTL OUT DATE:230926 TIME:1458 ET TRN:2023092600433620 SERVICE REF:480402 BNF:SCINALL INC ID:3978200147701473 BNF BK:BANK OF MONTREAL, THE ID:BOFMCAM2 PMT DET:FYY68ZS8X POP Se rvices | -162,500.00 |
| --- | --- | --- |

13. Attached hereto as **Exhibit D** is a  true and correct copy of documents obtained from the Government of Canada's Corporation database indicating that Defendant Yuan and Lin are Directors of Scinall Inc. Canada  that I obtained at the  Innovation, Science and Economic Development Canada website (https://ised-isde.canada.ca/cc/lgcy/fdrlCrpSrch.html).

PLAINTIFF JINJU ZHANG'S DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITON TO MOTION FOR SUMMARY JUDGMENT
Page 5

*Zhang v. Yuan, et al.*; 3:23-cv-05818-VC

Doc ID: beecf8b169cf8da4c92c16c905e90477c69c999b

**Directors**

**Minimum**    1
**Maximum**    10

HONG LIN
2269 Robinwood Court
Mississauga ON L5M 5B9
Canada

BENLIN YUAN
2269 Robinwood Court
Mississauga ON L5M 5B9
Canada

14.  The taking was done without notice to me and without a requisite shareholder meeting to fully disclose the proper purpose of the withdrawals pursuant to the Bylaws and California Corporations Code.   Defendants Yuan and Lin wrongfully took these funds.  I disagree with Defendant Yuan statements at ¶ 29, 31, 32 of his Declaration indicating Defendant were entitled to the funds as a result of the State Case and that Defendants had the right to take funds from the Camiwell accounts without notice to me.   I was paid $50,000 by Defendants Yuan and Lin pursuant to the 998 Offer and Judgment.  I was paid $353,000 by Camiwell pursuant to its 998 Offers and Judgment.   The payment of $353,000 to me by Camiwell was <u>not</u> a Camiwell shareholder distribution entitling Defendant to an equal Camiwell distribution.  Further, the payments I received from the 998 Offers did not include any agreement by me to dissolve Camiwell.  The payments were strictly to resolve the claims I raised in the State Case; they had nothing to do with distributions from, or dissolution of, Camiwell.

15.  I only discovered the Defendants' withdrawal of $162,500 after receiving a notice of a large transaction from Bank of America on September 26, 2024.  This alarmed me and caused me to be distressed and anxious because I did not have access to the online portal for Camiwell's Bank of America accounts to investigate the withdrawn funds for fraud. I was concerned funds would continue to be withdrawn and that fraudulent acts would persist, so I went to Bank of America in person to reset the password for the accounts to prevent further withdrawals.

Doc ID: beecf8b169cf8da4c92c16c905e90477c69c999b

## DEFENDANTS' WRONGFUL DISSOLUTION OF CAMIWELL

15.     I have read Defendant Yuan's Declaration as to why he believes he and Defendant Lin were justified in dissolving Camiwell.  I disagree with Defendant Yuan's statement.

16.     The Camiwell Bylaws, Article II, Section 14, state that a 70% majority vote of shareholders is required for the dissolution of Camiwell:

> Section 14. Protective Provisions.  The following decisions would need the written consent or affirmative vote of the holders of at least seventy percent (70%) of the common stock of the Corporation, and any such act or transaction entered into without such consent or vote shall be null and void ab initio, and of no force or effect:
>
> (a)liquidate, dissolve or wind-up the business and affairs of the Corporation, effect any merger or consolidation or any other deemed liquidation event, or consent to any of the foregoing;

[See **Ex. B** submitted herewith.]

17.     As stated above at ¶¶ 3-4, I do not believe that Defendant Yuan and Lin had a combined 70% majority shareholder interest in Camiwell. Defendant Yuan has a 40% shareholder interest; Defendant Lin had a 25% shareholder interest; and  I had a 35% shareholder interest.   [See Exs. **A and B** submitted herewith]

18.     On information and belief, on September 27, 2023, Defendants Yuan and Lin signed a Certificate of Election to Wind Up and Dissolve Camiwell U.S. and filed it with the California Secretary of State.  The transaction to dissolve and wind up Camiwell was done by Defendants Yuan and Lin without conducting a vote to obtain a 70% majority approval, without notice to me and without my consent.

Doc ID: beecf8b169cf8da4c92c16c905e90477c69c999b



Attached hereto as **Exhibit F** is a true and correct copy of said Certificate of Election to Wind Up and Dissolve Camiwell U.S. This document is also being submitted for the court's consideration in Plaintiff's Request for Judicial Notice, No. 1 submitted herewith.

19.    I do not consent or agree that Camiwell should be dissolved.  I do not consent or agree that Defendants are entitled to the remaining assets of Camiwell.  I do not consent or agree to allow Defendants to complete the dissolution process for Camiwell.  By filing this case, I seek to enjoin Defendants from completing the dissolution process until after the respective rights of each shareholder can be resolved.


I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed on this 29th day of July 2024, in Conroe, Texas.

JINJU ZHANG

PLAINTIFF JINJU ZHANG'S DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITON TO MOTION
FOR SUMMARY JUDGMENT
Page 8

*Zhang v. Yuan, et al.*; 3:23-cv-05818-VC

Doc ID: beecf8b169cf8da4c92c16c905e90477c69c999b



**Dropbox** Sign                                                                                    Audit trail

---

| | |
|---|---|
| **Title** | Declaration |
| **File name** | Zhang_Dec._ISO_OPP_TO_MSJ.docx |
| **Document ID** | beecf8b169cf8da4c92c16c905e90477c69c999b |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

---

## Document History

|  | | |
|---|---|---|
| ⤴ **SENT** | **07 / 30 / 2024**<br>00:44:15 UTC | Sent for signature to Jinju Zhang (jinju2008@gmail.com) from jcai@sacattorneys.com<br>IP: 69.209.19.106 |
| 👁 **VIEWED** | **07 / 30 / 2024**<br>00:50:52 UTC | Viewed by Jinju Zhang (jinju2008@gmail.com)<br>IP: 76.164.113.181 |
| ✎ **SIGNED** | **07 / 30 / 2024**<br>00:57:43 UTC | Signed by Jinju Zhang (jinju2008@gmail.com)<br>IP: 76.164.113.181 |
| ✓ **COMPLETED** | **07 / 30 / 2024**<br>00:57:43 UTC | The document has been completed. |

---

Exhibit **A**

Unanimous Written Consent

## Waiver of Notice and Consent to Unanimous Written Consent

## in Lieu of Holding First Meeting of Board of Directors

We, the undersigned, being the initial directors of CAMIWELL Inc., a California Corporation (hereinafter the "Corporation"), hereby on June 16th 2018 waive notice of the first meeting of the board of directors of the Corporation and consent to Unanimous Written Decision in Lieu of holding first meeting of board of directors and consent to the transaction of any and all business at the meeting including, without limitation, the adoption of bylaws, the election of officers, the selection of the Corporation's accounting period, the designation of the location of the principal office of the Corporation, the selection of the place where the Corporation's bank accounts will be maintained, and the authorization of the sale and issuance of the initial shares of stock of the Corporation and any other action that may be necessary or appropriate to complete the organization of the corporation.

Date: ___2018-06-16_____

Director: Benlin Yuan

Date: ___2018-06-16_____

Director: Jinju Zhang

Date: ___2018-06-16_____

Director: Hong Lin

Unanimous Written Consent

## . UNANIMOUS WRITTEN CONSENT OF THE BOARD OF

## CAMIWELL INC.,

## A California Corporation

The undersigned, all the directors of CAMIWELL Inc., a California corporation, acting by unanimous written consent without a meeting pursuant to California Corporations Code §307(b) and the bylaws of the corporation, consent to their election as directors, accept the resignation of the incorporator(s), and adopt the following resolutions:

### 1. Articles of Incorporation

**WHEREAS,** in order to meet the business needs, CAMIWELL LLC (hereinafter "LLC") decides to convert from limited liability company in Delaware to a corporation in California named CAMIWELL Inc;

**WHEREAS,** the corporation was incorporated on June 8th, 2018, the date on which the articles of incorporation with statement of conversion were filed by the Secretary of State;

**RESOLVED,** that a certified copy of the articles shall be inserted in the corporation's minute book by the Secretary;

**RESOLVED FURTHER,** that the name of the Corporation shall be CAMIWELL Inc.

### 2. Appointment of Agent for Service of Process

**RESOLVED,** that Junfei Li, a resident of California, whose address is 5025 Skylark CT, Pleasanton, CA 94566, is appointed as this corporation's agent for service of process in California as required by California Corporations Code §1502.

### 3. Approval of Bylaws

**WHEREAS,** the corporation's bylaws adopted by the incorporator are presented to the board for review;

**RESOLVED,** that the bylaws presented to the Board be and hereby are adopted as the bylaws of this Corporation; and

**RESOLVED FURTHER,** that the secretary of this corporation is authorized and directed to execute a certificate of the adoption of those bylaws, to insert those bylaws as so certified in the minute book of this corporation, and to cause a copy of those bylaws, as they may be amended from time to time, to be kept and maintained at the principal executive office of this corporation, in accordance with California Corporations Code §213.

Unanimous Written Consent

## 4. Appointment of Officers

RESOVED, that the following persons are hereby appointed to the following officers, at the annual salaries, if any as stated below, as set forth to the right of their names:

| Title | Name | Salary |
|-------|------|--------|
| President (CEO) | Benlin Yuan | _____ |
| Secretary | Benlin Yuan | _____ |
| Treasurer (CFO) | Hui Sun | _____ |

## 5. Corporate Seal

WHEREAS, Counsel to the corporation has advised that a corporate seal is not required to establish the validity of any instrument executed by or in the name of the corporation;

RESOLVED, that the corporation does not adopt a corporate seal.

