James Cai (SBN 200189)
jcai@sacattorneys.com
Brian A. Barnhorst (SBN 130292)
bbarnhorst@sacattorneys.com
Dennis Chin (SBN 236466)
dchin@sacattorneys.com
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: 408-436-0789
Attorneys for Plaintiff and Counter-Defendant
Jinju Zhang

John Chu (SBN 104302)
Corporate Counsel Law Group, LLP
25 Kearny Street, Suite 302
San Francisco, CA 94108-5515
Telephone:  415-989-5300
Fax:  415-788-4315
Email:  jchu149@yahoo.com
Attorneys for Defendants Benlin Yuan and Hong
Lin, and Counterclaimant Benlin Yuan

Bing Ryan (SBN 228641)
Zhang Law Group
2950 Buskirk Avenue, Suite 300
Walnut Creek, CA 94597
Telephone:  925-257-3097
Email:  bzhanglaw@gmail.com
Attorneys for Defendants Benlin Yuan, Hong Lin
and Counterclaimant Benlin Yuan

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINJU ZHANG, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>BENLIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEIJING ASIACOM TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1 to 20, inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No.: 3:23-cv-05818-VC<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>Date:  April 15, 2025<br>Time:  10:00 a.m.<br>Location:  Courtroom 4, 17th Floor |

Pursuant to the Standing Order for Civil Trials Before Judge Chhabria of the United States District Court Northern District of California, Plaintiff and Counterclaim Defendant Jinju Zhang ("Plaintiff") and Defendants and Counterclaimants Benlin Yuan and Hong Lin (collectively "Defendants") hereby submit this Joint Pretrial Conference Statement.

## I.    BRIEF DESCRIPTION OF ALL REMAINING CLAIMS AND DEFENSES TO BE DECIDED

### A.    PLAINTIFF'S REMAINING CLAIMS

#### 1.    Conversion

This cause of action was brought derivatively by Camiwell, Inc. against Defendants Yuan and Lin. After Plaintiff accepted the 998 offers from Defendants Yuan and Lin, and Camiwell, Inc. in the state case, Defendants substantially interfered with Camiwell, Inc.'s ownership and possession of $671,938 by knowingly withdrawing almost $671,938 from Camiwell, Inc.'s Bank of America account without knowledge or consent of the Board of Directors as follows:

a. $162,500 transfer to a Canadian company controlled by Yuan called Scinal Inc., Canada;

b. $200,000 in the form of a cashier's check payable to an unknown recipient; and

c. $309,438 in the form of cashier's check payable to an unknown recipient.

As a direct and proximate result of Defendants Yuan and Lin's conducts, Camiwell, Inc. has been damaged in an amount of at least $671,938. Defendants Yuan and Lin's conducts were a substantial factor in causing Plaintiff's damage. In engaging in the above conduct, Defendants Yuan and Lin acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish said Defendants and to deter such conduct.

#### 2.    Breach of Fiduciary Duty

This cause of action was brought derivatively by Camiwell U.S., and individually by Plaintiff Jinju Zhang, against Defendants Yuan and Lin. As members of the Board Directors of Camiwell U.S., Defendants Yuan and Lin owed to the company and to its shareholders, including Plaintiff, a fiduciary duty of loyalty. Defendants Yuan and Lin breached their fiduciary duties by dissolving the company without requisite shareholder approval and misappropriating corporate assets of

Camiwell U.S. when Defendant Yuan withdrew $671,938 from Camiwell U.S.'s account at Bank of America, without justification or authority, and without knowledge or consent of the Board of Directors. As a direct and proximate result of Defendants Yuan and Lin's conducts, Camiwell U.S. has been damaged in an amount of at least $671,938. Defendants Yuan and Lin's conducts were substantial factors in causing Plaintiff's damage. In engaging in the above conduct, Defendants Yuan and Lin acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish said Defendants and to deter such conduct.

        3.    <u>Declaratory Relief</u>

        Plaintiff sought declaratory relief as a dispute presently exists between the parties as to who is entitled to the funds in the Bank of America accounts. A judicial determination is therefore necessary to establish rightful ownership of the funds.

