James Cai (SBN 200189)
jcai@sacattorneys.com
Brian A. Barnhorst (SBN 130292)
bbarnhorst@sacattorneys.com
Dennis Chin (SBN 236466)
dchin@sacattorneys.com
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff and Counter-Defendant Jinju Zhang

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINJU ZHANG, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>BENLIN YUAN, an individual; HONG LIN, an individual; CAMIWELL, INC., a California corporation; CAMIWELL, INC. (CANADA), a Canadian corporation; BEIJING ASIACOM TECHNOLOGY CO., LTD., a Chinese corporation; ASIACOM AMERICAS, INC., a Virginia corporation; BANK OF AMERICA CORPORATION, a National Association; and DOES 1 to 20, inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No.: 3:23-cv-05818-VC<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>Date: April 28, 2025<br>Time: 10:00 a.m.<br>Location: Courtroom 4, 17th Floor |

Pursuant to the Standing Order for Civil Trials Before Judge Chhabria of the United States District Court Northern District of California, Plaintiff and Counterclaim Defendant Jinju Zhang submits this trial brief.

## I.   INTRODUCTION

This case is about Defendants Benlin Yuan ("Yuan") and Hong Lin ("Lin")(collectively, "Defendants") looting the Camiwell, Inc. after Plaintiff Jinju Zhang ("Plaintiff") accepted two 998 offers of compromise from Defendants Yuan and Lin in the amount of $50,000 and from Camiwell, Inc. for $353,000.  On September 28, 2023 (less than a week after the 998 offers were accepted), Yuan and Lin filed a Certificate of Election to Wind Up and Dissolve Camiwell, Inc.. without calling for shareholder meeting or Plaintiff's knowledge or consent in violation of California Corporations Code Sections 1900 and 601, and Camiwell's Bylaws Article II Sction 14 (a) (The following decisions would need the written consent or affirmative vote of the holders of **at least seventy percent (70%) of the common stock of the Corporation**, and any such act or transaction entered into without such consent or vote shall be null and void ab initio, and of no force or effect: (a) liquidate, dissolve or wind-up the business and affairs of the Corporation, effect any merger or consolidation or any other deemed liquidation event, or consent to any of the foregoing.  (emphasis added).

Next, Yuan made three separate and unauthorized withdrawals totaling almost $671,938 from Camiwell, Inc.'s account at Bank of America (account number 3251 1222 0628), all without Plaintiff's or the Board's knowledge or consent, as follows:

a. $162,500 transfer to a Canadian company controlled by Yuan called Scinal Inc., Canada

b. $200,000 in the form of a cashier's check payable to an unknown recipient

c. $309,438 in the form of cashier's check payable to an unknown recipient

## II.   PLAINTIFF'S AND DEFENDANTS' CLAIMS

In Plaintiff's First Amended Derivative Complaint, Plaintiff alleges four causes of action against Yuan and Lin: 1. Conversion, 2. Breach of fiduciary duty, 3. Preliminary injunction, and 4. Declaratory relief.  Defendant Yuan filed a Third Amended Derivative Shareholder's Counterclaim for Turnover of the $50,000 that Plaintiff accepted for the 998 offers of compromise from Defendants Yuan and Lin.

## III.   RELEVANT FACTS

Plaintiff and Defendants Benlin Yuan ("Yuan") and Hong Lin ("Lin") were officers and directors

of Camiwell, Inc., an information technology company based in Santa Clara. Yuan was a shareholder with a 40% interest, Yuan's wife Lin with 25%, and Zhang with 35%.

In July 2020, Plaintiff sued Yuan and Lin in state court for breach of fiduciary duty, unfair competition, violation of corporations code sections 1601 and 1602, and accounting.

