CORPORATE COUNSEL LAW GROUP, LLP
JOHN CHU (SBN 104302)
25 Kearny Street, Suite 302
San Francisco, CA 94108-5515
Telephone 415-989-5300
Fax 415-788-4315
Email: jchu149@yahoo.com

ZHANG LAW GROUP
Bing Zhang Ryan (SBN 228641)
2950 Buskirk Avenue, Suite 300
Walnut Creek, CA 94597
Telephone : 925-257-3097
Email: bzhanglaw@gmail.com

Attorneys For Defendants Benlin Yuan
 and Hong Lin and Counter-claimant Benlin Yuan

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA--SAN FRANCISCO DIVISION

| | |
|---|---|
| JINJU ZHANG, an individual; | No. 3:23-CV-5818-VC |
| Plaintiff, | |
| v. | DEFENDANTS' TRIAL BRIEF |
| BELIN YUAN, et al. | Date: 4/28/2025<br>Time: 10:00 am |
| Defendants. | Judge: Hon. Vince Chhabria<br>Courtroom 4, 17th Floor |
| and related Counter-claim | |

Defendants Benlin Yuan and Hong Lin, and Counter-claimant Benlin Yuan hereby submit the following trial brief.

INTRODUCTION

Defendants will prove that neither Camiwell, Inc. nor Mr. Zhang were damaged by the three withdrawals totaling $671,938.73 upon which the complaint is based. The lack of damages will dispose of Mr. Zhang's derivative claims for conversion and breach of fiduciary duty.

Defendants will further prove that Mr. Zhang had no further rights to any of the remaining bank account monies after receiving his $353,000 payment because he should not be able to assert any claims against the same pool of funds twice. This will dictate declaratory relief that all of the funds interpleaded by Bank of America be returned to Camiwell, Inc. for its disposition in the ordinary course of winding up its financial affairs.

Finally, Counter-claimant Yuan will prove that the $50,000 that he and Ms. Lin paid to Mr. Zhang in the State Case in satisfaction of the judgment against them was indeed a derivative recovery on behalf of the corporation that should be turned over to Camiwell, Inc. as well.

To be clear, Defendants will offer no proof and have ***never*** contended that Mr. Zhang's receipt of the $353,000 payment extinguished either his shares in Camiwell, Inc. or any other of his rights as a shareholder, including but not limited to, the right to share in any monies that Camiwell, Inc. might earn in the future.

Defendants deny Mr. Zhang's allegations that they had no authority under the Corporations Code to move forward with Camiwell Inc.'s dissolution, or to disburse corporate monies to themselves. But these issues are totally irrelevant if their actions caused no damage to Camiwell, Inc. or to Mr. Zhang. Mr. Zhang's trial brief does not even address damages, merely assuming that the amount of the funds withdrawn were automatically damages. He never even considers that Defendants as co-shareholders, were also entitled to withdrawals,

Once Mr. Yuan and Ms. Lin paid off the corporation's judgment against them, there was no reason why that should not have received their own distributions in dissolution, just like Zhang receive his. The corporation, which had long been closed, did not need working capital and was not damaged by paying Defendants monies that they were entitled to receive. Mr. Yuan

also left over $200,000 in the account, more than enough to pay remaining creditors.

SUMMARY OF PERTINENT FACTS

In 2014, Messrs. Yuan and Zhang and Ms. Lin formed Camiwell LLC, a Delaware limited liability company. Mr. Yuan owned 40%, and Mr. Zhang and Ms. Lin owned 30% each.

Camiwell LLC was formed to service the U.S. clients of Beijing Asiacom Technology Co., a China based information technology company. The business came through Ms. Lin, who was a college friend of the Secretary of the Board of Directors of Beijing Asiacom. The LLC operated profitability until 2018 with Beijing Asiacom being its only customer.

In 2018, Beijing Asiacom elected to bring its servicing in-house and sought to acquire Camiwell LLC. Camiwell LLC had no real choice in the matter; Beijing Asiacom would simply stop sending work to Camiwell LLC if it could not acquire it.

For the acquisition, Beijing Asiacom requested that the LLC be converted into a California corporation. Messrs. Yuan and Zhang complied. On June 18, 2018, Camiwell, Inc.'s Articles of Incorporation and conversion from LLC were filed with California's Secretary of State. The three LLC members became the corporation's shareholders with the same percentage ownership as the LLC, although no physical share certificates were ever issued.