## 6. Share Certificate

RESOLVED, that the form of share certificate presented to this board of directors is adopted for use by this corporation, and the secretary is directed to insert a copy of that form of share certificate in the corporation's minute book immediately following the minutes of the meeting.

## 7. Accounting Period

RESOLVED, that the corporation's fiscal year and accounting period will end on December 31 of each year.

## 8. Principal Executive Office

RESOLVED, that 4633 Old Ironsides Drive, Suite 290, Santa Clara, CA 95054, is designated as the principal executive office of this corporation.

## 9. Filing of Annual Statement

Unanimous Written Consent

**RESOLVED**, that the secretary of this corporation is authorized and directed to prepare and to file or cause to be filed with the Secretary of State the necessary statement in compliance with California Corporations Code §1502; and

**RESOLVED FURTHER**, that the secretary is directed to insert a copy of that statement in the minute book following the minutes of this meeting.

## 10. Establishing Bank Accounts

**RESOLVED**, that the funds of this corporation shall be deposited with __(blank)__ and/or __(blank)__ in California by assuming any funds from CAMIWELL LLC;

**RESOVED FURTHER**, that president is hereby authorized and directed to change the bank account name with said bank and to deposit the funds of this Corporation therein.

**RESOLVED FURTHER**, that president is authorized to designate as depositaries of this corporation's funds one or more other banks, trust companies, or other financial institutions, and to open, keep, and close general and special accounts in such depositaries.

**RESOLVED FURTHER**, that any officer, employee, or agent of this Corporation is hereby authorized to endorse checks, drafts, or other evidences of indebtedness made payable to this Corporation, but only for the purpose of deposit.

**RESOLVED FURTHER**, that all checks, drafts, and other instruments obligating this Corporation to pay money, including instruments payable to officers or other persons authorized to sign them, shall be signed on behalf of this Corporation by any of the following:

President, Treasurer, and Secretary

**RESOLVED FURTHER**, that said bank is hereby authorized to honor and pay any and all checks and drafts of this Corporation signed as provided herein.

**RESOLVED FURTHER**, that the authority hereby conferred shall remain in force until revoked by the board of directors of this Corporation and until written notice of such revocation shall have been received by said bank.

**RESOLVED FURTHER**, that the secretary of this Corporation be and is hereby authorized to certify as to the continuing authority of these resolutions, the persons authorized to sign on behalf of this Corporation and the adoption of said bank's standard form of resolution, provided that said form does not vary materially from the terms of the foregoing resolutions.

Unanimous Written Consent

## 11. Payment of Incorporation Expenses

**RESOLVED**, that the president and the treasurer of this Corporation are authorized and empowered to pay all reasonable and proper expenses incurred in connection with the organization of the Corporation, including, among others, filing, licensing, and attorney's and accountant's fees, and to reimburse any persons making any such disbursements for the Corporation;

**RESOLVED FURTHER**, that the treasurer is authorized to elect to deduct and amortize the foregoing expenditures pursuant to, and as permitted by, Section 248 of the Internal Revenue Code of 1986, as amended.

## 12. Optional Qualification of Stock Under IRC §1244

**RESOLVED**, that this corporation intends to qualify its _ _[common]_ _ stock for treatment under Internal Revenue Code §1244, under which the corporation plans that its total equity capital and paid-in surplus will not in any event exceed $1,000,000, that it will be largely an operating company, with less than 50 percent of its gross receipts coming from passive sources (royalties, rents, dividends, interest, annuities, and sales or exchanges of stocks or securities), and that It will conform in all other respects to the requirements necessary to qualify its _ _[common]_ _ stock for treatment under Internal Revenue Code §1244.

**RESOLVED FURTHER**, that the secretary of this corporation is authorized and directed to keep all records, prepare all reports and returns, and take all other steps as may be necessary to qualify this corporation's _ _[common]_ _ stock for treatment under Internal Revenue Code §1244.

## 13. Issuance of Shares and Approval of Transfer

**RESOLVED**, that the corporation issue and sell a total of **500,000 shares** of its authorized common stock to the following persons, in the number and for the consideration set forth opposite their names, respectively:

| **Name** | **Class of Shares** | **Number of Shares** | **Consideration (if other than cash)** | **Fair Value** |
|---|---|---|---|---|
| Benlin Yuan | Common | 200,000 | 40% interest in LLC | The dollar amount equal to 40% interest in LLC |

Unanimous Written Consent

| Jinju Zhang | Common | 150,000 | 30% interest in LLC | The dollar amount equal to 30% interest in LLC |
| Hong Lin | Common | 150,000 | 30% interest in LLC | The dollar amount equal to 30% interest in LLC |

**RESOLVED FURTHER**, that the Corporate approve the voluntary and free transfer of 25,000 shares of common shares from Hong Lin to Jinju Zhang, and after the transfer the shareholding structure will be as follows:

| Name | Class of Shares | Total Number of Shares | Shareholding Percentage |
|---|---|---|---|
| Benlin Yuan | Common | 200,000 | 40% |
| Jinju Zhang | Common | 175,000 | 35% |
| Hong Lin | Common | 125,000 | 25% |

**RESOLVED FURTHER**, that the officers of the corporation are authorized, empowered, and directed to take all actions that may be necessary and proper for this corporation to issue and sell the above-listed shares to the persons named, in accordance with applicable laws, and that those actions will include, when necessary: (1) filing with the Commissioner of Business Oversight an appropriate notice under Corporations Code §25102(f) or §25102(h) or obtaining qualification of the offer and sale of such shares from the Commissioner of Business Oversight; (2) doing all acts that may be necessary under the federal securities laws and the applicable securities laws of any other state; and (3) doing all acts necessary to expedite these transactions or conform them to the requirements of any applicable law.

**RESOLVED FURTHER**, that each of the officers of this corporation is authorized and directed to execute all documents and to take any other action necessary or advisable to carry out the purposes of this resolution.

**14. Optional Election of S Corporation Status (omitted)**

.

Unanimous Written Consent

## 15. OMNIBUS RESOLUTION

**RESOLVED**, that the officers of the Corporation be, and they hereby are, authorized, directed and empowered to execute any applications, certificates, agreements or any other instruments or documents or amendments to such documents, including any filings and stock certificates, or to do or to cause to be done any and all others acts and things as such officers, in their discretion, may deem necessary or advisable and appropriate to carry out the purposes of the foregoing resolutions.

**INWITNESS WHEREOF**, the foregoing resolution is hereby consented to and approved as of the date it is executed. This Consent may be executed in any number of counterparts, each of which shall be deem an original.

Date: __2018-06-16_____

Director: Benlin Yuan

Date: __2018-06-16_____

Director: Jinju Zhang

Date: __2018-06-16_____

Director: Hong Lin

# Exhibit **B**

### SHARE TRANSFER AGREEMENT

**THIS SHARE TRANSFER AGREEMENT** (this "Agreement") is entered into as of July 9th 2018, by and among (1)CAMIWELL INC., a California corporation (the "**Company**"), (2) Jinju Zhang, a holder of in aggregate 150,000 shares of Common stock issued by the Company, and (3) Hong Lin, a holder of in aggregate 150,000 shares of Common stock issued by the Company. In consideration of the mutual promises, representations, warranties, covenants and conditions set forth in this Agreement, the parties mutually agree as follows:

1. **Conditions of Share Transfer.** The Company shall issue Shares, i.e., <u>25,000</u> shares of Common stock to Jinju Zhang after the following conditions are met:

    1.1.  Hong Lin having delivered, and the Company and Jinju Zhang having received, an irrevocable written notice by Hong Lin that Hong Lin has received the lawful, adequate consideration from Jinju Zhang, in which case the Company may rely on such written notice;

    1.2.  Hong Lin, in person, or by duly authorized attorney, surrendering of her certificates properly endorsed as assigning <u>25,000</u> shares of Common stock ("Shares") to Jinju Zhang.

2. **Closing.** The closing of the Share Transfer shall occur on the date designated in writing by the Company to Hong Lin.

3. **Rights Before and After Closing.** Before closing of the Shares Transfer, Hong Lin shall retain all rights as an investor/shareholder with respect to the Shares, including but not limited to voting rights and income/earning rights. From and after the closing of the Share Transfer, all rights of Hong Lin with respect to the Shares, either as investor, or initial shareholder, shall cease, and such shares shall be owned legally and beneficially by Jinju

Zhang. For the avoidance of doubt, Jinju Zhang shall step into the shoes of Hong Lin and inherit all the rights and obligations that Hong Lin previously had before the closing of the Share Transfer.

4.  **Other Conditions.** Jinju Zhang shall not be obligated to close the Share Transfer if Jinju Zhang shall be unable to do so without a breach or violation of the provisions of applicable law or the articles of incorporation or bylaws of the Company as in effect on such date. Jinju Zhang shall purchase such securities as Jinju Zhang is able without a breach or violation of applicable law or the articles of incorporation or bylaws of the Company, and the Company shall use reasonable efforts to remove any such limitations upon the Company's ability to effect such purchase. The Company hereby agrees to waive any of its right of first refusal regarding the Share Transfer, and will use reasonable efforts to procure all other shareholders to waive their rights of first refusal, if any, so as to give effect to this Agreement.

5.  **Representations and Warranties of Jinju Zhang** Jinju Zhang hereby represents and warrants to the Company as follows.

    5.1. Jinju Zhang is purchasing the Shares for its own account for investment purposes only and not with a view to, or for sale in connection with, a distribution of the Shares within the meaning of the Securities Act of 1933, as amended (the "1933 Act"). Jinju Zhang has no present intention of selling or otherwise disposing of all or any portion of the Shares except in compliance with the 1933 Act.