    B.    **DEFENDANTS' DEFENSES**

        **1. Conversion**

    In the State Action, Plaintiff asserted an accounting claim against Camiwell and a claim demanding Camiwell to provide books and records for inspection. The State Complaint did not limit the accounting and the books and records claims to assets allegedly misappropriated by Defendants or documents relating to those assets. Instead, during discovery of the State Action, Plaintiff sought documents relating to (1) the valuation of Camiwell; (2) all shareholder distributions concerning both Camiwell, LLC and Camiwell; and (3) Camiwell, LLC and Camiwell's entire accounting records.

    Plaintiff was no longer entitled to receive any remaining cash balance of Camiwell after the parties settled all claims in the State Action and Plaintiff received the settlement payment of $353,000 from Camiwell. The settlement payment of $353,000 represented Camiwell's final shareholder distribution to Plaintiff in resolution of his books and records and accounting claims against Camiwell. After Plaintiff settled his accounting claim with Camiwell, he had no further rights to more distributions from the pool of funds that were subject to the State Action litigation. Plaintiff was not damaged by Defendants' withdrawing their own shareholder distributions from Camiwell's bank accounts. Judgment on the conversion claim must be entered in favor of Defendants.

### 2. Breach of Fiduciary Duty

Defendants did not breach their duty to Plaintiff by withdrawing their own shareholder distributions from Camiwell's bank account. After Camiwell paid Plaintiff $353,000 to settle the accounting claim and the books and records inspection claim, the remaining funds deposited in Camiwell's bank accounts were available for distribution to Defendants.

As of the end of August 2023, the corporation had been out of business for over four years and there was no reason why the remaining corporate funds should not have been distributed to its shareholders. Plaintiff had already received his share through the Section 998 judgment; there is no reason why Defendants should not have received their share as well. Importantly, Yuan also left $211,901.61 in the company's bank accounts and later offered this amount to Plaintiff. Yuan's withdrawals did not damage either the corporation or Plaintiff. Yuan did not take more than the portion of the fund to which he and his wife would have been entitled to receive anyway.

Based on the above-stated reasons and relevant evidence, judgment on the fiduciary duty claims must be entered in favor of Defendants and against Plaintiff.

### 3. Declaratory Relief

As stated above, Plaintiff has no rights to the Camiwell's funds that were interpleaded with the Court. The Court must order the funds to be returned to Camiwell for the corporation's disposition in accordance with California law.

Defendants also believe that the State Action judgment precludes Plaintiff from bringing any claims against Defendants and that the following extrinsic evidence shows that the $353,000 constituted Plaintiff's full and final share distribution:

- The amount of Yuan and Lin's alleged diversion of assets and misappropriation of corporate business opportunities was liquidated at $50,000. If the accounting had been limited only to distribution of Plaintiff's share of the misappropriated funds, his distribution would have been 30% or 35% of $50,000, not $353,000.

- The parties had already spent over three years in litigation in the State Action and one of the issues litigated as whether Plaintiff was a 30% or 35% shareholder. If the parties had truly contemplated that Plaintiff would receive more funds after the $353,000, they certainly would have recited a resolution in the judgment, indicating whether he was a 30% or 35% shareholder to avoid litigating this issue again.

- Discovery in the State Case included discovery pertaining to Plaintiff's entitlement to all of Camiwell's funds, not just the funds recovered from Defendants.

- Yuan calculated the $353,000 offer based on Plaintiff receiving approximately 35% of *all* funds available for distribution at the time (after deducting necessary expenses and prior distribution to Plaintiff and his spouse).

- The corporation had been out of business since 2019, and there was nothing left to do except to disburse all of the remaining funds after a Court determination of how much each of the shareholders were entitled to receive.

## C.    COUNTERCLAIMAINTS' CLAIMS

Plaintiff's State Action breach of fiduciary duty and unfair competition causes of action against Defendants were brought derivatively on behalf of Camiwell. His "First Cause of Action" is entitled "*Derivative* Claim for Breach of Fiduciary Duty." His Second Cause of Action is entitled "*Derivative* Claim for Unfair Competition." Both causes of action alleged that it was Camiwell, Inc. who was the party directly injured by Defendants' alleged malfeasance, not Plaintiff. State Case Complaint ¶¶ 27-36.