In September 2023, Plaintiff accepted the 998 offers of compromise from Yuan and Lin for $50,000 and Camiwell for $353,000. After the acceptances of the offers, Yuan and Lin filed a certificate of election to wind up and dissolve Camiwell, Inc.. without shareholder meeting or Zhang's knowledge or consent and Yuan made three separate and unauthorized withdrawals from Camiwell, Inc.'s Bank of America account no. 3251 1222 0628 totaling almost $671,938 without Zhang's knowledge or consent. These transactions were as follows:

    a    $162,500 transfer to a Canadian company controlled by Yuan called Scinal Inc., Canada

    b.    $200,000 in the form of a cashier's check payable to an unknown recipient;

    c.    $309,438 in the form of cashier's check payable to an unknown recipient.

On November 10, 2023, Plaintiff filed a Derivative Complaint which was later amended on May 29, 2024 alleging causes of action against Yuan and Lin for conversion, breach of fiduciary duty, preliminary injunction, and declaratory relief.

On August 23, 2024, Yuan filed a Third Amended Shareholder Derivative Counterclaim for Turnover. Yuan contends the $50,000 that Plaintiff accepted in the state court case is a recovery from Camiwell. However, this contention lacks merit. The evidence shows that Yuan and Lin made the $50,000 offer to Plaintiff to settle the personal claims against them, to which Plaintiff accepted, and that Yuan did not make a demand on Camiwell's Board of Directors before filing the Third Amended Shareholder Derivative Counterclaim for Turnover. It would not have been futile for Yuan to make such a demand because both he and Lin comprise a majority of Camiwell, Inc.'s ownership and hold two out of three Board seats.

### IV.    QUESTIONS OF FACT REMAINING IN THE CASE

The following questions of fact remain in the case:

1.    Did Plaintiff authorize the dissolution of Camiwell, Inc.?

2.    Did Yuan and Lin properly dissolve Camiwell, Inc.?

3. Was Defendant Yuan entitled to withdraw the amount of $671,938 from Camiwell?

4. Does Plaintiff have 35% ownership in Camiwell, Inc.?

5. Is Yuan entitled to the $50,000 in his Third Amended Derivative Shareholder Counterclaim for Turnover?

## V. ANALYSIS OF QUESTIONS OF FACT REMAINING IN THE CASE

1. <u>Plaintiff has 35% ownership in Camiwell, Inc.</u>

a. Camiwell, Inc.'s corporate documents and tax returns show that Plaintiff has a 35% ownership in the company. Chenying Fan outside CPA for Camiwell, Inc., and Hui Sun, the accountant for Camiwell, Inc. are expected to testify that Yuan as CEO of Camiwell reviewed and approved the contents of the tax returns of the company, and that Yuan authorized Ms. Fan to file the tax returns which state that Zhang has a 35% ownership in Camiwell, Inc.

b. There was a fully executed Share Transfer Agreement ("STA") where Lin transferred 25,000 shares of her common stock to Plaintiff Zhang (with original share allocation being 200,000 shares issued to Yuan, 150,000 shares issued to Lin and 150,000 issued to Zhang), which made Zhang a 35% shareholder (175,000/500,000 = 35%). Defendants are claiming the their signatures on STA were forged. However, Plaintiff's attorney Padmini in the state court case has testified under oath that the STA received by her from defense counsel's file share link was fully executed AS IS.

c. Plaintiff did not extinguish his rights to ownership in Camiwell, Inc. when he accepted the 998 offers of compromise from Camiwell, Inc., and Defendantsin the state court case. There was no language in the 998 offers of compromise nor in Plaintiff's acceptances of such that state Plaintiff gave up his ownership interest in Camiwell, Inc. Marie Quashnock, Camiwell's own counsel for the state court action and who prepared and sent the 998 offers for Defendants is expected to testify that 998 offers and the corresponding acceptances by Plaintiff speak for themselves, and that the documents do not state Plaintiff gave up his ownership interest in Camiwell, Inc.