The corporation's business was very short lived. Before the issuance of the shares and before many of the other corporate documents were signed, the acquisition fell through. Beijing Asiacom formed its own U.S. subsidiary, Asiacom Americas, Inc., and stopped sending work to Camiwell, Inc.

By early 2019, Camiwell Inc. had run out of work. Mr. Yuan wound its business down, closed its offices, and paid its creditors and vendors. By mid-2019, Camiwell, Inc. was completely liquidated and had no assets except for three bank account balances, two with Bank of America and one with Chase Bank, totaling approximately $1.4 million.

Mr. Yuan reached out to Mr. Zhang to have the corporation dissolved and to disburse the remaining money to the three shareholders. Mr. Zhang had 30%, but the parties had agreed to increase his percentage to 35% if the Beijing Asiacom acquisition were successful. The acquisition failed, but Mr. Yuan and Ms. Lin were still amenable to distributing 35% of the

2

remaining cash to Mr. Zhang, if he would cooperate with the dissolution.

Mr. Zhang, however, balked. Instead of cooperating, he commenced the State Case against Mr. Yuan, Ms. Lin, and Camiwell, Inc. On July 20, 2020, he filed his complaint accusing Defendants of misappropriating of corporate assets and business opportunities and breach of fiduciary duty. He also named Camiwell, Inc. as a defendant seeking inspection of the corporate books and records, and a shareholder accounting. His prayer against Camiwell, Inc. was "for an accounting between Camiwell, Inc. and Zhang" and for "payment over to Zhang of the amount due as a result of the account."

In September 2023, after over three years of litigation, on the eve of trial, the parties settled. Defendants offered a judgment under Code of Civil Procedure § 998 for $50,000. Camiwell, Inc. also offered its own section 998 judgment for $353,000. Mr. Zhang accepted both offers and money judgments were later entered accordingly.

Shortly after Mr. Zhang's acceptances, Mr. Yuan paid $50,000 to Mr. Zhang in satisfaction of the derivative judgment against him and Ms. Lin, and Camiwell, Inc. paid $353,000 to Mr. Zhang in satisfaction of his personal judgment against Camiwell, Inc.

Immediately following the payments to Mr. Zhang, Mr. Yuan made three withdrawals from Camiwell Inc.'s Bank of America savings account: $162,000.00 on September 26, 2023, and $309,438.73 and $200,000.00 on September 28, 2023 for a total of $671,938.73.

WITNESSES FOR TRIAL

Defendants' only witness will be Benlin Yuan. His testimony will establish that he and his wife were entitled to their shareholder distribution from Camiwell, Inc. at or around the same time that Mr. Zhang received his distribution. To do so, Mr. Yuan will testify as to all of the following:

1. Camiwell's bank balances totaled $1,494,003.94 as of June 30, 2019, which is when he first asked Mr. Zhang to dissolve the company.

2. None of the three shareholders received any shareholder distribution from Camiwell, Inc.'s formation through the State Case commencement date of July 20, 2020.

3. On July 20, 2020, Camiwell's bank balances totaled $1,446,151.59.

3

4. None of the three shareholders received any shareholder distribution during the State Case litigation.

5. When the two section 998 offers were made, Camiwell's bank balances totaled $1,287,021.56 (as of Aug 31, 2023) . (The main expenses during the State Case were Camiwell, Inc.'s attorney's fees, Defendants having paid their own attorneys' fees.)

6. After the $353,000 payment to Mr. Zhang and Mr. Yuan's three withdrawals totaling $671,938.78, the rest of Camiwell's monies were deposited with the Court by Bank of America.

Mr. Yuan will also testify that Mr. Zhang requested discovery and information during the State Case for the purpose of determining the total amount Mr. Zhang should receive as a final shareholder distribution, that Mr. Yuan calculated the amount of Camiwell's section 998 offer ($353,000) as his best good faith estimate of Mr. Zhang's full share of all the remaining monies, and that he used 35% as Mr. Zhang's share ( not 30%) to make the offer more attractive to him.