    5.2. Jinju Zhang understands that Jinju Zhang may not transfer any Shares unless such Shares are registered under the 1933 Act and qualified under the Law or other applicable state securities laws or unless, in the opinion of counsel to the Company, exemptions from such registration and qualification requirements are available. Jinju Zhang understands that only the Company may file a registration statement with the SEC or the California Commissioner of Corporations or other applicable state securities commissioners and that the Company is under no obligation to do so with respect to the Shares. Jinju Zhang has also been advised

that exemptions from registration and qualification may not be available or may not permit Jinju Zhang to transfer all or any of the Shares in the amounts or at the times proposed by Jinju Zhang.

5.3. **Rule 144**. In addition, Jinju Zhang has been advised that SEC Rule 144 promulgated under the 1933 Act, which permits certain limited sales of unregistered securities, is not presently available with respect to the Shares and, in any event, requires that the Shares be held for a minimum of six months, and in certain cases one year, after they have been purchased and paid for (within the meaning of Rule 144), before they may be resold under Rule 144. Jinju Zhang understands that Rule 144 may indefinitely restrict transfer of the Shares so long as Jinju Zhang remains an "affiliate" of the Company and certain information about the Company (as defined in Rule 144) is not publicly available.

6. **Governing Law and Jurisdiction**. This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of California in the United States of America, without giving effect to the choice of law provisions thereof. The state and federal courts located in County of Alameda, California shall have exclusive jurisdiction to adjudicate all disputes between the parties concerning the subject matter hereof.

7. **Successors and Assigns.** Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

8. **Severability.** In case any provision of this Agreement shall be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Share Transfer Agreement

9.  **Amendment and Waiver.** Except as otherwise expressly provided, the obligations of the Company, Jinju Zhang and the rights of Hong Lin under this Agreement may be amended, modified or waived only with the written consent of the Company, Jinju Zhang and Hong Lin.

10.  **Delays or Omissions.** It is agreed that no delay or omission to exercise any right, power, or remedy accruing to either party, upon any breach, default or noncompliance of the other party under this Agreement, shall impair any such right, power, or remedy, nor shall it be construed to be a waiver of any such breach, default or noncompliance, or any acquiescence therein, or of any similar breach, default or noncompliance thereafter occurring. It is further agreed that any waiver, permit, consent, or approval of any kind or character on either party's part of any breach, default or noncompliance under the Agreement or any waiver on either party's part of any provisions or conditions of this Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement, by law, or otherwise afforded to either party shall be cumulative and not alternative.

11.  **Notices.** All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) when sent by confirmed telex or facsimile if sent during normal business hours of the recipient; if not, then on the next business day, (iii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (iv) one (1) day after deposit with a United States recognized overnight courier, specifying next-day delivery, with written verification of receipt. All communications shall be sent to the party to be notified at the address as set forth on the signature pages hereof or at such other address as such party may designate by ten (10) days' advance written notice to other parties hereto.

12.  **Attorneys' Fees.** In the event that any dispute among the parties to this Agreement should result in litigation, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing any right of such prevailing party

under or with respect to this Agreement, including without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.

13. **Titles and Subtitles.** The titles of the sections and subsections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

14. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original, but all of which will be one and the same document. Facsimiles and electronic copies in portable document format ("PDF") containing original signatures shall be deemed for all purposes to be originally signed copies of the documents that are the subject of such facsimiles or PDF versions.

15. **Representation of Financial Sophistication.** Jinju Zhang represents that it is an "accredited investor" within the meaning of Securities and Exchange Commission Rule 501 of Regulation D, as presently in effect.

16. **Transfer Taxes.** All excise, transfer, stamp, documentary, filing, recordation and other similar taxes which may be imposed or assessed as the result of any payment related to the Share Transfer, together with any interest, additions or penalties with respect thereto and any interest in respect of such additions or penalties, shall be borne by Jinju Zhang.

17. **Entire Agreement.** This Agreement, including any and all Exhibits and attachments to this Agreement, which are hereby incorporated by reference into this Agreement, constitutes the entire agreement between the parties the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, whether written or oral, with respect to the same subject matter.

Share Transfer Agreement

(Signature Page)

IN WITNESS WHEREOF the parties have executed this Agreement on the date specified in the preamble of this Agreement.

**COMPANY: CAMIWELL INC.**

By:

Name: Benlin Yuan

Title: CEO

**Hong Lin**

Signature:

**Jinju Zhang**

Signature:

# Exhibit C

Bylaws.

# BYLAWS OF CAMIWELL INC.

## A CALIFORNIA CORPORATION

## ARTICLE I

### OFFICES

Section 1. PRINCIPAL EXECUTIVE OR BUSINESS OFFICES. The board of directors will fix the location of the principal executive office of the corporation at any place within or outside the State of California. If the principal executive office is located outside California and the corporation has one or more business offices in California, the board will fix and designate a principal business office in California.

Section 2. OTHER OFFICES. Branch or subordinate offices may be established at any time and at any place by the board of directors.

## ARTICLE II

### MEETINGS OF SHAREHOLDERS

Section 1. PLACE AND CONDUCT OF MEETINGS. Meetings of shareholders will be held at any place within or outside the State of California designated by the board of directors. In the absence of a designation by the board, shareholders' meetings will be held at the corporation's principal executive office. If authorized by the board of directors (in its sole discretion) and subject to the consent requirement in California Corporations Code §20(b) and any guidelines and procedures adopted by the board of directors, shareholders not physically present in person or by proxy at a meeting of shareholders may, by electronic transmission by and to the corporation or by electronic video screen communication, participate in a meeting of shareholders, be deemed present in person or by proxy, and vote, whether the meeting is to be held at a designated place or in whole or in part by means of electronic transmission by and to the corporation or by electronic video screen communication.

A meeting of shareholders may be conducted, in whole or in part, by electronic transmission by and to the corporation or by electronic video screen communication if:

(a) The corporation implements reasonable measures to provide shareholders (in person or by proxy) a reasonable opportunity to participate in the meeting and to vote on matters submitted to the shareholders, including an opportunity to read or hear the proceedings of the meeting concurrently with those proceedings; and

1

Bylaws.

(b) The corporation maintains a record of the vote or action and any shareholder votes or other shareholder action is taken at the meeting by means of electronic transmission to the corporation or electronic video screen communication.

Any request by the corporation to a shareholder under California Corporations Code §20(b) for consent to conduct a meeting of shareholders by electronic transmission must include a notice that absent consent of the shareholder, the meeting will be held at a physical location.

Section 2. ANNUAL MEETING. The annual meeting of shareholders will be held each year on a date and at a time designated by the board of directors.

The date so designated will be within *5* months after the end of the corporation's fiscal year, and within 15 months after the last annual meeting.

At each annual meeting, directors will be elected and any other proper business within the power of the shareholders may be transacted.

Section 3. SPECIAL MEETING. A special meeting of the shareholders may be called at any time by the board of directors, by the chairperson of the board, by the president or vice president, by *title or description of other person(s) entitled to call meeting, e.g., the chief financial officer*, or by one or more shareholders holding shares that in the aggregate are entitled to cast 10 percent or more of the votes at that meeting.

If a special meeting is called by anyone other than the board of directors, the person or persons calling the meeting will make a request in writing, delivered personally or sent by registered mail, or by electronic transmission to the corporation, to the chairperson of the board or the president, vice president, or secretary, specifying the time and date of the meeting (which is not less than 35 nor more than 60 days after receipt of the request) and the general nature of the business proposed to be transacted. Within 20 days after receipt, the officer receiving the request will cause notice to be given to the shareholders entitled to vote, in accordance with *bylaw provisions on notice, e.g., Sections 4 and 5 of this Article II*, stating that a meeting will be held at the time requested by the person(s) calling the meeting, and stating the general nature of the business proposed to be transacted. If notice is not given within 20 days after receipt of the request, the person or persons requesting the meeting may give the notice. Nothing in this paragraph will be construed as limiting, fixing, or affecting the time when a meeting of shareholders called by action of the board may be held.

Section 4. NOTICE OF SHAREHOLDERS' MEETINGS. All notices of meetings of shareholders will be sent or otherwise given in accordance with *bylaw provisions on manner of giving notice, e.g., Section 5 of this Article II* not fewer than 10 nor more than

2

Bylaws.

60 days before the date of the meeting. Shareholders entitled to notice will be determined in accordance with *bylaw provision on record date, e.g., Section 11 of this Article II*. The notice will specify the place, date, and hour of the meeting, and (i) in the case of a special meeting, the general nature of the business to be transacted, or (ii) in the case of the annual meeting, those matters that the board of directors, at the time of giving the notice, intends to present for action by the shareholders. If directors are to be elected, the notice will include the names of all nominees whom the board intends, at the time of the notice, to present for election.

If the meeting is to be held in whole or in part by electronic transmission, the notice shall state the means of electronic transmission by and to the corporation or electronic video screen communication, if any, by which shareholders may participate in that meeting.

The notice will also state the general nature of any proposed action to be taken at the meeting to approve any of the following matters:

(i) A transaction in which a director has a financial interest, within the meaning of California Corporations Code §310;

(ii) An amendment of the articles of incorporation under Corporations Code §902;

(iii) A reorganization under Corporations Code §1201;

(iv) A voluntary dissolution under Corporations Code §1900; or

(v) A distribution in dissolution that requires approval of the outstanding shares under Corporations Code §2007.


Section 5. MANNER OF GIVING NOTICE; AFFIDAVIT OF NOTICE. Notice of any shareholders' meeting will be given either personally or by first-class mail or other written communication (including electronic transmission by the corporation), charges prepaid, addressed to the shareholder at the physical or electronic address appearing on the corporation's books or given by the shareholder to the corporation for purposes of notice. If no address appears on the corporation's books or has been given as specified above, notice will be either (1) sent by first-class mail addressed to the shareholder at the corporation's principal executive office, or (2) published at least once in a newspaper of general circulation in the county where the corporation's principal executive office is located. Notice is deemed to have been given at the time when delivered personally or deposited in the mail or sent by other means of written communication.