Defendants' Section 998 offer judgment resolved the causes of action alleged against them, both of which were derivative claims brought on behalf of Camiwell. Plaintiff has no basis upon which to contend that the $50,000 judgment against Defendants was his personal judgment for which he was entitled to a personal recovery. Plaintiff must return the funds to Camiwell.

## D.    COUNTERCLAIM DEFENDANT'S DEFENSES

Yuan's Third Amended Shareholder Derivative Counterclaim for Turnover lack merit. He contends the $50,000 that Plaintiff accepted in the state court case is a recovery from Camiwell. The evidence will show that Yuan and Lin made the $50,000 offer to Plaintiff to settle the personal claims against them, to which Plaintiff accepted. Additionally, Yuan's derivative claim on behalf of Camiwell lacks merit because he failed to satisfy the requirements of filing a derivative lawsuit by failing to make a demand on behalf of the shareholders of Camiwell before filing the derivative counterclaim, and it would not have been futile as both he and Lin own a majority of the shares of Camiwell.

## II.    STATEMENT OF ALL RELIEF SOUGHT

### A.    PLAINTIFF'S RELIEF SOUGHT

Plaintiff is seeking damage in the amount of $671,938 which should be deposited back into Camiwell, Inc.'s Bank of America account.

### B.    COUNTERCLAIMANT'S RELIEF SOUGHT

Defendants ask that this Court enter judgment in favor of Defendants, including declaratory relief that Plaintiff has no interest in the Camiwell's interpleaded funds and that such funds be returned to Camiwell. Defendants further ask that the Court order Plaintiff to return $50,000 to Camiwell as well.

## III.    STATEMENT OF ALL RELEVANT STIPULATED AND UNDISPUTED FACTS

### A. PLAINTIFF'S DISPUTED FACTS

1.    In September 2023 after Plaintiff accepted the 998 offers of compromise from Yuan and Lin for $50,000 and Camiwell for $353,000, Yuan and Lin filed a certificate of election to wind up and dissolve Camiwell U.S. without Zhang's knowledge or consent, and Yuan made three separate and unauthorized withdrawals from Camiwell U.S.'s Bank of America account no. 3251 1222 0628 totaling $671,938 without the knowledge or consent of the Board of Directors.  These transactions were as follows:

        a.    $162,500 transfer to a Canadian company controlled by Yuan called Scinal Inc., Canada;

        b.    $200,000 in the form of a cashier's check payable to an unknown recipient;

        c.    $309,438 in the form of cashier's check payable to an unknown recipient.

2.    Yuan did not comply with the requirements in filing a Third Amended Derivative

Counterclaim for Turnover. Yuan testified at deposition that he did not make a demand on behalf of the Board of Directors of Camiwell before filing the derivative counterclaim that Zhang return $50,000 to Camiwell, and such demand would not have been futile as both he and his wife Lin own a majority of the shares of Camiwell and they hold 2 out of 3 board seats.

**B. DEFENDANTS' DISPUTED FACTS**

Plaintiff and Defendants formed Camiwell, LLC, a Delaware limited liability company, in 2014. Yuan owned 40% of Camiwell, LLC. Plaintiff and Lin each owned 30%. Camiwell, LLC was formed to service the U.S. clients of Beijing Asiacom Technology Co., Ltd. ("Beijing Asiacom"). The company operated profitably until 2018 with Beijing Asiacom being its only customer. In 2018, Beijing Asiacom sought to acquire Camiwell, LLC and instructed the shareholders to convert Camiwell, LLC to a California corporation. During the conversion, Lin agreed to transfer 5% of her shares to Plaintiff if the acquisition went smoothly. The acquisition fell through because Beijing Asiacom could not reach an agreement with Plaintiff. Beijing Asiacom stopped sending work to Camiwell. By early 2019, Camiwell ran out of work. By mid-2019, Camiwell was liquidated with a cash balance of $1.4 million.