2. <u>Plaintiff did not authorize the dissolution of Camiwell, Inc.</u>

Plaintiff did not authorize the dissolution of Camiwell, Inc. There was never a shareholder meeting called to vote on the dissolution as required by California Corporations Code Sections 1900 and 601. Plaintiff had a 35% ownership interest in Camiwell, and did not extinguish his rights in the

company. See above. Yet, Defendants prepared and signed a Certificate of Election to Wind Up and Dissolve (the "Certificiate") with the California Secretary of State to dissolve Camiwell, Inc.. In the Certificate, Defendants falsely declared under penalty of perjury that they owned 650,000 share of the company, although they only owned 325,000 shares. They falsely declared the company has elected to wind up and dissolve, although they did not call a shareholder meeting for a vote on dissolution. Therefore, Defendants dissolution of the company was unauthorized.

3. <u>Defendants Yuan and Lin are not entitled to withhold the amount of $671,938 from Plaintiff.</u>

As discussed above, Plaintiff had a 35% ownership interest in Camiwell and he never extinguished his rights in the company when he accepted the 998 offers of compromise. All of funds left in the company's Bank of America account are part of corporate assets. Defendants are not entitled to withhold $671,938 and must return it to the company because Defendant Yuan did the withdrawals without Board approval (he testified under oath that he made the withdrawals without informing Lin and Zhang, two (2) of three (3) members of the Board of Directors).

4. <u>Yuan is not entitled to the $50,000 in his Third Amended Derivative Shareholder Counterclaim</u>

At deposition, Yuan admitted that he failed to make a demand on Camiwell, Inc.'s Board of Director prior to filing his Third Amended Derivative Shareholder's Counterclaim for Turnover. It would not have been futile for Yuan to make such a demand on Camiwell's Board of Director because both he and Lin own a majority of the shares of Camiwell, Inc. and hold two (2) out of three (3) Board seats. Accordingly, Yuan did not have sufficient grounds to file the Third Amended Derivative Shareholder Counterclaim for Turnover.

Additionally, Defendants made the 998 offer of $50,000 to Plaintiff to settle the personal claim against them. The 998 offer of $50,000 in which Plaintiff accepted was not for Camiwell, Inc., and the company does not have any rights in the $50,000.

## VI.  LEGAL ANALYSIS

### A.  Conversion

This cause of action was brought derivatively by Camiwell, Inc. against Defendants Yuan and Lin. Plaintiff alleges that Defendants filed a Certificate of Election to Wind Up and Dissovle Camiwell, Inc. without calling for the legally required shareholder meeting and with false information about the

shares they owned and in violation of the Bylaws Article II, Section 14(a) because they did not have the requisite percentage (70%) of shareholder voting approval in order to deprive the company of its assets. Camiwell, Inc. owned and possessed $671,938 in its BofA account and that Defendant Yuan substantially interfered with Camiwell, Inc..'s ownership and possession of $671,938 by knowingly and misappropriating the funds of Camiwell, Inc. when he withdrew $671,938 from Camiwell, Inc.'s account at Bank of America, without justification or authority, and without knowledge or consent of the Board of Directors (Yuan testified under oath that he did not inform Lin or Zhang, two of the three members of the Board about the withdrawals when he made them). Defendants Yuan and Lin converted, dispossessed and kept the property, assets, and funds without proper authorization or consent from Camiwell, Inc. As a direct and proximate result of Defendants Yuan and Lin's conducts, Camiwell, Inc.. has been damaged in an amount of at least $671,938. Defendants Yuan and Lin's conducts were a substantial factor in causing Plaintiff's damage. In engaging in the above conduct, Defendants Yuan and Lin acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish said Defendants and to deter such conduct.

### B.   Breach of Fiduciary Duty

This cause of action was brought derivatively by Camiwell, Inc., and individually by Plaintiff Jinju Zhang, against Defendants Yuan and Lin. As members of the Board Directors of Camiwell, Inc., Defendants Yuan and Lin owed to the company and to its shareholders, including Plaintiff, a fiduciary duty of loyalty. Defendants Yuan and Lin breached their fiduciary duties by misappropriating corporate assets of Camiwell, Inc. when they withdrew and kept almost $671,938 from Camiwell, Inc.'s account at Bank of America, without justification or authority, and without Zhang's knowledge or consent of the Board of Directors. As a direct and proximate result of Defendants Yuan and Lin's conducts, Camiwell, Inc. has been damaged in an amount of at least $671,938. Defendants Yuan and Lin also breached their fiduciary duty when the dissolved the company without calling a shareholder meeting and not obtaining the requisite 70% shareholder approval. Defendants Yuan and Lin's conducts were substantial factors in causing Plaintiff's damage. In engaging in the above conduct, Defendants Yuan and Lin acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish said Defendants and to deter such conduct.