## PERTINENT LEGAL DISCUSSION

I. <u>Both Conversion and Breach of Fiduciary Duty Claims Against Mr. Yuan and Ms. Lin Will Fail for Lack of Damages</u>.

Damages is an essential element to establish a claim for conversion. *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (20150). The same is true for a claim for breach of fiduciary duty. *See*, e.g. Judicial Council of California Civil Jury Instructions (2024 edition), CACI 4101 (Failure to Use Reasonable Care - Essential Elements) or CACI 4106 (Breach of Fiduciary Duty by Attorney-Essential Factual Elements).

Once Mr. Yuan and Ms. Lin settled the corporate derivative claims against them, as shareholders in good standing, they were *fully entitled* to all shareholder rights, including the right to receive their own shareholder distribution. As of the end of August 2023, the corporation had $1,287,021.56 in available funds that had been sitting dormant since at least June of 2019. Mr. Zhang had already received his distribution through the section 998 judgment and the corporation had no need for working capital because it had been out of business for over four years. Mr. Zhang having received his distribution, Defendants, who were admittedly at least 65% co-shareholders, were also entitled to receive theirs as well, so Mr. Yuan's withdrawal of

$671,938.78, which was only 52.2% of the available funds, was fully justified. The remaining balance of over $200,000 was more than enough to pay the remaining creditors.

Mr. Zhang complains that he did not approve the withdrawal. It does not matter. Even if Mr. Yuan was premature in making the withdrawals without a shareholder meeting or resolution, which would have been mere formalities anyway since he and Ms. Lin had the majority voting power, the withdrawals did not damage either the corporation or Mr. Zhang.

Mr. Zhang was the only shareholder entitled to a distribution. Based upon a 35/65 ratio, if Mr. Zhang withdrew $350,000, Defendants were entitled to their own contemporaneous withdrawal of at least $650,000, and more based upon a 30/70 ratio. Mr. Zhang has no right to complain about Mr. Yuan's withdrawals.

Judgment on Mr. Zhang's first and second claims for relief must be entered in Defendant's favor because the total amounts withdrawn was less than 65% of the funds available to shareholders.

II. <u>Mr. Zhang's $353,000 Judgment Against Camiwell, Inc. Precludes Him from Asserting Any More Claims Against the Funds That Were the Subject of the State Case</u>

One would expect that res judicata would preclude Mr. Zhang from filing another shareholder claim against the same monies that were at issue in the State Case. The discussion below establishes this, even though he remains a shareholder.

Camiwell, Inc. had a certain amount of money when Mr. Zhang sued for an accounting and "payment over to Zhang of the amount due as a result of the account." Mr. Zhang's judgment against Camiwell, Inc. provided in its entirety:

> Judgment is hereby entered, against Defendant Camiwell Inc. ("Defendant") and in favor of Plaintiff Jinju Zhang, in the above-entitled action, pursuant to Section 998 of the California Code of Civil Procedure, in the sum of Three Hundred and Fifty-Three Thousand Dollars and Zero Cents ($353,000.00) inclusive of Plaintiffs fees and costs up to and including the date of the offer. The judgment against Defendant does not constitute an admission of liability by or on behalf of Defendant.

This was a final judgment on the merits. *Avery v. Avery*, 10 Cal.App.3d 525, 529 (1970) [Judgments entered pursuant to Code of Civil Procedure § 998 are no less conclusive than a judgment entered after a trial; they are final judgments on the merits for res judicata claim preclusion purposes]. Stipulated judgments conclude all matters put in issue by the pleadings that

5

otherwise would have been resolved at trial, *except* as to claims or issues expressly withdrawn from the judgment. *Folsom v. Butte County Ass'n of Governments*, 32 Cal.3d 668, 677, *citing Elena v. State of California*, 69 Cal.App. 250, at 260 (1966).

No claims or issues were expressly withdrawn in the judgment. As such, it was a general judgment under which the rules of res judicata, as discussed below, provide that all matters that were both put in issue or <u>*could* have been put at issue</u> by the facts alleged in the prior proceeding are deemed concluded.