If any notice or report mailed to a shareholder at the address appearing on the corporation's books is returned marked to indicate that the United States Postal Service is unable to deliver the document to the shareholder at that address, all future notices or reports will be deemed to have been duly given without further mailing if the corporation holds the document available for the shareholder on written demand at the corporation's

Bylaws.

principal executive office for a period of 1 year after the date the notice or report was given to all other shareholders.

Notice shall not be given by electronic transmission by the corporation after either of the following: (1) The corporation is unable to deliver two consecutive notices to the shareholder by that means, or (2) the inability to so deliver such notices to the shareholder becomes known to the secretary, any assistant secretary, the transfer agent, or other person responsible for the giving of the notice.

An affidavit of the mailing, or other authorized means of transmitting, of any notice of shareholders' meeting, report, or other document sent to shareholders, may be executed by the corporation's secretary, assistant secretary, or transfer agent and, if executed, will be filed and maintained in the minute book of the corporation.

Section 6. QUORUM. The presence in person or by proxy of the holders of a majority of the shares entitled to vote at any meeting of the shareholders will constitute a quorum for the transaction of business. The shareholders present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the withdrawal of enough shareholders to leave fewer than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the shares required to constitute a quorum, unless the General Corporation Law requires the vote of a greater number of shareholders or a vote by classes.

Section 7. ADJOURNED MEETING; NOTICE. Any shareholders' meeting, annual or special, whether or not a quorum is present, may be adjourned from time to time by the vote of the majority of the shares represented at that meeting, either in person or by proxy, but in the absence of a quorum, no other business may be transacted at that meeting, except as provided in *bylaw provision regarding quorum, e.g., Section 6 of this Article II*.

When any meeting of shareholders, either annual or special, is adjourned to another time or place, notice of the adjourned meeting need not be given if the time and place (or the means of electronic transmission by and to the corporation or electronic video screen communication, if any, by which shareholders may participate) are announced at the meeting at which the adjournment is taken, unless a new record date for the adjourned meeting is fixed, or unless the adjournment is for more than 45 days after the date set for the original meeting, in which case the board of directors will set a new record date. Notice of any such adjourned meeting, if required, will be given to each shareholder of record entitled to vote at the adjourned meeting, in accordance with *bylaw provisions on notice, e.g., Sections 4 and 5 of this Article II*. At any adjourned meeting, the corporation may transact any business that might have been transacted at the original meeting.

Bylaws.

    <u>Section 8. VOTING</u>. The shareholders entitled to vote at any meeting of shareholders will be determined in accordance with *bylaw provisions on record date, e.g., Section 11 of this Article II*, subject to the provisions of the California Corporations Code §§702–704 relating to voting shares held by a fiduciary, in the name of a corporation, or in joint ownership. The shareholders' vote may be by voice vote or by ballot, provided, however, that any election for directors must be by ballot if demanded by any shareholder before the voting has begun. On any matter other than the election of directors, any shareholder may vote part of the shares the shareholder is to vote in favor of the proposal and refrain from voting the remaining shares or vote them against the proposal, but, if the shareholder fails to specify the number of shares that the shareholder is voting affirmatively, it will be conclusively presumed that the shareholder's approving vote is with respect to all shares that the shareholder is entitled to vote. If a quorum is present (or if a quorum has been present earlier at the meeting but some shareholders have withdrawn), the affirmative vote of a majority of the shares represented and voting, provided such shares voting affirmatively also comprise a majority of the number of shares required for a quorum, will constitute an act of the shareholders unless the vote of a greater number or a vote by classes is required by law or by the articles of incorporation.

    At a shareholders' meeting at which directors are to be elected, no shareholder will be entitled to cumulate votes (*i.e.,* cast for any candidate a number of votes greater than the number of votes which that shareholder normally would be entitled to cast), unless the candidates' names have been placed in nomination before commencement of the voting and a shareholder has given notice at the meeting, before the voting has begun, of the shareholder's intention to cumulate votes. If any shareholder has given such a notice, then all shareholders entitled to vote may cumulate their votes for candidates in nomination. Thus each such shareholder may give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which that shareholder's shares are normally entitled, or may distribute the shareholder's votes on the same principle among any or all of the candidates. The candidates receiving the highest number of votes, up to the number of positions to be filled, will be elected.

    <u>Section 9. WAIVER OF NOTICE OR CONSENT BY ABSENT SHAREHOLDERS</u>. The transactions of any meeting of shareholders, either annual or special, however called and noticed and wherever held, will be as valid as though they were had at a meeting duly held after regular call and notice, if a quorum is present either in person or by proxy, and if each person entitled to vote who was not present in person or by proxy, either before or after the meeting, signs a written waiver of notice or a consent to holding the meeting or an approval of the minutes of the meeting. The waiver of notice or consent need not specify either the business to be transacted or the purpose of any annual or special meeting of the shareholders, except that, if action is taken or proposed to be taken for approval of any of those matters specified in the California Corporations Code §601(f), *i.e.,*

Bylaws.

(i) A transaction in which a director has a financial interest, within the meaning of Corporations Code §310;

(ii) An amendment of the articles of incorporation under Corporations Code §902;

(iii) A reorganization under Corporations Code §1201;

(iv) A voluntary dissolution under Corporations Code §1900; or

(v) A distribution in dissolution that requires approval of the outstanding shares under Corporations Code §2007.

The waiver of notice or consent is required to state the general nature of the action or proposed action. All waivers, consents, and approvals will be filed with the corporate records or made a part of the minutes of the meeting.

A shareholder's attendance at a meeting also constitutes a waiver of notice of that meeting, unless the shareholder at the beginning of the meeting objects to the transaction of any business on the ground that the meeting was not lawfully called or convened. In addition, attendance at a meeting does not constitute a waiver of any right to object to consideration of matters required by law to be included in the notice of the meeting which were not so included, if that objection is expressly made at the meeting.

Section 10. SHAREHOLDER ACTION BY WRITTEN CONSENT WITHOUT A MEETING. Any action that could be taken at an annual or special meeting of shareholders may be taken without a meeting and without prior notice, if a consent in writing, setting forth the action so taken, is signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take that action at a meeting at which all shares entitled to vote on that action were present and voted.

Directors may be elected by written consent of the shareholders without a meeting only if the written consents of all outstanding shares entitled to vote are obtained, except that vacancies on the board (other than vacancies created by removal) not filled by the board may be filled by the written consent of the holders of a majority of the outstanding shares entitled to vote.

All consents will be filed with the secretary of the corporation and will be maintained in the corporate records. Any shareholder or other authorized person who has given a written consent may revoke it by a writing received by the secretary of the corporation before written consents of the number of shares required to authorize the proposed action have been filed with the secretary.

Unless the consents of all shareholders entitled to vote have been solicited in writing, prompt notice will be given of any corporate action approved by shareholders without a meeting by less than unanimous consent, to those shareholders entitled to vote who have

Bylaws.

not consented in writing. As to approvals required by California Corporations Code §310 (transactions in which a director has a financial interest), §317 (indemnification of corporate agents), or §2007 (certain distributions on dissolution), notice of the approval will be given at least 10 days before the consummation of any action authorized by the approval. Notice will be given in the manner specified in *Section 5 of this Article II*.


Section 11. RECORD DATE FOR SHAREHOLDER NOTICE OF MEETING, VOTING, AND GIVING CONSENT.

(a) For purposes of determining the shareholders entitled to receive notice of and vote at a shareholders' meeting or give written consent to corporate action without a meeting, the board may fix in advance a record date that is not more than 60 nor less than 10 days before the date of a shareholders' meeting, or not more than 60 days before any other action.

(b) If no record date is fixed:

(i) The record date for determining shareholders entitled to receive notice of and vote at a shareholders' meeting will be the business day next preceding the day on which notice is given, or, if notice is waived as provided in *Section 9 of this Article II*, the business day next preceding the day on which the meeting is held.

(ii) The record date for determining shareholders entitled to give consent to corporate action in writing without a meeting, if no prior action has been taken by the board, will be the day on which the first written consent is given.

(iii) The record date for determining shareholders for any other purpose will be as set forth in *Section 1 of Article VIII* of these bylaws.

(c) A determination of shareholders of record entitled to receive notice of and vote at a shareholders' meeting will apply to any adjournment of the meeting unless the board fixes a new record date for the adjourned meeting. However, the board will fix a new record date if the adjournment is to a date more than 45 days after the date set for the original meeting.

(d) Only shareholders of record on the corporation's books at the close of business on the record date will be entitled to any of the notice and voting rights listed in subsection (a) of this section, notwithstanding any transfer of shares on the corporation's books after the record date, except as otherwise required by law.


Section 12. PROXIES. Every person entitled to vote for directors or on any other matter will have the right to do so either in person or by one or more agents authorized by a written proxy signed by the person and filed with the secretary of the corporation. A proxy will be deemed signed if the shareholder's name is placed on the proxy (whether

Bylaws.

by manual signature, electronic signature, or otherwise) by the shareholder or the shareholder's attorney in fact. A validly executed proxy that does not state that it is irrevocable will continue in full force and effect unless (i) revoked by the person executing it, before the vote pursuant to that proxy, by a writing delivered to the corporation stating that the proxy is revoked, or by attendance at the meeting and voting in person by the person executing the proxy or by a subsequent proxy executed by the same person and presented at the meeting; or (ii) written notice of the death or incapacity of the maker of that proxy is received by the corporation before the vote pursuant to that proxy is counted; provided, however, that no proxy will be valid after the expiration of 11 months from the date of the proxy, unless otherwise provided in the proxy. The revocability of a proxy that states on its face that it is irrevocable will be governed by the provisions of the California Corporations Code §§705(e) and 705(f).