Yuan reached out to Plaintiff to dissolve Camiwell and to disburse the remaining cash to the three shareholders in 2019. Plaintiff filed a complaint (the "State Complaint") against Camiwell and Defendants in Santa Clara Superior Court (Case No.: 20CV368535, the "State Action"). Plaintiff alleged that Defendants misappropriated assets from Camiwell and asserted two derivative claims against Defendants: Breach of fiduciary duty and unfair competition. Plaintiff also asserted two direct claims against Camiwell: Violation of Corporations Code §§ 1601 and 1602 (books and records inspection) and accounting. The parties litigated the State Action for about three years. On August 29, 2023, Defendants made a CCP Section 998 offer to Plaintiff for $50,000. Camiwell made a CCP Section 998 offer to Plaintiff for $353,000. On August 31, 2023, Camiwell had $1,287,021.56 cash balance in its three bank accounts. Camiwell still owed various third parties $115,773.90. Plaintiff and his wife had previously received a combined salary and employee benefits with an estimated $150,000. Defendants never received any salary or employee benefits. Based on the previous agreement among the parties, the $150,000 distribution should be deducted from Plaintiff's final distribution. On

September 6, 2023, the parties in the State Action conducted a Mandatory Settlement Conference. During the conference, Plaintiff's then counsel informed Defendants that Plaintiff accepted the two Section 998 offers. Plaintiff refused to enter into a settlement agreement. Defendants paid Plaintiff the two settlement amounts on September 8, 2023. A judgement was later entered for the State Action.

Believing that the remaining cash balance deposited in Camiwell's bank accounts represented Defendants' share of distribution, Yuan withdrew $162,000 from Camiwell's Bank of America account on September 26, 2023. Yuan was then informed by the Bank of America that Plaintiff changed the password of Camiwell's Bank of America account and the email address associated with that account. Yuan withdrew $309,438.73 and $200,000 on September 28, 2024 and left $211,901.61 in Camiwell's bank accounts. Plaintiff disputed that the two Section 998 payments extinguished his right to receive shareholder distributions from the remaining Camiwell fund.

## IV.    QUESTIONS OF FACT REMAINING IN THE CASE

### A. PLAINTIFF'S POSITION

The following questions of fact remain in the case:

1. Did Plaintiff authorize the dissolution of Camiwell, Inc.?
2. Was Plaintiff's authorization required for the dissolution of Camiwell, Inc.?
3. Are Yuan and Lin entitled to withhold the amount of $671,938 from Plaintiff?
4. Does Plaintiff have 35% ownership in Camiwell, Inc.?
5. Is Yuan entitled to the $50,000 in his Third Amended Derivative Counterclaim for Turnover?

### B. PLAINTIFF'S POSITION

- Whether Lin transferred 5% of her shares to Plaintiff.
- Whether the accounting claim that Plaintiff filed against Camiwell in the State Action only included the assets allegedly misappropriated by Defendants or included all assets of Camiwell.
- Whether Plaintiff is entitled to any portion of the remaining cash balance as deposited in Camiwell's bank accounts after Plaintiff received the $353,000 in September 2023.

## V.    LIST OF WITNESSES TO BE CALLED AT TRIAL

### A.    PLAINTIFF'S WITNESSES

The following witness are expected to testify but not limited to what is stated below:

1.    Plaintiff Jinju Zhang.  Plaintiff's testimony is expected to last anywhere from 2.0 to 2.5 hours of testimony on direct.  2 to 2.5 hours on cross-examination.  Plaintiff is expected to testify that Yuan, Lin, and he are officers and directors of Camiwell, Inc., an information technology company based in Santa Clara. Yuan was a shareholder with a 40% interest, Lin with 25%, and Plaintiff with 35%. In July 2020, Plaintiff sued Yuan and Lin in state court for breach of fiduciary duty, unfair competition, violation of corporations code sections 1601 and 1602, and accounting.  In September 2023, Plaintiff accepted the 998 offers of compromise from Yuan and Lin for $50,000 and Camiwell for $353,000. When Zhang accepted the 998 offers, he never gave up his ownership interest in Camiwell Inc.  His rights to Camiwell were never extinguished at any time.