### C. Preliminary Injunction

Plaintiff sought a preliminary injunction against Defendants Yuan and Lin to to prohibit Yuan and Lin from further withdrawaling any funds from the Bank of America accounts belonging to Camiwell, Inc. to prohibit the bank from allowing any further withdrawals and enjoining Defendants from dissolving Camiwell, Inc. and diminishing its assets and usurping corporate opportunities of Camiwell, Inc..

This cause of action is moot. On August 30, 2024, Court granted Bank of America's motion to deposit funds into the Court's registry pursuant to Bank of America's counter-complaint for Interpleader in the amount of $211,743.64. On September 26, 2024, the Court received $211,747.75 from BofA.

### D. Declaratory Relief

Plaintiff sought declaratory relief as a dispute presently exists between the parties as to who is entitled to the funds in the Bank of America accounts. A judicial determination is therefore necessary to establish rightful ownership of the funds.

### E. Yuan and Lin's Defenses

Yuan and Lin contend that Plaintiff liquidated his shareholder's distribution rights when he accepted the 998 offers to compromise in the state case. However, there is nothing in the Plaintiff's acceptance in the 998 offers to compromise that states expressly or implicitly that Plaintiff would no longer be a shareholder in the corporation. Therefore, Plaintiff still retained his right as a shareholder after acceptance of the 998 offers to compromise in the state action.

The Court agreed with Plaintiff when it denied Yuan and Lin's motion for summary judgment on August 21, 2024. In Yuan and Lin's motion for summary judgment on Plaintiff's causes of action for conversion, breach of fiduciary duty, preliminary injunction, and declaratory relief in the First Amended Derivative Complaint, they acknowledged that they withdrew the money, but they were entitled to these withdrawals because Plaintiff's acceptance of the $353,000 judgment in the state action liquidated his shareholder distribution rights to all Camiwell, Inc.'s assets in existence at the time of judgment and therefore Plaintiff had no stake or entitlement to any of the monies remaining in the accounts. The Court in denying Yuan and Lin's motion for summary judgment stated the following:

> "It is not clear from the compromise judgment, offer to compromise, or state court complaint that the state court compromise judgment was meant to resolve Zhang's claims to *all*

Camiwell US assets, rather than just to those assets allegedly siphoned off. Zhang remained a shareholder after the judgment, indicating that the relationship between him and the company would continue to at least some degree. Although discovery in the state court case included discovery into the company's remaining assets, it isn't clear that the purpose of that discovery was to help Zhang establish and recover his share of the company's total assets.

Given this uncertainty, summary judgment can't be granted, at least on this record. Counsel for Yuan and Lin acknowledged at the hearing that the compromise materials did not explicitly state what rights or potential claims of Zhang's the compromise judgment was meant to extinguish. Compromise judgments and agreements are interpreted like contracts. *Rappenecker v. Sea-Land Service, Inc.*, 93 Cal. App. 3d 256, 263 (1979). Where the meaning of an ambiguous contract can't be determined through other means of interpretation, "the contract should be interpreted most strongly against the party who prepared it." *E.g.*, *Powers v. Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1102, 1112 (1997); Cal. Civ. Code § 1654. And this rule "applies with even greater force when the person who prepared the writing is a lawyer." *Breathe Southern California v. American Lung Association*, 88 Cal. App. 5th 1172, 1182 (2023). Therefore, the ambiguity in the offer of compromise and resulting judgment must be interpreted against Camiwell US, who appears to have drafted it—not against Zhang. In addition, as the parties asserting res judicata, Yuan and Lin have the burden of establishing it. *Ferraro v. Camarlinghi*, 161 Cal. App. 4th 509, 529 (2008). Given all that, the motion must be denied."