III. <u>The State Case Complaint Allegations of Fact and Injury Determine What Claims Were at Issue</u>.

In determining what matters were put at issue and deemed concluded, a federal court evaluating the preclusive effect of a prior California state court judgment applies California's res judicata doctrine. *White v. City of Pasadena*, 671 F.3d. 918, 926 (9th Cir. 2012). In *White v. City of Pasadena*, the Court of Appeals restated California's res judicata doctrine:

> California's claim preclusion doctrine provides that a "valid final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action." *Slater v. Blackwood*, 15 Cal.3d 791, 126 Cal.Rptr. 225, 543, P.2d 593, 594 (1975). In determining what constitutes the "same cause of action," California applies "the 'primary rights' theory, under which the invasion of one primary right gives rise to a single cause of action. *White v. City of Pasadena*, 671 F.3d. at 927.

"As explained by the Supreme Court of California:

> The primary right theory is a theory of code pleading . . . that provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action."

*Adams Bros. v. County*, 604 F.3d 1142, 1149 (9th Cir. 2010).

Under California's res judicata doctrine, evaluation must focus *on the facts pleaded and the injuries alleged* in the complaint adjudicated in the prior action. *Adams Bros. v. County*, 604 F.3d 1142, 1149 (9th Cir. 2010).

IV. <u>Mr. Zhang's State Case Complaint Pleaded Facts and Alleged His Entitlement to the Shareholder Distribution to Which He Was Entitled to Receive in a Dissolution</u>.

Mr. Zhang's State Case complaint alleged only two causes of action against Camiwell, Inc. for violation of Corporations Code §§ 1601 and 1602 (inspection of corporate records) and for an accounting. The complaint's pertinent background allegations (paragraphs 19, 22 and 25) and charging allegations (paragraphs 37-39 and 46-52) are excerpted in Exhibit A attached here.

In his background allegations, Mr. Zhang alleges that he would not agree to Mr. Yuan's attempt to dissolve the corporation because he could not determine how much he was entitled to receive as a shareholder without inspection of all the books, records and documents pertaining to Mr. Yuan and Ms. Lin's diversion of assets and business opportunities.

The only reason Mr. Zhang filed the State Case in the first place, as he alleged, was that Mr. Yuan was trying to dissolve the corporation and he could not ascertain how much he was entitled to receive without an accounting as to the misappropriated funds. Zhang Complaint ¶ 51.

Further, Mr. Zhang referenced the attempted dissolution of the corporation as the reason why he needed an accounting. It follows that any accounting for a dissolution would certainly include a full and final disbursement to shareholders of all amounts to which they would be entitled. At minimum, his allegations are easily broad enough to encompass a request for a full accounting and payment of all amounts to which he would be entitled to receive in a dissolution.

Any payment to him from Camiwell Inc. can only be construed as such a distribution because Mr. Zhang did not allege any other violation of any other primary right against Camiwell Inc. No tort or contract claims or money damages were alleged against Camiwell, Inc. His only direct monetary claim was for payment of his shareholder distribution after an accounting.

Given that stipulated judgments conclude all matters that were both put in issue or could have been put at issue by the pleadings, *except as to claims or issues expressly* withdrawn from the judgment, if Mr. Zhang had desired to limit the claims or issues encompassed by the judgment, he needed to do so expressly in his acceptance.

Having failed to withdraw and claims or issues from his acceptance and the ensuing judgment, Mr. Zhang is bound by res judicata as determined under the four corners of the

7

judgment and his complaint; he is barred from any additional claims against the pool of funds that were the subject of the State Case.

V. <u>Mr. Zhang's Shareholder Entitlement to All of the Monies That Camiwell Inc. Possessed When the State Case Was Commenced Was At Issue or Could Have at Issue</u>.

Mr. Zhang may argue that it was only the monies that were misappropriated by Mr. Yuan and Ms. Lin that were at issue in the State Case, and that the accounting and payment to him on account was limited only to the misappropriated funds.