Section 13. INSPECTORS OF ELECTION. Before any meeting of shareholders, the board of directors may appoint any persons other than nominees for office to act as inspectors of election at the meeting or its adjournment. If no inspectors of election are so appointed, the chairperson of the meeting may, and on the request of any shareholder or a shareholder's proxy will, appoint inspectors of election at the meeting. The number of inspectors will be either one or three. If inspectors are appointed at a meeting on the request of one or more shareholders or proxies, the holders of a majority of shares or their proxies present at the meeting will determine whether one or three inspectors are to be appointed. If any person appointed as inspector fails to appear or fails or refuses to act, the chairperson of the meeting may, and upon the request of any shareholder or a shareholder's proxy will, appoint a person to fill that vacancy.

These inspectors will: (a) determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, and the authenticity, validity, and effect of proxies; (b) receive votes, ballots, or consents; (c) hear and determine all challenges and questions in any way arising in connection with the right to vote; (d) count and tabulate all votes or consents; (e) determine when the polls will close; (f) determine the result; and (g) do any other acts that may be proper to conduct the election or vote with fairness to all shareholders.

Section 14. Protective Provisions.  The following decisions would need the written consent or affirmative vote of the holders of at least seventy percent (70%) of the common stock of the Corporation, and any such act or transaction entered into without such consent or vote shall be null and void ab initio, and of no force or effect:

(a) liquidate, dissolve or wind-up the business and affairs of the Corporation, effect any merger or consolidation or any other deemed liquidation event, or consent to any of the foregoing;

(b)        amend, alter or repeal any provision of the Articles of Incorporation or Bylaws of the Corporation;

Bylaws.

     (c)create, or authorize the creation of, any additional class or series of capital shares;

     (d)     create, or authorize the creation of, or issue, or authorize the issuance of any debt security, or permit any subsidiary to take any such action with respect to any debt security;

     (e)increase or decrease the authorized number of directors constituting the Board; and

     (f)adopt or amend an employee shares option plan of any nature.

## ARTICLE III

## DIRECTORS

    Section 1. POWERS. Subject to the provisions of the California General Corporation Law and any limitations in the articles of incorporation and these bylaws relating to action required to be approved by the shareholders or by the outstanding shares, the business and affairs of the corporation will be managed and all corporate powers will be exercised by or under the direction of the board of directors.

    Section 2. NUMBER OF DIRECTORS. The authorized number of directors will be [3] until changed by a duly adopted amendment to the articles of incorporation *or by amendment to this bylaw adopted by the vote or written consent of a majority of the outstanding shares entitled to vote*. However, an amendment that would reduce the authorized number of directors to a number fewer than five cannot be adopted if the votes cast against its adoption at a shareholders' meeting or the shares not consenting to an action by written consent are equal to more than one-sixth (16-2/3 percent) of the outstanding shares entitled to vote.

    Section 3. ELECTION AND TERM OF OFFICE OF DIRECTORS. Directors will be elected at each annual meeting of the shareholders to hold office until the next annual meeting. Each director, including a director elected to fill a vacancy, will hold office until the expiration of the term for which elected and until a successor has been elected and qualified.

    No reduction of the authorized number of directors will have the effect of removing any director before that director's term of office expires.

Bylaws.

The Board directors shall be elected in the following manner. For each 25% shares held either individually or cumulatively, the shareholder(s) holding such 25% shares shall be entitled to appoint and elect one director. The shareholder holding the most shares shall be entitled to appoint and elect the board president. Any director elected as provided in the preceding sentence may be removed without cause by, and only by, the affirmative vote of the holders of the shares entitled to elect such director or directors given either at a special meeting of such shareholders duly called for that purpose or pursuant to a written consent of shareholders. If the holders of shares entitled to elect fail to elect a sufficient number of directors to fill all directorships for which they are entitled to elect directors, then any directorship not so filled shall remain vacant until filled by shareholders entitled to elect. At any meeting held for the purpose of electing a director, the presence in person or by proxy of the holders of a majority of the outstanding shares of the class or series entitled to elect such director shall constitute a quorum for the purpose of electing such director.

Section 4. VACANCIES. A vacancy in the board of directors will be deemed to exist (1) if a director dies, resigns, or is removed by the shareholders or an appropriate court, as provided in the California Corporations Code §303 or §304; (2) if the board of directors declares vacant the office of a director who has been convicted of a felony or declared of unsound mind by an order of court; (3) if the authorized number of directors is increased; or (4) if at any shareholders' meeting at which one or more directors are elected the shareholders fail to elect the full authorized number of directors to be voted for at that meeting.

Any director may resign effective on giving written notice to the chairperson of the board, the president, the secretary, or the board of directors, unless the notice specifies a later effective date. If the resignation is effective at a future time, the board may elect a successor to take office when the resignation becomes effective.

Except for a vacancy caused by the removal of a director, vacancies on the board may be filled by approval of the board or, if the number of directors then in office is less than a quorum, by (1) the affirmative vote of a majority of the directors then in office at a meeting held pursuant to notice or waivers of notice complying with Corporations Code §307, or (2) a sole remaining director.

A vacancy on the board caused by the removal of a director may be filled only by the shareholders, except that a vacancy created when the board declares the office of a director vacant as provided in clause (2) of the first paragraph of this section of the bylaws may be filled by the board of directors.

The shareholders may elect a director at any time to fill a vacancy not filled by the board of directors.

Bylaws.

The term of office of a director elected to fill a vacancy will run until the next annual meeting of the shareholders, and such a director will hold office until a successor is elected and qualified.

Section 5. PLACE OF MEETINGS; MEETINGS BY ELECTRONIC COMMUNICATIONS. Regular meetings of the board of directors may be held at any place within or outside the State of California that has been designated from time to time by resolution of the board of directors. In the absence of such a designation, regular meetings shall be held at the principal executive office of the corporation. Any regular meeting of the board of directors may nonetheless be held at any place consented to in writing by all members of the board of directors, whether before or after the meeting. If consents are given, they shall be filed with the minutes of the meeting. Special meetings of the board of directors will be held at any place within or outside the State of California that has been designated in the notice of the meeting or, if not stated in the notice or there is no notice, at the principal executive office of the corporation. Any special meeting of the board of directors may nonetheless be held at any place consented to in writing by all members of the board of directors, whether before or after the meeting. If consents are given, they shall be filed with the minutes of the meeting. Members of the board of directors may participate in a meeting through the use of conference telephone, electronic video screen communication, or electronic transmission by and to the corporation. Participation in a meeting through the use of conference telephone or electronic video screen communication constitutes presence in person at that meeting so long as all members participating in the meeting are able to hear one another. Participation in a meeting through the use of electronic transmission by and to the corporation (other than conference telephone and electronic video screen communication) constitutes presence in person at that meeting if each member participating in the meeting can communicate with all of the other members concurrently and each member is provided the means of participating in all matters before the board of directors, including, without limitation, the capacity to propose, or to interpose an objection to, a specific action to be taken by the corporation, and the corporation adopts and implements some means of verifying that (i) each person participating in the meeting is a director or other person entitled to participate in the meeting and (ii) all actions of, or votes by, the board are taken or cast only by directors and not by persons who are not members of the board of directors.

Section 6. ANNUAL DIRECTORS' MEETING. Immediately after each annual shareholders' meeting, the board of directors will hold a regular meeting at the same place, or at any other place that has been designated by the board of directors, to consider matters of organization, election of officers, and other business as desired. Notice of this meeting will not be required unless some place other than the place of the annual shareholders' meeting has been designated.

11

Bylaws.

Section 7. OTHER REGULAR MEETINGS. Other regular meetings of the board of directors will be held without call at times to be fixed by the board of directors from time to time. Such regular meetings may be held without notice.

Section 8. SPECIAL MEETINGS. Special meetings of the board of directors may be called for any purpose or purposes at any time by the chairperson of the board, the president, any vice president, the secretary, or any two directors.

Special meetings will be held on 4 days' notice by mail or 48 hours' notice delivered personally or by telephone, including a voice messaging system or other system or technology designed to record and communicate messages, facsimile, electronic mail, or other electronic means. Oral notice given personally or by telephone, or written notice given by electronic mail or facsimile, may be transmitted either to the director or to a person at the director's office who can reasonably be expected to communicate it promptly to the director. Written notice, if used, will be addressed to each director at the address shown on the corporation's records. The notice need not specify the purpose of the meeting, nor need it specify the place if the meeting is to be held at the principal executive office of the corporation.

Section 9. QUORUM. A majority of the authorized number of directors will constitute a quorum for the transaction of business, except to adjourn as provided in *Section 11 of this Article III*. Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present will be regarded as the act of the board of directors, subject to the provisions of Corporations Code §310 (concerning approval of contracts or transactions in which a director has a direct or indirect material financial interest), §311 (concerning appointment of committees), and §317(e) (concerning indemnification of directors). A meeting at which a quorum is initially present may continue to transact business, despite a withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

Even though a quorum is initially present, if the number of directors present at a meeting is reduced to less than a quorum by withdrawal of directors, no further business except adjournment from time to time may be transacted at the meeting until a quorum is present.

Section 10. WAIVER OF NOTICE. Notice of a meeting, although otherwise required, need not be given to any director who (1) either before or after the meeting signs a waiver of notice or a consent to holding the meeting without being given notice, (2) signs an approval of the minutes of the meeting, or (3) attends the meeting without protesting the lack of notice before or at the beginning of the meeting. Waivers of notice or consents need not specify the purpose of the meeting. All waivers, consents, and approvals of the minutes will be filed with the corporate records or made a part of the minutes of the meeting.

12

Bylaws.

 

 

Section 11. ADJOURNMENT TO ANOTHER TIME OR PLACE. Whether or not a quorum is present, a majority of the directors present may adjourn any meeting to another time or place.

 

 

Section 12. NOTICE OF ADJOURNED MEETING. Notice of the time and place of resuming a meeting that has been adjourned need not be given unless the adjournment is for more than 24 hours, in which case notice will be given, before the time set for resuming the adjourned meeting, to the directors who were not present at the time of the adjournment. Notice need not be given in any case to directors who were present at the time of adjournment.