After the acceptances of the offers, Yuan and Lin filed a certificate of election to wind up and dissolve Camiwell U.S. without Zhang's knowledge or consent, and Yuan made three separate and unauthorized withdrawals from Camiwell U.S.'s Bank of America account no. 3251 1222 0628 totaling almost $672,000 without knowledge or consent by the Board of Directors.  These transactions were as follows:

a.    $162,500 transfer to a Canadian company controlled by Yuan called Scinal Inc., Canada;

b.    $200,000 in the form of a cashier's check payable to an unknown recipient;

c.    $309,438 in the form of cashier's check payable to an unknown recipient.

2.    Helen Hu – Ms. Hu is Plaintiff's wife.  Ms. Hu's testimony is expected to last anywhere from 1 to 1.5 hours of testimony on direct and 0.5 to 1 hour on cross-examination.

Ms. Hu is expected to testify that she was planning to quit working at Camiwell, Inc. but Yuan and Lin wanted to have her continue working for the company, so they offered her $150,000 to which she accepted.  The $150,000 that she received was not a part of the profit sharing.

3.    Chenying Fan.  Ms. Fan was the outside CPA for Camiwell, Inc.  She suffers from severe motion sickness.  See **Exhibit A,** doctor's note from Angela Li, PA-C of Sutter Health dated

1  March 25, 2025. She lives in Palo Alto and cannot travel more than 10 minutes without suffering from
2  such illness. Ms. Fan has requested to appear remotely via zoom. Ms. Fan's testimony is expected to
3  last anywhere from 0.5 to 1.0 hours on direct, and 0.5 hour on cross-examination.

4          Ms. Fan is expected to testify that Yuan as CEO of Camiwell reviewed and approved the
5  contents of the tax returns of the company, and that Yuan authorized Ms. Fan to file the tax returns which
6  state that Zhang has a 35% ownership in Camiwell, Inc.

7          4.    Hui Sun – Ms. Sun was the Chief Financial Officer ("CFO") of Camiwell, Inc.
8  Ms. Sun's testimony is expected to last anywhere from 0.5 to 1.0 hours on direct, and 0.5 hour on cross-
9  examination.

10          As CFO of Camiwell, Inc., Ms. Sun gave data to Chenying Fan to prepare tax returns for
11  Camiwell, Inc. in which Ms. Sun gave to Yuan for approval. She is also expected to testify that the two
12  withdrawals were shareholder withdrawals, not accounts payable. Yuan took money out of the company
13  without reason.

14          5.    Marie Quashnock. Ms. Quashnock was the attorney for Yuan, Lin, and Camiwell,
15  Inc. in the state court case. Ms. Quashnock's testimony is expected to last anywhere from 0.5 to 1.0
16  hours on direct, and 0.5 to 1.0 hour on cross-examination.

17          Ms. Quashnock is expected to testify that the documents associated with Zhang's
18  acceptance of the 998 offers from Camiwell, Inc., Yuan, and Lin in the state court case speak for
19  themselves and Zhang's acceptance of the 998 offers do not state that he gave up his ownership in
20  Camiwell, Inc. She is expected to testify that she demanded Yuan to return $672,000 back to the
21  company account.

22          6.    Padmini Cheruvu – Ms. Cheruvu was the attorney for Plaintiff in the state court
23  case. Ms. Cheruvu's testimony is expected to last anywhere from 0.5 to 1.0 hours on direct, and 0.5 to
24  1.0 hour on cross-examination.

25          Ms. Cheruvu is expected to testify Zhang's acceptance of the 998 offers in the state court
26  case from Camiwell, Inc., Yuan, and Lin did not extinghish Zhang's ownership interest in Camiwell.
27  Ms. Cheruvu will also testify that she received a document from a file share link from Ms. Quashnock in
28  the state court case that evidences Defendant Lin's transfer of 25,000 shares of common stock of the

Company (representing 5% of total shares) to Zhang though a Share Transfer Agreement fully executed.