*See Docket # 119, Order Regarding Motions to Dismiss Complaint, Motion to Dismiss Counterclaim, Motion to Strike, Motion for Discovery, and Motion for Summary Judgment, p. 3-4.*

Additionally, the act of transferring funds was wrongful pursuant to Camiwell Bylaws, Article II, § 4 and California Corporations Code ("Corp. Code") § 310. Camiwell Bylaws, Art. II, § 4, states that transactions taken by a director of Camiwell to financially benefit himself requires a special meeting and full disclosure to the shareholders pursuant to California Corporations Code ("Corp. Code") § 310. Consistent with the statute, section 4 of the Camiwell Bylaws states in relevant part:

> The notice will also state the general nature of any proposed action to be taken at the meeting to approve any of the following matters: (i) A transaction in which a director has a financial interest, within the meaning of California Corporations Code §310 . . . .

Corporations Code section 310(a)(1) states that financial transactions made by a director of a corporation for his or her own material financial interest are void or voidable unless fully disclosed to the shareholders:

> (a) No contract *or other transaction between a corporation and one or more of its directors,* or between a corporation and any corporation, firm or association *in which one or more of its directors has a material financial interest, is either void or voidable because such director or directors* or such other corporation, firm or *association are parties* or because such director or directors are present at the meeting of the board or a committee thereof which *authorizes, approves or ratifies the contract or transaction*, *if*:

> (1) *The material facts as to the transaction and as to such director's interest are fully disclosed or known to the shareholders and such contract or transaction is approved by the shareholders (Section 153) in good faith, with the shares owned by the interested director or directors not being entitled to vote thereon…*

*See Cal. Corp. Code § 310; see also Cahle v. Stephens* (1931) 214 Cal. 89 (1931) (director was bound to act with utmost good faith in dealing with corporation). Defendants wrongfully violated the Camiwell Bylaws and Corporations Code section 310 when they transferred funds from the Camiwell Bank of America accounts to themselves in September of 2023 without calling a shareholder meeting and disclosing the terms of the financial transaction to Plaintiff before acting.

In terms of the breach of fiduciary cause of action, Yuan (40% shareholder interest) and Lin (25% shareholder interest) will contend that they had the power to authorize the withdrawals totaling $671,938 as they had a two to one voting advantage, a combined 65% interest of shares in the company. However, Yuan and Lin's contention lacks merit.

It should require no citation to authority that a majority of shareholders may authorize distributions to themselves at the expense of the minority. Such distributions would constitute a breach of Defendants' fiduciary duties. "It is a violation of this duty for officers, or directors or majority stockholders to give away or appropriate to themselves any corporate assets." *Mueller v. MacBan*, 62 Cal. App. 3d 258, 274 (1976).

There are at least two instances of breach of fiduciary duty by Yuan and Lin: (1) their undisclosed transfer of approximately $671,938 to themselves on September 26 and 28, 2023; and (2) the purported dissolution of Camiwell on September 27-28, 2023.

### 1. Breach of Fiduciary Duty #1

As set forth above, Defendants Yuan and Lin wrongfully appropriated and kept corporate assets—*i.e.*, the $671,938 in Camiwell's bank accounts by failing to get Board approval. Plaintiff contends that Yuan and Lin were obligated to (1) give notice to the Board of Directors, (2) fully disclose their own interest in the transation, and (3) refrain from voting on the approval due to their conflict of interest in the self dealing transaction. It is a breach of fiduciary duty by majority shareholders to conduct self dealing by benefit themselves at the expense of of the company and minority shareholders. *See Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93 ["Majority shareholders may not use their power to

control corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business."].