There are several obvious defects with his argument. First, Mr. Zhang's factual allegations were more than broad enough to encompass an accounting of all monies to which he was entitled to receive as a shareholder. Second, the parties had already litigated for three years, with the business having been closed for over 4 years. There was absolutely no reason for Mr. Zhang not to take all the monies to which he was entitled at the time. Third, if Mr. Zhang was not receiving his full distribution the parties would have had more litigation in the future about whether Mr. Zhang was entitled to 30% or 35%. if this determination were not recited in the judgment. The absence of any such recital is evidence that the parties did not contemplate any future distribution to Mr. Zhang. Finally, if Mr. Zhang was only settling for his share of the monies allegedly misappropriated, his accounting judgment would have been limited solely to 30% or 35% of $50,000.00. As pointed out above, if trial had proceeded on the accounting action alone, Mr. Zhang would not have proceeded for just his share of $50,000, ignoring over $1.2 million that the corporation had available for disbursement.

There is no doubt that the accounting case was about *all* the shareholder money to which Mr. Zhang was entitled to receive as of the date of the complaint and the judgment.

VI. <u>To the Extent That the Court Considers Evidence Extrinsic to the Judgment and Pleadings, the Extrinsic Evidence Shows that Mr. Zhang's $353,000 Distribution Constituted His</u>

8

<u>Full and Final Share of the Corporate Monies Available for Distribution in September 2023</u>.

Section 998 judgments are stipulated consent judgments and may be interpreted like contracts, including consideration of extrinsic evidence. *Rappenecker v. Sea-Land Service, Inc.*, 93 Cal. App. 3d 256, 263 (1979). But there is nothing vague or ambiguous in either a simple offer and money judgment for a sum certain.

The only question is what claims or issues were resolved by the judgment. As set forth above, the only analysis required is a determination of what "primary right" was violated by analysis of the pleadings, followed by a determination as to what issues were actually litigated or could have been litigated under the facts alleged in the complaint.

Defendants submit that consideration of extrinsic evidence is not necessary here because this is not a case where a party is seeking collateral relief not expressly specified in a stipulated judgment, such as entitlement to attorneys' fees and costs, which was the case in *Rappennecker*. Defendants are not seeking any relief outside of the judgment itself. They are not seeking any determination that the Camiwell judgment extinguished either Mr. Zhang's shares or his shareholder rights. Defendants' only contention is that res judicata precludes Mr. Zhang from making shareholder claims against the same pool of funds twice.

However, to the extent that the Court may consider any extrinsic evidence, all such evidence is in accord with what res judicata dictates:

1. The amount of the alleged misappropriation of corporate assets and business opportunities was settled for $50,000. If the corporation were only distributing Mr. Zhang's share of the alleged misappropriation, his distribution would only have been 30% or 35% of $50,000.

2. The parties had already spent over three years in litigation. If either party had actually contemplated that Mr. Zhang would receive more monies after the $353,000 payment, they would certainly have included an express resolution in the judgment that he was a 30% or 35% shareholder to avoid litigating this issue again in the future.

3. Accounting discovery in the State Case included discovery pertaining to Mr. Zhang's entitlement to all of the corporation's funds, not just for the alleged misappropriation.

4. Mr. Yuan calculated the $353,000 offer to Mr. Zhang based on his receiving approximately 35% of all funds available for distribution.

9

5. The corporation had been out of business since 2019. There was no reason to withhold a full distribution to Mr. Zhang.

6. If Mr. Zhang had accepted only Defendant's $50,000 offer but rejected Camiwell's offer, trial would certainly have proceeded against Camiwell Inc. for Mr. Zhang's share of over $1.2 million, not just his relatively trivial share of $50,000.

All extrinsic evidence supports the res judicata analysis that the parties' litigation over their respective rights to the monies that Camiwell, Inc. possessed was finally concluded.

VII. <u>Mr. Zhang Has No Grounds to Keep the $50,000 paid by Mr. Yuan and Ms. Lin</u>.

Mr. Zhang's State Case Breach of Fiduciary Duty and Unfair Competition Causes of Action against Defendants were brought derivatively on their face. His "First Cause of Action" is entitled "***Derivative*** Claim for Breach of Fiduciary Duty." His Second Cause of Action is entitled "***Derivative*** Claim for Unfair Competition." Both causes of action alleged that it was Camiwell, Inc. who was the party directly injured by Defendants' alleged malfeasance, not Mr. Zhang. State Case Complaint ¶¶ 26-32.

Defendants' section 998 offer of judgment resolved only the causes of action alleged against them, both of which were derivative claims, not Mr. Zhang's direct claims. Mr. Zhang has no basis upon which to contend that Defendants' payment was his personal direct recovery. The $50,000 he received from Defendants is not his to keep; he must be ordered to turn it over to Camiwell Inc.