 

 

Section 13. ACTION WITHOUT A MEETING. Any action required or permitted to be taken by the board of directors may be taken without a meeting, if all members of the board of directors individually or collectively consent in writing to that action. The phrase "all members of the board of directors" shall include an "interested director" as described in Corporations Code Section 310(a) or a "common director" as described in Corporations Code Section 310(b) who abstains in writing from providing consent, where (1) the disclosures required by Section 310 have been made to the noninterested or noncommon directors, as applicable, before their execution of the written consent or consents; (2) the specified disclosures are conspicuously included in the written consent or consents executed by the noninterested or noncommon directors; and (3) the noninterested or noncommon directors, as applicable, approve the action by a vote that is sufficient without counting the votes of the interested or common directors. Any action by written consent will have the same force and effect as a unanimous vote of the board of directors. All written consents will be filed with the minutes of the proceedings of the board of directors.

 

 

Section 14. FEES AND COMPENSATION OF DIRECTORS. Directors and members of committees of the board may be compensated for their services, and will be reimbursed for expenses, as fixed or determined by resolution of the board of directors. This section will not be construed to preclude any director from serving the corporation in any other capacity, as an officer, agent, employee, or otherwise, or from receiving compensation for those services.

 

 

**ARTICLE IV**

13

Bylaws.

## COMMITTEES

Section 1. COMMITTEES OF THE BOARD. The board of directors may, by resolution adopted by a majority of the authorized number of directors, designate one or more committees, each consisting of two or more directors. The board may designate one or more directors as alternate members of any committee, to replace any absent member at a committee meeting. The appointment of committee members or alternate members requires the vote of a majority of the authorized number of directors. A committee may be granted any or all of the powers and authority of the board, to the extent provided in the resolution of the board of directors establishing the committee, except with respect to:

(a) Approving any action for which the California Corporations Code also requires the approval of the shareholders or of the outstanding shares;

(b) Filling vacancies on the board of directors or any committee of the board;

(c) Fixing directors' compensation for serving on the board or a committee of the board;

(d) Adopting, amending, or repealing bylaws;

(e) Amending or repealing any resolution of the board of directors that by its express terms is not so amendable or repealable;

(f) Making distributions to shareholders, except at a rate or in a periodic amount or within a price range determined by the board of directors; or

(g) Appointing other committees of the board or their members.


Section 2. MEETINGS AND ACTION OF COMMITTEES. Meetings and action of committees will be governed by, and held and taken in accordance with, bylaw provisions applicable to meetings and actions of the board of directors, with such changes in the context of those bylaws as are necessary to substitute the committee and its members for the board of directors and its members, except that (1) the time of regular meetings of committees may be determined either by resolution of the board of directors or by resolution of the committee; (2) special meetings of committees may also be called by resolution of the board of directors; and (3) notice of special meetings of committees will also be given to all alternative members who will have the right to attend all meetings of the committee. The board of directors may adopt rules for the governance of any committee not inconsistent with these bylaws.


## ARTICLE V

Bylaws.

## OFFICERS

    Section 1. OFFICERS. The officers of the corporation will be a president, a secretary, and a chief financial officer. The corporation may also have, at the discretion of the board of directors, a chairperson of the board, one or more vice presidents, one or more assistant secretaries, one or more assistant treasurers, and such other officers as may be appointed in accordance with *Section 3 of this Article V*. Any number of offices may be held by the same person.

    Section 2. APPOINTMENT OF OFFICERS. The officers of the corporation, except for subordinate officers appointed in accordance with *Section 3 of this Article V*, will be appointed *annually* by the board of directors, and will serve at the pleasure of the board of directors.

    Section 3. SUBORDINATE OFFICERS. The board of directors may appoint, and may empower the *president/specify other officer(s)* to appoint, other officers as required by the business of the corporation, whose duties will be as provided in the bylaws, or as determined from time to time by the board of directors or the president.

    Section 4. REMOVAL AND RESIGNATION OF OFFICERS. Any officer chosen by the board of directors may be removed at any time, with or without cause or notice, by the board of directors. Subordinate officers appointed by persons other than the board under *Section 3 of this Article V* may be removed at any time, with or without cause or notice, by the board of directors or by the officer by whom appointed. Officers may be employed for a specified term under a contract of employment if authorized by the board of directors; such officers may be removed from office at any time under this section, and will have no claim against the corporation or individual officers or board members because of the removal except any right to monetary compensation to which the officer may be entitled under the contract of employment.

    Any officer may resign at any time by giving written notice to the corporation. Resignations will take effect on the date of receipt of the notice, unless a later time is specified in the notice. Unless otherwise specified in the notice, acceptance of the resignation is not necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the corporation to monetary damages under any contract of employment to which the officer is a party.

    Section 5. VACANCIES IN OFFICES. A vacancy in any office resulting from an officer's death, resignation, removal, or disqualification, or from any other cause, will be

Bylaws.

filled in the manner prescribed in these bylaws for regular election or appointment to that office.

    Section 6. CHAIRPERSON OF THE BOARD. The board of directors may elect a chairperson, who will preside, if present, at board meetings and will exercise and perform such other powers and duties as may be assigned from time to time by the board of directors. If there is no president, the chairperson of the board will in addition be the chief executive officer of the corporation, and will have the powers and duties as set forth in *Section 7 of this Article V*.

    Section 7. PRESIDENT. Except to the extent that the bylaws or the board of directors assign specific powers and duties to the chairperson of the board (if any), the president will be the corporation's general manager and chief executive officer and, subject to the control of the board of directors, will have general supervision, direction, and control over the corporation's business and its officers. The managerial powers and duties of the president will include, but are not limited to, all the general powers and duties of management usually vested in the office of president of a corporation, and the president will have other powers and duties as prescribed by the board of directors or the bylaws. The president will preside at all meetings of the shareholders and, in the absence of the chairperson of the board or if there is no chairperson of the board, will also preside at meetings of the board of directors.

    Section 8. VICE PRESIDENTS. If desired, one or more vice presidents may be chosen by the board of directors in accordance with the provisions for electing officers set forth in *Section 2 of this Article V*. In the absence or disability of the president, the president's duties and responsibilities will be carried out by the highest ranking available vice president if vice presidents are ranked or, if not, by a vice president designated by the board of directors. When so acting, a vice president will have all the powers of and be subject to all the restrictions on the president. Vice presidents of the corporation will have such other powers and perform such other duties as prescribed from time to time by the board of directors, the bylaws, or the president (or chairperson of the board if there is no president).

    Section 9. SECRETARY

    (a) *Minutes.* The secretary will keep, or cause to be kept, minutes of all of the shareholders' meetings and of all other board meetings. If the secretary is unable to be present, the secretary or the presiding officer of the meeting will designate another person to take the minutes of the meeting.

16

Bylaws.

The secretary will keep, or cause to be kept, at the principal executive office or such other place as designated by the board of directors, a book of minutes of all meetings and actions of the shareholders, of the board of directors, and of committees of the board. The minutes of each meeting will state the time and place the meeting was held; whether it was regular or special; if special, how it was called or authorized; the names of directors present at board or committee meetings; the number of shares present or represented at shareholders' meetings; an accurate account of the proceedings; and when it was adjourned.

(b) *Record of Shareholders.* The secretary will keep, or cause to be kept, at the principal executive office or at the office of the transfer agent or registrar, a record or duplicate record of shareholders. This record will show the names of all shareholders and their addresses, the number and classes of shares held by each, the number and date of share certificates issued to each shareholder, and the number and date of cancellation of any certificates surrendered for cancellation.

(c) *Notice of Meetings.* The secretary will give notice, or cause notice to be given, of all shareholders' meetings, board meetings, and meetings of committees of the board for which notice is required by statute or by the bylaws. If the secretary or other person authorized by the secretary to give notice fails to act, notice of any meeting may be given by any other officer of the corporation.

(d) *Other Duties.* The secretary will keep the seal of the corporation, if any, in safe custody. The secretary will have such other powers and perform other duties as prescribed by the board of directors or by the bylaws.


Section 10. CHIEF FINANCIAL OFFICER. The chief financial officer will keep, or cause to be kept, adequate and correct books and records of accounts of the properties and business transactions of the corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, retained earnings, and shares. The books of account will at all reasonable times be open to inspection by any director.

The chief financial officer will (1) deposit corporate funds and other valuables in the corporation's name and to its credit with depositaries designated by the board of directors; (2) make disbursements of corporate funds as authorized by the board; (3) render a statement of the corporation's financial condition and an account of all transactions conducted as chief financial officer whenever requested by the president or the board of directors; and (4) have other powers and perform other duties as prescribed by the board of directors or the bylaws.

Unless the board of directors has elected a separate treasurer, the chief financial officer will be deemed to be the treasurer for purposes of giving any reports or executing any certificates or other documents.

Bylaws.

## ARTICLE VI

## INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES, AND OTHER AGENTS

The corporation will, to the maximum extent permitted by the California General Corporation Law, have power to indemnify each of its agents against expenses, judgments, fines, settlements, and other amounts actually and reasonably incurred in connection with any proceeding arising by reason of the fact that any such person is or was an agent of the corporation, and will have power to advance to each such agent expenses incurred in defending any such proceeding to the maximum extent permitted by that law. For purposes of this Article, an "agent" of the corporation includes any person who is or was a director, officer, employee, or other agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise, or was a director, officer, employee, or agent of a corporation that was a predecessor corporation of the corporation or of another enterprise serving at the request of such predecessor corporation.

## ARTICLE VII

## RECORDS AND REPORTS

Section 1. MAINTENANCE OF SHAREHOLDER RECORD AND INSPECTION BY SHAREHOLDERS. The corporation will keep at its principal executive office or at the office of its transfer agent or registrar, as determined by resolution of the board of directors, a record of the names and addresses of all shareholders and the number and class of shares held by each shareholder.