### B.    DEFENDANTS' WITNESS

####       1.    Benlin Yuan

Yuan will testify that:

(1) Camiwell's bank balances totaled $1,494,003.94 as of June 30, 2019 when he first asked Plaintiff to dissolve the company;

(2) None of the three shareholders received any shareholder distribution from the date that Camiwell was formed on June 18, 2018 to July 20, 2020, the date that Plaintiff commenced the State Action;

(3) On July 20, 2020, the day that Plaintiff commenced the State Action, Camiwell's balances in its three bank accounts totaled $1,446,151.59;

(4) None of the three shareholders received any shareholder distribution during the State Action litigation;

(5) When the judgement concerning the two Section 998 offers was entered, Camiwell's bank accounts totaled $1,287,021.56 (as of Aug 31, 2023). The main expenses incurred from July 2020 to August 2023 were attorney fees for Camiwell;

(6) After the $353,000 payment to Plaintiff and Defendants' three withdrawals totaling $671,938.78, the rest of Camiwell's funds were deposited with the Court by Bank of America.

(7) Yuan received and responded to various discovery requests from Plaintiff relating to the valuation, accounting records, and shareholder distribution of Camiwell LLC and Camiwell in the State Action.

(8) The issue whether Plaintiff owned 30% or 35% of Camiwell was in dispute in the State Action. Yuan calculated the amount of Camiwell's Section 998 offer of $353,000 as his best good faith estimate of the full amount to which Plaintiff would be entitled to receive on the assumption that he was a 35%, and not a 30% shareholder, to make the offer more attractive.

Yuan's testimony is expected to last anywhere from 2.0 to 2.5 hours of testimony on direct. 2.0-2.5 hours on cross-examination.

## VI.    ESTIMATED TOTAL LENGTH OF TRIAL

**A. PLAINTIFF'S ESTIMATE**

Plaintiff estimates the total length of trial to be 3-4 days.

**B. DEFENDANTS' ESTIMATE**

Defendants anticipate that the trial will last for about 2-3 trial days. This schedule assumes that the Court will be in session for full days during the trial days. Defendants have made this estimate with a consideration that a Chinese interpreter will be needed for the testimonies.

Dated: _____ April 1, 2025__                          SAC Attorneys, LLP

                                                        /s/ James Cai
                                                        James Cai, Esq.
                                                        Brian Barnhorst, Esq.
                                                        Dennis Chin, Esq.
                                                        Attorneys for Plaintiff and Counterclaim
                                                        Defendant Jinju Zhang

Dated: _____ April 1, 2025____                      Corporate Counsel Law Group, LLP

                                                        /s/ John Chu
                                                        John Chu, Esq.
                                                        Attorney for Defendants Benlin Yuan and
                                                        Hong Lin, and Counterclaimant Benlin
                                                        Yuan

Dated: _____ April 1, 2025_____                     Zhang Law Group

                                                        /s/ Bing Ryan
                                                        Bing Ryan, Esq.
                                                        Attorney for Defendants Benlin Yuan and
                                                        Hong Lin, and Counterclaimant Benlin
                                                        Yuan

Exhibit A

Name: Chenying Fan |                    | Legal Name: Chenying Fan

 Sutter Health

SUTTER INTERNAL MEDICINE - MOUNTAIN VIEW
701 E EL CAMINO REAL
MOUNTAIN VIEW CA 94040
Phone: 650-934-7808
Fax: 650-934-7835

March 25, 2025

To Whom it May Concern:

Re: Chenying Fan

This is to certify that Ms. Fan is under my professional care and was seen in my office March 25, 2025. Please provide appropriate accomodation in order for the patient to testify through video at home due to severe motion sickness in relation to operating motor vehicles. Feel free to contact our office if you have any questions or concerns.

Best,

Angela Li, PA-C
Internal Medicine
Mountain View Clinic

| | Page 1 of 1 |
|---|---|
| MRN: 58107394 | |

MyChart® licensed from Epic Systems Corporation© 1999 - 2025