### 2. Breach of Fiduciary Duty #2

Plaintiff alleges that Defendants Yuan and Lin breached their fiduciary duty when they purported to dissolve Camiwell (a) without calling a special meeting of shareholders as required by California Corprations Code 1900 (Any corporation may elect voluntarily to wind up and dissolve by the vote of shareholders holding shares representing 50 percent or more of the voting power), Corporations Code 601 (f) (Any shareholder approval at a meeting, other than unanimous approval by those entitled to vote, pursuant to Section 310, 902, 1152, 1201, 1900, or 2007 shall be valid only if the general nature of the proposal so approved was stated in the notice of meeting or in any written waiver of notice), and Camiwell Bylaws, Art. II, Section 4, and (b) without conducting a vote and obtaining a 70% affirmative votefor dissolution as required by Camiwell Bylaws, Art. III , §14.   Camiwell Bylaws, Art. II, Section 4 requires a special shareholder meeting:

> The notice will also state the general nature of any proposed action to be taken at the meeting to approve any of the following matters . . . . (iv) A voluntary dissolution under Corporations Code §1900 . . . .

Camiwell Bylaws, Art. III, §14, requires a affirmative vote by 70% of the shareholders to dissolve the corporation:

> The following decisions would need the written consent or affirmative vote of the holders of at least seventy percent (70%) of the common stock of the Corporation, and any such act or transaction entered into without such consent or vote shall be null and void ab initio, and of no force or effect: (a) liquidate, dissolve or wind-up the business and affairs of the Corporation, effect any merger or consolidation or any other deemed liquidation event, or consent to any of the foregoing . . . .

Thus, when Defendants prepared and signed the dissolution forms and filed those forms with the California Secretary of State on behalf of Camiwell, they were violating the Camiwell Bylaws by not calling a shareholder meeting and not obtaining the requisite 70% shareholder approval.

### F.   Yuan's Third Amended Shareholder Derivative Counterclaim for Turnover

Yuan's Counterclaim for Turnover lacks merit.  He contends the $50,000 that Plaintiff accepted in the state court case is a recovery from Camiwell.  The evidence shows that Yuan and Lin made the

$50,000 offer to Plaintiff to settle the personal claims against them, to which Plaintiff accepted. Yuan admitted that he failed to make a demand on Camiwell's Board prior to filing his Counterclaim. It would not have been futile for Yuan to make such a demand because both he and Lin own a majority of the shares of Camiwell and hold two (2) out of three (3) Board seats. Accordingly, Yuan did not have sufficient grounds or meet the required condition to file the Counterclaim.

## VII. DAMAGES

Plaintiff has been damaged in the amount of $418,112. The calculation of the damages is based on Yuan and Lin making three separate and unauthorized withdrawals totaling almost $671,938 from Camiwell, Inc..'s account at Bank of America (account number 3251 1222 0628), all without Zhang's knowledge or consent, as follows: (a) $162,500 transfer to a Canadian company controlled by Yuan called Scinal Inc., Canada; (b) $200,000 in the form of a cashier's check payable to an unknown recipient; and (c) $309,438 in the form of cashier's check payable to an unknown recipient.

Yuan withdrew the money without Plaintiff's or the Board of Director's authorization or consent. He and his wife should return the money back to the company. Plaintiff did not give up his 35% ownership interest after he accepted Yuan and Lin's 998 offers to compromise in the state action. Thirty-Five percent of $671,938 is **$235,000**. Plaintiff is also entitled to 35% of the funds ($211,747.75) that are in the Court's registry deposited by Bank of America. This amount would be **$74,111.57**.

The Share Transfer Agreement between Camiwell, Inc., Plaintiff, and Hong Lin states that the prevailing party is entitled to recover attorney's fees from the losing party as a result of litigation. Plaintiff has paid approximately **$200,000** to date. If Plaintiff prevails on this action, the Court should award him attorney's fees. The Court should also award Plaintiff punitive damages in the amount of $500,000 in order to punish and deter future conduct.

Dated: April 1, 2025

SAC Attorneys, LLP
/s/ James Cai

_____
James Cai, Esq.
Attorneys for Plaintiff and Counterclaim
Defendant Jinju Zhang