Dated:   4/7/2025

Respectfully submitted,

/s/ John Chu
John Chu
Corporate Counsel Law Group, LLP
Attorneys For Defendants BelinYuan and Hong Lin and Counter-claimant Benlin Yuan

Exhibit A
Excerpts from Zhang Complaint for Direct and Derivative Claims Filed 7/20/2020

Background

19. Around the same time that Asiacom US entered the Canadian and US markets, *Yuan began pushing Zhang to dissolve Camiwell, Inc*. Zhang was suspicious of the dissolution because he believed Yuan and Lin may be attempting to cut Zhang out of Camiwell, Inc. and transfer all of Camiwell, Inc.'s assets and business to Asiacom US, a company in which Zhang does not own an interest as outlined below, thereby depriving Zhang of money to which he would be entitled as a shareholder.

22. *Due to Yuan's request to dissolve Camiwell, Inc*. and Zhang's belief that Yuan and Lin were transferring assets to Asiacom or Asiacom US, Zhang requested that Defendants produce certain corporate documents for Zhang's review so that he could confirm the accuracy of the financial information that Yuan was providing to Zhang. Defendants refused to produce the requested documents.

25. Due to Defendants' refusal to allow Zhang to review Camiwell, Inc.'s books and records, Zhang cannot determine (1) the assets transferred from Camiwell, Inc. to Camiwell Canada, Asiacom, or Asiacom US; (2) the accuracy of the financial information that has been provided to them by Defendants; and (3) any outstanding money owed to and withheld from Zhang.

Third Cause of Action

37. Zhang restates and incorporates herein by this reference each and all of the allegations contained in the preceding paragraphs as though fully set forth herein.

38. California Corporations Code section 1601 allows a shareholder, upon written demand on the corporation, to inspect the accounting books and records of the corporation, and the minutes of proceedings of the shareholders and the board and committees of the boards of the corporation in which he or she is a shareholder.

39. California Corporations Code section 1603 provides directors with the "the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director and also of its subsidiary corporations, domestic or foreign."

Fourth Cause of Action:

46. Zhang restates and incorporates herein by this reference each and all of the allegations contained in the preceding paragraphs as though fully set forth herein.

47. Zhang is a current shareholder of Camiwell, Inc., and as such, is entitled to

11

shareholder distributions from Camiwell, Inc.

48. Zhang is a current director of Camiwell, Inc. and, as such, is entitled for documents confirming the accuracy of the financial information provided to him by Defendants.

49. Camiwell, Inc. and Yuan and Lin, individually as owners, directors, officers, and/or shareholders of Camiwell, Inc., owe fiduciary duties of care towards Camiwell, Inc.'s shareholders, including Zhang.

50. Yuan and Lin have transferred assets, including money, to Camiwell Canada, Asiacom, and/or Asiacom US without Zhang's consent and without any justification, with the intention of putting Camiwell, Inc. out of business.

51. The amount of money due from Camiwell, Inc. to Zhang or withheld by Camiwell, Inc. is unknown to Zhang and cannot be ascertained without an accounting of Camiwell, Inc.'s receipts and disbursements of the aforementioned operations.

52. Zhang has made repeated demands that Camiwell, Inc. account for the aforementioned transfers and pay any amount found due to Zhang, but Camiwell, Inc. has failed and refused, and continues to fail and refuse, to render the accounting and pay Zhang.

Prayers for relief:

On the Third Cause of Action

1. For an order compelling Camiwell, Inc. to produce for inspection all books, records, and documents authorized by California Corporations Code sections 1601 and 1602;

2. For Zhang's attorneys' fees pursuant to Corporations Code section 1604;

3. For Zhang's costs of suit incurred herein pursuant to Corporations Code section 1604; and

4. For such other and further relief as this court may deem just and proper.

On the Fourth Cause of Action

1. For an accounting between Camiwell, Inc. and Zhang;

2. For payment over to Zhang of the amount due from Camiwell, Inc. as a result of the account;

3. For Zhang's attorneys' fees;

4. For costs of suit incurred herein; and

5. For such other and further relief as this court may deem just and proper.