A shareholder or shareholders holding at least 5 percent in the aggregate of the outstanding voting shares of the corporation have the right to do either or both of the following:

(a) Inspect and copy the record of shareholders' names and addresses and shareholdings during usual business hours, on 5 days' prior written demand on the corporation, or

(b) Obtain from the corporation's transfer agent, on written demand and tender of the transfer agent's usual charges for this service, a list of the names and addresses of shareholders who are entitled to vote for the election of directors, and their shareholdings, as of the most recent record date for which a list has been compiled or as of a specified date later than the date of demand. This list will be made available within 5 days after (i) the date of demand or (ii) the specified later date as of which the list is to be compiled.

18

Bylaws.

The record of shareholders will also be open to inspection on the written demand of any shareholder or holder of a voting trust certificate, at any time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or holder of a voting trust certificate. Any inspection and copying under this section may be made in person or by an agent or attorney of the shareholder or holder of a voting trust certificate making the demand.

Section 2. MAINTENANCE AND INSPECTION OF BYLAWS. The corporation will keep at its principal executive office, or if its principal executive office is not in the State of California, at its principal business office in this state, the original or a copy of the bylaws as amended to date, which will be open to inspection by the shareholders at all reasonable times during office hours. If the principal executive office of the corporation is outside the State of California and the corporation has no principal business office in this state, the secretary will, on the written request of any shareholder, furnish to that shareholder a copy of the bylaws as amended to date.

Section 3. MAINTENANCE AND INSPECTION OF MINUTES AND ACCOUNTING RECORDS. The minutes of proceedings of the shareholders, board of directors, and committees of the board, and the accounting books and records, will be kept at the principal executive office of the corporation, or at such other place or places as designated by the board of directors. The minutes and the accounting books and records will be kept either in written form or in a form capable of being converted into written form. The minutes and accounting books and records will be open to inspection on the written demand of any shareholder or holder of a voting trust certificate at any reasonable time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or holder of a voting trust certificate. The inspection may be made in person or by an agent or attorney, and will include the right to copy and make extracts. These rights of inspection will extend to the records of each subsidiary of the corporation.

Section 4. INSPECTION BY DIRECTORS. Every director will have the absolute right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the corporation and each of its subsidiary corporations. This inspection by a director may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

Section 5. ANNUAL REPORT TO SHAREHOLDERS. Inasmuch as, and for as long as, there are fewer than 100 shareholders, the requirement of an annual report to

Bylaws.

shareholders referred to in California Corporations Code §1501 is expressly waived. However, nothing in this provision will be interpreted as prohibiting the board of directors from issuing annual or other periodic reports to the shareholders, as the board considers appropriate.

    Section 6. FINANCIAL STATEMENTS. The corporation will keep a copy of each annual financial statement, quarterly or other periodic income statement, and accompanying balance sheets prepared by the corporation on file in the corporation's principal executive office for 12 months; these documents will be exhibited at all reasonable times, or copies provided, to any shareholder on demand.

    If no annual report for the last fiscal year has been sent to shareholders, on written request of any shareholder made more than 120 days after the close of the fiscal year the corporation will deliver or mail to the shareholder, within 30 days after receipt of the request, a balance sheet as of the end of that fiscal year and an income statement and statement of cash flows for that fiscal year.

    A shareholder or shareholders holding 5 percent or more of the outstanding shares of any class of stock of the corporation may request in writing an income statement for the most recent 3-month, 6-month, or 9-month period (ending more than 30 days before the date of the request) of the current fiscal year, and a balance sheet of the corporation as of the end of that period. If such documents are not already prepared, the chief financial officer will cause them to be prepared and will deliver the documents personally or mail them to the requesting shareholders within 30 days after receipt of the request. A balance sheet, income statement, and statement of cash flows for the last fiscal year will also be included, unless the corporation has sent the shareholders an annual report for the last fiscal year.

    Quarterly income statements and balance sheets referred to in this section will be accompanied by the report, if any, of independent accountants engaged by the corporation or the certificate of an authorized corporate officer stating that the financial statements were prepared from the corporation's books and records without audit.

    Section 7. ANNUAL STATEMENT OF GENERAL INFORMATION.

    (a) The corporation shall file a statement with the Secretary of State on the prescribed form, setting forth the authorized number of directors; the names and complete business or residence addresses of all incumbent directors; the names and complete business or residence addresses of the chief executive officer, the secretary, and the chief financial officer; the street address of the corporation's principal executive office or principal business office in this state; a statement of the general type of business constituting the principal business activity of the corporation; and a designation of the agent of the

20

Bylaws.

corporation for the purpose of service of process, all in compliance with California Corporations Code §1502.

(b) Despite the provisions of paragraph (a) of this section, if there has been no change in the information in the corporation's last statement on file with the Secretary of State's office, the corporation may, in lieu of filing the statement described in paragraph (a) of this section, advise the Secretary of State, on the appropriate form, that no changes in the required information have occurred during the applicable period.


# ARTICLE VIII

## GENERAL CORPORATE MATTERS

Section 1. RECORD DATE FOR PURPOSES OTHER THAN NOTICE AND VOTING. For purposes of determining the shareholders entitled to receive payment of dividends or other distributions or allotment of rights, or entitled to exercise any rights in respect of any other lawful action (other than voting at and receiving notice of shareholders' meetings and giving written consent of the shareholders without a meeting), the board of directors may fix in advance a record date, which will be not more than 60 nor less than 10 days before the date of the dividend payment, distribution, allotment, or other action. If a record date is so fixed, only shareholders of record at the close of business on that date will be entitled to receive the dividend, distribution, or allotment of rights, or to exercise the other rights, as the case may be, despite any transfer of shares on the corporation's books after the record date, except as otherwise provided by statute.

If the board of directors does not so fix a record date in advance, the record date will be at the close of business on the later of (1) the day on which the board of directors adopts the applicable resolution or (2) the 60th day before the date of the dividend payment, distribution, allotment of rights, or other action.


Section 2. AUTHORIZED SIGNATORIES FOR CHECKS. All checks, drafts, other orders for payment of money, notes, or other evidences of indebtedness issued in the name of or payable to the corporation will be signed or endorsed by the person or persons in the manner authorized from time to time by resolution of the board of directors.

Section 3. EXECUTING CORPORATE CONTRACTS AND INSTRUMENTS. Except as otherwise provided in the articles or in these bylaws, the board of directors by resolution may authorize any officer, officers, agent, or agents to enter into any contract or to execute any instrument in the name of and on behalf of the corporation. This authority may be general or it may be confined to one or more specific matters. No officer, agent, employee, or other person purporting to act on behalf of the corporation

Bylaws.

will have any power or authority to bind the corporation in any way, to pledge the corporation's credit, or to render the corporation liable for any purpose or in any amount, unless that person was acting with authority granted by the board of directors as provided in these bylaws, or unless an unauthorized act was later ratified by the corporation.

Section 4. CERTIFICATES FOR SHARES. A certificate or certificates for shares of the capital stock of the corporation will be issued to each shareholder when any of the shares are fully paid.

In addition to certificates for fully paid shares, the board of directors may authorize the issuance of certificates for shares that are partly paid and subject to call for the remainder of the purchase price, provided that the certificates representing partly paid shares will state the total amount of the consideration to be paid for the shares and the amount actually paid.

All certificates will certify the number of shares and the class or series of shares represented by the certificate. All certificates will be signed in the name of the corporation by (1) either the chairperson of the board of directors, the vice chairperson of the board of directors, the president, or any vice president, and (2) either the chief financial officer, any assistant treasurer, the secretary, or any assistant secretary.

None of the signatures on the certificate may be facsimile. If any officer, transfer agent, or registrar who has signed a certificate will have ceased to be that officer, transfer agent, or registrar before that certificate is issued, the certificate may be issued by the corporation with the same effect as if that person were an officer, transfer agent, or registrar at the date of issue.

Section 5. LOST CERTIFICATES. Except as provided in this Section 5, no new certificates for shares will be issued to replace old certificates unless the old certificate is surrendered to the corporation for cancellation at the same time. If share certificates or certificates for any other security have been lost, stolen, or destroyed, the board of directors may authorize the issuance of replacement certificates on terms and conditions as required by the board, which may include a requirement that the owner give the corporation a bond (or other adequate security) sufficient to indemnify the corporation against any claim that may be made against it (including any expense or liability) on account of the alleged loss, theft, or destruction of the old certificate or the issuance of the replacement certificate.

Section 6. SHARES OF OTHER CORPORATIONS: HOW VOTED. Shares of other corporations standing in the name of this corporation will be voted by one of the following persons, listed in order of preference:

*(1) chairperson of the board, or person designated by the chairperson of the board; (2) president, or person designated by the president; (3) first vice president, or person*

Bylaws.

*designated by the first vice president; (4) other person designated by the board of directors.*

The authority to vote shares granted by this section includes the authority to execute a proxy in the name of the corporation for purposes of voting the shares.

Section 7. REIMBURSEMENT OF CORPORATION IF PAYMENT NOT TAX DEDUCTIBLE. If all or part of the compensation, including expenses, paid by the corporation to a director, officer, employee, or agent is finally determined not to be allowable to the corporation as a federal or state income tax deduction, the director, officer, employee, or agent to whom the payment was made will repay to the corporation the amount disallowed. The board of directors will enforce repayment of each such amount disallowed by the taxing authorities.

Section 8. CONSTRUCTION AND DEFINITIONS. (a) Unless the context requires otherwise, the general provisions, rules of construction, and definitions in California Corporations Code §§1–195 govern the construction of these bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

(b) Unless otherwise provided in these bylaws, and subject to any guidelines and procedures that the board may adopt from time to time, the terms "written" and "in writing" as used in these bylaws include any form of recorded message in the English language capable of comprehension by ordinary visual means and may include electronic transmissions such as facsimile or e-mail provided that (i) for electronic transmissions from this corporation, this corporation has obtained an unrevoked written consent from the recipient to the use of those means of communication; (ii) for electronic transmissions to this corporation, this corporation has in effect reasonable measures to verify that the sender is the individual purporting to have sent the transmission; and (iii) the transmission creates a record that can be retained, retrieved, reviewed, and rendered into clearly legible tangible form.

## ARTICLE IX

## AMENDMENTS

23

Bylaws.

   Section 1. AMENDMENT OF BYLAWS. No bylaw may be amended or repealed, and no new bylaw may be adopted, except by approval of a majority of the outstanding shares entitled to vote.

   Despite the provisions of the first sentence of this section, bylaws on the following matters may be adopted, amended, or repealed by the vote of a majority of a quorum of the board of directors: *List matters on which board may amend, repeal, or adopt bylaws without shareholder approval*.

# CERTIFICATE

This is to certify that the foregoing is a true and correct copy of the bylaws of the corporation named in the title thereto and that such bylaws were duly adopted by the board of directors of the corporation on the date set forth below.

Dated: _____

_____, Secretary

# Exhibit **D**



P.O. Box 15284
Wilmington, DE 19850

BANK OF AMERICA
Preferred Rewards
For Business

**Customer service information**

📱 1.888.BUSINESS (1.888.287.4637)

✉ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

CAMIWELL INC
2269 ROBINWOOD COURT
MISSISSAUGA
ON L5M 5B9
CANADA

 Please see the **Important Messages - Please Read** section of your statement for important details that could impact you.

# Your Business Advantage Savings
# Preferred Rewards for Bus Platinum Honors

for September 1, 2023 to September 30, 2023                Account number: 3251 1222 0628

**CAMIWELL INC**

## Account summary

| | | |
|---|---|---|
| Beginning balance on September 1, 2023 | $1,102,555.61 | # of deposits/credits: 1 |
| Deposits and other credits | 24.78 | # of withdrawals/debits: 9 |
| Withdrawals and other debits | -1,024,963.73 | # of days in cycle: 30 |
| Service fees | -75.00 | Average ledger balance: $753,862.06 |
| **Ending balance on September 30, 2023** | **$77,541.66** | Average collected balance: $753,862.06 |

*Annual Percentage Yield Earned this statement period: 0.04%.*
*Interest Paid Year To Date: $318.32.*



## Account security you can see

Check your security meter level and watch it rise as you take action to help protect against fraud. See it in the Mobile Banking app and Online Banking.

To learn more, visit **bofa.com/SecurityCenter** or **scan this code**.

When you use the QRC feature, certain information is collected from your mobile device for business purposes. Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.

SSM-12-22-0030A I 5197654



# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2023 Bank of America Corporation

**Bank of America, N.A. Member FDIC and**   **Equal Housing Lender**



**Your savings account**

CAMIWELL INC | Account # 3251 1222 0628 | September 1, 2023 to September 30, 2023

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 09/29/23 | Interest Earned | 24.78 |
| **Total deposits and other credits** | | **$24.78** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 09/08/23 | WIRE TYPE:WIRE OUT DATE:230908 TIME:1353 ET TRN:2023090800400475 SERVICE REF:476829 BNF:JINJU ZHANG ID:700433998 BNF BK:JPMORGAN CHASE  BANK, N. ID:0002 PMT DET:JXGPT628A POP Other SETT LEMENT FEE from camiw//ell inc | -353,000.00 |
| 09/26/23 | WIRE TYPE:INTL OUT DATE:230926 TIME:1458 ET TRN:2023092600433620 SERVICE REF:480402 BNF:SCINALL INC ID:397820014770173 BNF BK:BANK OF MONTREAL, THE ID:BOFMCAM2 PMT DET:FYY68ZS8X POP Se rvices | -162,500.00 |
| 09/27/23 | WIRE TYPE:BOOK OUT DATE:230927 TIME:1634 ET TRN:2023092700486200 RELATED REF:BML230927-004548 BNF:COMMISSIONS ID:0000000157544 PMT DET:/ACC/BML2 30927-004548 INVESTIGATION//CHARGES EXTREF/GIN/L23 09270045480//01 | -25.00 |
| 09/28/23 | BKOFAMERICA BC  09/28 #000001180 TO SAV 1263 N Military R  Niagara Falls NY | -309,438.73 |
| 09/28/23 | BKOFAMERICA BC  09/28 #000001182 TO SAV 1263 N Military R  Niagara Falls NY | -200,000.00 |
| **Total withdrawals and other debits** | | **-$1,024,963.73** |

## Service fees

| Date | Transaction description | Amount |
|------|-------------------------|--------|
| 09/08/23 | Wire Transfer Fee | -30.00 |
| 09/26/23 | Wire Transfer Fee | -45.00 |
| 09/28/23 | Prfd Rwds for Bus-Stop Pymt Fee Waiver of $30 | -0.00 |
| 09/28/23 | Prfd Rwds for Bus-Stop Pymt Fee Waiver of $30 | -0.00 |
| **Total service fees** | | **-$75.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

BANK OF AMERICA BUSINESS ADVANTAGE

## Start receiving online alerts today

Get alerts about your account activity online, by phone or by email. Turn on alerts at **bankofamerica.com/SmallBusiness** by clicking on **Alerts** in the Activity Center.

You may elect to receive alerts via text or email. Bank of America does not charge for this service, but your mobile carrier's message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.    SSM-01-23-2633.B | 5421083

CAMIWELL INC   |   Account # 3251 1222 0628   |   September 1, 2023 to September 30, 2023

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|------------|------|-----------|------|------------|
| 09/01 | 1,102,555.61 | 09/26 | 586,980.61 | 09/28 | 77,516.88 |
| 09/08 | 749,525.61 | 09/27 | 586,955.61 | 09/29 | 77,541.66 |

## Important Messages - Please Read

We want to make sure you stay up-to-date on changes, reminders, and other important details that could impact you.

**Good news about our small business savings accounts**

On August 14, 2023, we stopped converting our small business savings accounts to checking accounts for frequent withdrawals and transfers.

Keep in mind, using your small business savings account for frequent transactions can make it hard to build your assets – please use a Bank of America business checking account for everyday business expenses and withdrawals.

If you have any questions, want to discuss your savings goals or learn more about other accounts, schedule an appointment with one of our specialists at bankofamerica.com/bizappointment or contact your relationship manager.

This page intentionally left blank

Exhibit **E**

 **Government of Canada** **Gouvernement du Canada**

Canada.ca  ➜  Innovation, Science and Economic Development Canada  ➜  Corporations Canada

➜  Search for a Federal Corporation

---

## Federal Corporation Information - 1082002-4

⚠ Beware of scams and other suspicious activities. See Corporations Canada's alerts.

ℹ **Note**

This information is available to the public in accordance with legislation (see Public disclosure of corporate information).

[ Order copies of corporate documents ]

**Corporation Number**
1082002-4

**Business Number (BN)**
750839912RC0001

**Corporate Name**
Scinall Inc.

**Status**
Active

**Governing Legislation**
*Canada Business Corporations Act* - 2018-06-01

Order a Corporate Profile [View PDF Sample] [View HTML Sample].
Find existing extra-provincial registrations of this corporation on Canada's Business registries  ℹ

## Registered Office Address

90 Burnhamthorpe Road West,
Sussex Centre, Suite 1400

Mississauga ON L5B 3C3
Canada

>  **Note**
>
> Active CBCA corporations are required to update this information within 15 days of any change. A corporation key is required. If you are not authorized to update this information, you can either contact the corporation or contact Corporations Canada. We will inform the corporation of its reporting obligations.

## Directors

**Minimum**   1
**Maximum**   10

HONG LIN
2269 Robinwood Court
Mississauga ON L5M 5B9
Canada

BENLIN YUAN
2269 Robinwood Court
Mississauga ON L5M 5B9
Canada

>  **Note**
>
> Active CBCA corporations are required to update director information (names, addresses, etc.) within 15 days of any change. A corporation key is required. If you are not authorized to update this information, you can either contact the corporation or contact Corporations Canada. We will inform the corporation of its reporting obligations.

## Individuals with significant control

**Current individuals with significant control:**  2

BENLIN YUAN

2269 Robinwood Court
Mississauga ON L5M 5B9
Canada

**Type of interest or control:**

Owns, controls or directs 25% or more of shares

**This individual holds the shares:**

Directly

**This individual is an individual with significant control over the corporation:**

Individually

**This individual holds:**

At least 25% and up to 50% of the shares

**Start date (YYYY-MM-DD):**

2018-06-01

---

HONG LIN

2269 Robinwood Court
Mississauga ON L5M 5B9
Canada

**Type of interest or control:**

Owns, controls or directs 25% or more of shares

**This individual holds the shares:**

Directly

**This individual is an individual with significant control over the corporation:**

Individually

**This individual holds:**

At least 25% and up to 50% of the shares

**Start date (YYYY-MM-DD):**

2018-06-01

---

## ⓘ Note

Active CBCA corporations are required to update this information annually (with their annual return) and within 15 days of a change in their ISC register via the Online Filing Centre. A corporation key is required. If you are not authorized to

update this information, you can contact either the corporation or Corporations Canada. We will inform the corporation of its reporting obligations.

# Annual Filings

**Anniversary Date (MM-DD)**
06-01

**Date of Last Annual Meeting**
2024-07-17

**Annual Filing Period (MM-DD)**
06-01 to 07-31

**Type of Corporation**
Non-distributing corporation with 50 or fewer shareholders

**Status of Annual Filings**
2024 - Filed
2023 - Filed
2022 - Filed

# Corporate History

**Corporate Name History**

2018-06-01 to Present                                    Scinall Inc.

**Certificates and Filings**

**Certificate of Incorporation**
2018-06-01

Order copies of corporate documents

Start New Search

**Date Modified:**

2024-07-17